CHAN YONG JEONG, ESQ. (SBN 255244)
 jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation; <br><br> Plaintiff/Counter-Defendant, <br><br> vs. <br><br> INTERFOCUS, INC., a California Corporation, et al., <br> Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR <br><br> **NEMAN BROTHERS & ASSOC., INC.'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION** <br><br> Date: August 23, 2021 <br> Time: 10 a.m. <br> Courtroom 8D <br> Honorable Judge Christina A. Snyder |

**TO THIS COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on August 23, 2021 before the Honorable Christina A. Snyder of the United States District Court for the Central District of California, in Courtroom 8D of the courthouse located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff Neman Brothers & Assoc. Inc. ("NB" or "Plaintiff") will and hereby does move, pursuant to Fed. R. Civ. P. § 56, for an order granting

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

summary judgment in favor of Plaintiff on the grounds that there are no triable issues of facts regarding Plaintiff's claims against Defendant INTERFOCUS, INC., ("Interfocus" or "Defendant").

In the alternative, if for any reason summary judgment is not granted, Plaintiff will and hereby does move the Court for an order adjudicating each of the following issues: (1) Plaintiff is the owner of the three Subject Designs at issue ("Subject Designs"): (2) Interfocus's copying is established by showing (2-1) Interfocus actually accessed to the Subject Designs, (2-2) the Subject Designs and the print designs ("Infringing Designs") on the Interfocus' garments ("Infringing Garments") are either strikingly similar and/or (2-3) the Subject Designs and the Infringing Designs are substantially similar and the Defendant had reasonable opportunity to access to the Subject Designs: and (3) Plaintiff is entitled to recover statutory damages against Interfocus as a willful infringer or an innocent infringer.

Under the L.R. 7-3, the parties through their counsels on July 6, 2021 telephonically conferred on the issues surrounding this motion. Declaration of Chan Yong Jeong ("Jeong Decl.") ¶ 4.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the declarations filed herewith, the attached Exhibits, the pleadings and papers filed in this action, and such further argument and matters as may be offered at the time of the hearing of this Motion.

Dated: July 26, 2021                    Respectfully submitted,

                                        */s/ Chan Yong Jeong*
                                        Chan Yong Jeong, Esq.
                                        Attorney for Plaintiff
                                        Neman Brothers & Assoc. Inc.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

# TABLE OF CONTENTS

I. STANDARD OF REVIEW…………………………………………………………… 6

II. ARGUMENTS……………………………………………………………………... 7

   1. Plaintiff Owns the Subject Designs………………………………………… 8

   2. Defendants Copied the Subject Designs…………………………………… 9

     (1) Interfocus Actually Copied the Subject Designs……………………………… 9

     (2) The Subject Designs And the Infringing Designs Are Strikingly Similar…... 11

     (3) The Subject Designs And the Infringing Designs Are Substantially Similar

        And Interfocus Had Reasonable Opportunities to View the Subject

        Designs……………………………………………………………… 14

          (3-1)  Substantial Similarity …………………………………… 15

          (3-2)  Access …………………………………………………… 17

   3. Plaintiff Is Entitled to Statutory Damages Against Interfocus As A Willful

     Infringer, Or An Innocent Infringer………………………………………….. 20

     (1) Interfocus As A Willful Infringer ………………………………..…………… 20

     (2) Interfocus As An Innocent Infringer ……………………………………..… 23

IV. CONCLUSION………………………………………………………………… 24

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

1

## TABLE OF AUTHORITIES

2

## CASES

3   *Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000)………………………. 6

4   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))……………………………. 6

5   *Baxter v. MCA, Inc*., 812 F.2d 421 (9th Cir. 1987)..........................................................7, 11

6   *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir.2010) .................................14

7   *Broadcast Music, Inc. v. C.B.G., Inc.*, 2013 WL 6074121, at *4 (D. Mass. 2013)…….. 23

8   CDN, Inc. v. Kapes, 197 F.3d 1256, 1259-61 (9th Cir. 1999)…………………………... 15

9   *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002)…………………... 16

10  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................................6

11  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).................................9, 14

12  *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC,* 925 F.3d 1140, 1144

13  (9th Cir. 2019), cert. denied, 140 S. Ct. 1294 (2020)……………………………………. 8

14  *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)………………………….. 8

15  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). ………………….……… 7

16  *Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc*., No. LACV1501556JAKMRWX,

17  2015 WL 12765142, at *5 (C.D. Cal. Oct. 29, 2015)…………………………….. 16, 17

18  *L.A. Printex Indus, Inc. v. Aeropostale, Inc.* 676 F.3d 841 (9th Cir. 2012) ...........9, 14, 16

19  Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995)....................................................11

20  *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004)…..….. 23

21  *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990).. 8

22  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)….. 7

23  *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)…………………………… 16

24  *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)…………………….. 16

25  *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d. Cir. 1976)……………. 9

26  *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1117 (9th Cir. 2018)………………………...15

27  *Selle v. Gibb*, 741 F.3d 896, 903 (7th Cir. 1984) ......................................................11, 12

28  *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). ……………………………. 16

    *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)……………... 16

4

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

*Stratchborneo v. Arch Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973))..........11

*Tarin v. County of Los Angeles*, 123 F.3d 1259 (9th Cir. 1997) ........................................ 6

*Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D.Pa 1980) .................................................. 11

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ...................................... 7

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 987 (9th Cir. 2017).......... 12, 21

*United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978)………………….………. 15

*Univ. Pictures Co. v. Harold Lloyd Corp.,* 162 F. 2d 354, 361 (9th Cir. 1947)……….. 17

*Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)……………. 6

STATUTES

17 U.S.C.A. § 101 ……………………………………………………………………. 20

17 U.S.C. § 106… ............................................................................................................. 7

17 U.S.C. § 410… .............................................................................................................. 8

17 U.S.C. § 501 ................................................................................................................. 7

17 U.S.C.A. § 504............................................................................................... 16, 23

Fed R. Civ. P. § 56............................................................................................................ 6

9th CIRCUIT MODEL JURY INSTRUCTION 17.5…………………………………………….8

9th CIRCUIT MODEL JURY INSTRUCTION 17.16…………………………………….4, 17

SECONDARY SOURCES

4 NIMMER ON COPYRIGHT § 7.20[B], n.19 (1999)…………………………………..…….. 8

4 NIMMER ON COPYRIGHT § 12.11[A] (1989)…………………………………..……… 15

4 NIMMER ON COPYRIGHT § 13.03[B] [1][a]…………………………………………… 16

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STANDARD OF REVIEW

Summary judgment must be granted if the evidence shows that there is no genuine issue as to any material fact. Fed R. Civ. P. § 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). The moving party must shift the burden by presenting evidence to establish the absence of any issues of material fact, and the non-moving party must provide specific facts that create a material issue. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Once the burden is shifted, a mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). To avoid entry of summary judgment, the opposing party must produce specific material evidence capable of "affect[ing] the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In addition, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). A non-moving party is required to produce "evidence on which the jury could reasonably find for" the non-moving party. *Id.*

To meet its burden, the non-moving party's evidence must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." *Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000). And "uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

Further, "[t]he non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders its claim implausible." *Avery Dennison Corp.*

*v. Acco Brands, Inc.*, 2000 U.S. Dist. LEXIS 3938, *10-11 (C.D. Cal. Feb. 22, 2000); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Thus, "mere disagreement or the bald assertion [by the nonmovant] that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## II. ARGUMENTS

Infringement of a copyright occurs (1) when any one of the exclusive rights of a copyright owner has been violated. 17 U.S.C. § 501 (West 2021). The five exclusive rights, sometimes referred to as the "bundle of rights" belonging to an owner, are the rights to:

  1. Reproduce the work.

  2. Prepare derivative works based on the copyrighted work.

  3. Distribute copies to the public.

  4. Perform the work publicly.

  5. Display the copyrighted work publicly. 17 U.S.C. § 106 (West 2021).

To establish infringement, a plaintiff **need only demonstrate that the alleged infringers violated at least one exclusive right** granted to copyright holders under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a) (West 2019). Infringement occurs when alleged infringer engages in activity listed in § 106. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

 To succeed on its copyright infringement claims, Plaintiff must show: (1) **ownership** of the subject design; and (2) infringement—Defendant's **copying** elements of the Subject Design. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).

//

//

1

**1. Plaintiff Owns the Subject Design.**

2

A copyright registration certificate constitutes ***prima facie* evidence** of the validity

3

of the copyright and all facts stated on the certificates, including the statements relating to

4

originality and Plaintiff's ownership of the designs. 17 U.S.C. § 410(c) (West

5

2019);  *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC,* 925 F.3d

6

1140, 1144 (9th Cir. 2019), cert. denied, 140 S. Ct. 1294 (2020); 9th CIRCUIT MODEL

7

JURY INSTRUCTION 17.5. Defendant bears **the burden of rebutting the presumption** of

8

validity. *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). To invalidate this

9

*prima facie* showing, Defendants must prove that the applicant defrauded the Copyright

10

Office, and that the putative fraud related to the underlying ability to register the work.

11

*See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir.

12

1990) ("that an inadvertent omission from a registration application will render a

13

plaintiff's copyright incapable of supporting an infringement action has not gained

14

acceptance with the courts")' 2-7 Melville B. Nimmer & David Nimmer, Nimmer on

15

Copyright § 7.20[B], n.19 (1999) (a misstatement in the registration application does not

16

"render the registration certificate incapable of supporting an infringement action").

17

18

In this case, for competitiveness in the market, Neman Brothers routinely develops

19

and registers new designs for copyrights. Neman Decl. ¶¶5-7. Along the line, Neman

20

Brothers as the owner has registered the Subject Designs 1-3 (Neman Decl. ¶¶10-13,

21

Exhibits 1-6), which makes a *prima facie* showing for presumption that it owns the

22

Subject Design, and the burden shifts to Interfocus to rebut such a presumption. *Lamps*

23

*Plus, Inc.*, 345 F. 3d at 1144 (9th Cir. 2003).

24

However, Interfocus failed to present any evidence for such rebuttal, rather, the

25

evidence below strongly show that NB owns the Subject Design. For example, in

26

response to the interrogatories asking about Interfocus' or its vendor's independent

27

creation and any prior work, Interfocus stated only "**it is informed and believes** the

28

designs at issue are very similar to independently created pre-existing designs…" which

has no evidentiary value at all. (emphasis added) Jeong Decl. ⁋35; Exhibit 42, Responses to Interrogatories No. 1-5. Further, Interfocus never produced any facts, or documents supporting such information or belief in the discovery. Jeong Decl. ⁋35.

Accordingly, Neman Brothers has made the *prima facie* showing for the presumption of the validity of the copyrights and all the facts stated in the registration, but Interfocus failed to rebut the presumption.

## 2. Defendants Copied the Subject Design.

Plaintiff should show that Defendant copied original aspects of its copyrighted design without its permission. *L.A. Printex Indus, Inc. v. Aeropostale, Inc.* 676 F.3d 841, 846 (9th Cir. 2012). In addition to showing that a defendant **actually copied** the subject design, there are two ways to establish the "presumption" of Defendant's copying when there is no direct evidence of copying by presenting evidence demonstrating (1) **striking similarities** of the two designs: or (2) **substantial similarities in the inverse-ratio sliding scale with the defendants' reasonable opportunity to access** to the plaintiff's work. *L.A. Printex Indus, Inc. v. Aeropostale, Inc*. 676 F.3d at 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d. Cir. 1976).

(1) Interfocus Actually Copied the Subject Designs.

Interfocus had "actual" access to the Subject Designs 1 and 2, at least through the Prior Case. Moreover, Interfocus' Operations Director Weiwei Le admitted she was in charge of legal issues by working closely with the U.S. attorneys and also in charge of operations of the Interfocus website patpat.com during the last five years which period include the time for the Prior Case. Moreover, Interfocus response to Interrogatories admitted Interfocus reviews and picks the garments, and controls the procedure of uploading, displaying and selling the garments. Jeong Decl. ⁋36–37. In the ordinary

procedures, Interfocus orders the garments it "likes" after it reviews the sample pictures, and do the quality inspection, and start sales of the garments. Jeong Decl. ¶36; Exhibit 42, Responses to Interrogatory No. 6. Interfocus further admitted it controlled the display procedure of the garments by stating Interfocus' vendors do not upload the information relating to the Infringing Garments. Jeong Decl. ¶37; Exhibit 42, Responses to Interrogatory No. 7.

In addition, as discussed above, the comparisons of the care tags of the Prior Infringing Garments 1 and 2 with the same of the Infringing Garments 1 and 2 show the Infringing Garments at issue in this case are not part of the prior production of the Prior Infringing Garments. Neman Decl. ¶34; Exhibits 39 and 40. It was a new production that happened in July 2020, which procedure started from May 2020 which was less than two months after the settlement on March 23, 2020 in the Prior Case. Neman Decl. ¶34; Exhibits 39 and 40.

The above clearly shows Interfocus soon after signing the Prior Settlement Agreement on March 23, 2020, promptly started the sampling procedure, reviewed the samples of the Infringing Garments 1 and 2, ordered them again as Interfocus liked it in May 2020 (Exhibits 39 and 40), uploaded the garment pictures with the information on the website on July 1, 2020 for Infringing Garment 1 and June 19, 2020 for Infringing Garment 2 and sold them until September 16, 2020. Exhibit 33. Even worse, it turned out the Interfocus continued to sell the Prior Infringing Garment 1 and the Prior Infringing Garment 2 even after the Prior Settlement until September 2020. Jeong Decl. ¶38; Exhibit 33.

The above shows it is undisputed soon after the settlement of the Prior Case where the Subject Designs 1 and 2 were litigated, Interfocus again reviewed, chose, ordered, uploaded, displayed and sold the Infringing Garments 1 and 2, which sufficiently establishing copying after the actual access.

(2) <u>The Subject Designs And the Infringing Designs Are Strikingly Similar.</u>

Even if the evidence of Defendants' access were disputed, when two designs are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (*citing Smith*, 84 F.3d at 1220; *See also Baxter*, 812 F.2d at 424, n.2 ("Proof of striking similarity is an alternative means of proving 'copying' where proof of access is absent"), cert. denied, 484 U.S. 954 (1987)). Striking similarity exists when the similarities are sufficiently unique or complex as to make it unlikely that it was independently created. *Selle v. Gibb*, 741 F.3d 896, 903 (7th Cir. 1984). A plaintiff "must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D.Pa 1980) (*quoting Stratchborneo v. Arch Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973)).

*Selle v. Gibb* identified six factors for determining striking similarity:

 (1) the "striking similarity" is not merely a function of the number of identical notes that appear in both compositions: (2) the uniqueness of the sections that are asserted to be similar: (3) if the complaining work contains an unexpected departure from the normal metric structure or if the complaining work includes what appears to be an error and the accused work repeats the unexpected element or the error, then it is more likely that there is some connection between the pieces: (4) if the similar sections are particularly intricate, then again it would seem more likely that the compositions are related: (5) some dissimilarities that may be particularly suspicious, such as inversion and substitution of certain words in a "crude effort to give the appearance of dissimilarity," are themselves evidence of copying: and (6) the similarity should appear in a sufficiently unique or complex context as to make it unlikely that both pieces were copied from a prior common source. *Selle v. Gibb*, 741 F.2d 896, 903-904 (7th Cir. 1984).

Essentially, Defendants have only engaged in a "crude attempt" to create

dissimilarity as per the fifth *Selle* factor, or this distinction is otherwise the result of "lower-quality techniques and machinery", both of which weigh toward a finding of striking similarity, and therefore copying. *Selle,* 741 F. 2d at 903-04; *Malibu Textiles,* 922 F. 3d 946, 955 (9th Cir. 2019).

The 9th Circuit Court in *Unicolors, Inc. v. Urban Outfitters, Inc*. held;

> We conclude that a district court may grant summary judgment for plaintiffs on the issue of copying when the works are so overwhelmingly similar that <u>the possibility of independent creation is precluded</u>. The works at issue in this case meet this standard. The *objective similarities between the works are stark*: the shapes, motifs, arrangements, spacing, and colors of the images in each design are nearly identical. (emphasis added) 853 F.3d 980, 987 (9th Cir. 2017), for additional opinion, see, 2017 WL 1247134 (9th Cir. 2017).

The shapes of the elements are not about simple generic triangles or squares, but detailed descriptions flowers and leaves. Even the same person cannot draw this much of detail in exactly the same way twice. This cannot be a co-incidence that an independently created work happens to be the same. "<u>[T]he possibility of independent creation is precluded.</u>"

The *Selle* factors weigh in favor of finding striking similarity. As shown below, each distinct element in the Infringing Design is nearly identical to the corresponding description in the Subject Design down to the most intricate details. Each and every single element of the Infringing Design is nearly an exact replica of an original element of the Subject Design. Both have same exact combinations, shapes, and images.

The side-by-side comparisons of the Subject Designs and the Infringing Garments reveals they are virtually identical in most of the objective details of the elements forming the designs and even arrangements of the elements. Neman Decl. ¶29. The chance for the

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

two independently created designs to happen to have the same elements identical in details and the same arrangement of those elements would be far less than one in a million, in other words impossible. Neman Decl. ¶29.

The first page of Exhibit 23 shows most of the elements, if not all, on the Infringing Garment 1 are copied from the Subject Design 1. Neman Decl. ¶30. The second page shows the major motif (indicated in red circles) having the main elements arranged in a certain way are identical while there were some crude efforts to give the appearance of dissimilarity on the Infringing Design 1 by taking out a few small leaves or flowers. Neman Decl. ¶30. Not only the arrangement, the shapes of the flower, flower buds, stems, leaves, and color shadings are also the same. Neman Decl. ¶30. These are not a combination of generic shapes like triangle, circle, square or line, but about a very detailed hand-drawn and intricate description of flowers, stems, leaves, and their arrangement. Neman Decl. ¶30. No designer would not be able to draw the design twice in the exact same way in such details without seeing it and copying it. Neman Decl. ¶30. This part standing alone forms an original and protectible element, and the Infringing Garment 1 copied it. Neman Decl. ¶30. Even the elements describing small flowers, small leaves, and small stems, as well as their shapes, shades, locations, colors, directions and arrangements are strikingly identical, which cannot possibly be a coincidence of two independently created design having such identities in every details. The second and the third pages of Exhibit 23 also show the remaining elements on Infringing Garment 1 were nothing but the result of flipping or rotating the elements of the Subject Design 1. Neman Decl. ¶30.

The same is true about the Infringing Garment 2. Neman Decl. ¶31. On the first page, the circles in different colors indicate which parts are corresponding to each other on the two. Exhibit 24. Most of the elements, if not all, on the Infringing Garment 2 are from the elements of the Subject Design 2. Neman Decl. ¶31; Exhibit 24. The second page of Exhibit 24 shows the biggest element as the main motif, circled in red on page 1,

are identical in shapes, arrangements, directions, and locations while there were some crude efforts to give the appearance of dissimilarity on some leaves or flowers. Neman Decl. ⁋32. Such also appear to be the result of lowering the printing cost for the garment's low pricing by simplifying some details and colors of the elements. Neman Decl. ⁋32. Pages 3, 4 and 5 also show the remaining elements used on the Infringing Garment 2 are nothing but a rotated or flipped version of the elements on the Subject Design 2. Neman Decl. ⁋32.

The first page of Exhibit 25 again shows the main motifs on the Infringing Garment 3 are copies of the elements on the Subject Design 3. Neman Decl. ⁋33. The second page shows all elements of the main motif circled in red on the first page are the same as the elements of the Subject Design 3. Neman Decl. ⁋33. The third page also shows the remaining elements are in fact a rotated or flipped version of the element on Subject Design 3. Neman Decl. ⁋33.

The above clearly establish the Subject Designs and the designs printed on the Infringing Garments are "virtually identical", which shows more than "striking similarity" for the presumption for excluding the possibility of independent creation. Further, as discussed above, Interfocus failed to present any evidence for independent creation at all.

(3) The Subject Designs And the Infringing Designs Are Substantially Similar And Interfocus Had Reasonable Opportunities to View the Subject Designs.

Copying is **presumed** upon showing that (1) that the defendant had **reasonable opportunity to access** to the plaintiff's work and (2) that the works are **substantially similar**." *L.A. Printex Indus, Inc. v. Aeropostale, Inc*. 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In the Ninth Circuit, the access and substantial similarity elements of infringement are "inextricably linked" by an inverse ratio rule. 9th CIRCUIT MODEL JURY

INSTRUCTION 17.16. See also *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work."). In *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1125-30 (9th Cir. 2018), the Ninth Circuit provided "To prove 'unlawful appropriation,' the works must share substantial similarities and those similarities must involve parts of the plaintiff's work that are original and therefore protected by copyright." (emphasis added) *Skidmore*, 905 F.3d at 1125 (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).

**The originality is presumed** because the United States Copyright Office granted Plaintiff a Certificate over the Subject Design, and "[s]ince originality of the author is a necessary condition to the validity of the copyright, it follows that a certificate of registration properly obtained within the prescribed five year period constitutes prima facie evidence of the author's originality." 3 NIMMER ON COPYRIGHT § 12.11[A] (1989).

For copyright purposes, **the required level of creativity is "minimal,"** and **"sweat of the brow" in creation is "wholly irrelevant."** CDN, Inc. v. Kapes, 197 F.3d 1256, 1259-61 (9th Cir. 1999). The circuit has recognized originality or creativity in a variety of works, including in: a price list that reflected selection and weighing of price date, see id.; a musical composition with the same pitch and sequence as another work, but with a nonidentical meter, tempo or key, see *Swirsky,* 376 F.3d at 851; and a picture, based on its subject, posture, background, lighting, or Perspective. See *United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978); see also *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018) (noting that photographer's "selection and arrangement of [creative] elements produced an image entitled to the broadest protection a photograph can receive").

(3-1) Substantial Similarity

The Ninth Circuit applies a two-part test in determining substantial similarity: the extrinsic test and the intrinsic test. *Three Boys Music Corp.*, 212 F.3d at 485. The

extrinsic test "considers whether two works share a similarity of ideas and expression based on external, objective criteria." *Smith*, 84 F.3d at 1218. In the context of comparing fabric designs, the extrinsic test examines "the similarities in their objective details in appearance, including, but not limited to, **the subject matter, shapes, colors, materials, and arrangement** of the representations." *L.A. Printex Indus., Inc.* 676 F.3d at 849 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002)) (internal quotations omitted). The intrinsic test, on the other hand, asks "whether the ordinary, reasonable person would find **the total concept and feel of the works** to be substantially similar." *Id.* (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)) (internal quotations omitted).[1]

"**It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar,** if in other respects, **similarity** as to a substantial element of plaintiff's work can be shown." (emphasis added) L.A. Printex Ind., 676 F. 3d. at 851 (citing 4 NIMMER ON COPYRIGHT § 13.03[B] [1][a]). Thus, **an analysis should focus on the elements that are similar**, **not on the elements that are dissimilar.** See 4 NIMMER ON COPYRIGHT § 13.03[B] [1][a] (2017).

"Fragmented literal similarity exists where the defendant copies **a portion of the plaintiff's work** exactly or nearly exactly, without appropriating the work's overall essence or structure." *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004). "[I]t is enough that substantial parts were lifted; **no plagiarist can excuse the wrong by showing how much of his work he did not pirate**." (emphasis added) *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). Along the same line, the Ninth Circuit Court also held "**Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important**, the finder of fact may properly find substantial similarity." (emphasis added) *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990).

An infringing design can be substantially similar even if the allegedly copied

---

[1] See also *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

material constitutes **only a small portion of the challenged work**. *Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc*., No. LACV1501556JAKMRWX, 2015 WL 12765142, at *5 (C.D. Cal. Oct. 29, 2015). **Copying of a "major sequence"** is enough to find substantial similarity. Id. (citing *Univ. Pictures Co. v. Harold Lloyd Corp.,* 162 F. 2d 354, 361 (9th Cir. 1947). Copying of these key elements of Plaintiff's design is **a reproduction of the "major sequences"** and **most "qualitatively important" aspects** of Plaintiff's work. See *Harold Lloyd Entm't, Inc.,* 2015 WL 12765142, at *5.

As discussed above, in this case, most of the objective details of the elements in their shapes, shades, locations, arrangements and colors are identical which easily passes the "extrinsic test". Exhibits 23-25. Further, due to the virtual identity of the elements, **the total concept and feel of the works** are also the same. Exhibits 23-25.

Accordingly, the above not only satisfies the substantial similarity test but also lower the needs to show the access in the "inverse-ratio" analysis.

<u>(3-2) Access</u>

Access can be shown if a Defendant had a reasonable opportunity to view, read, hear, or copy the plaintiff's work before the defendant's work was created. 9TH CIRCUIT MODEL JURY INSTRUCTION 17.16. One way to demonstrate access is by showing plaintiff's work was widely disseminated. *Id.* Given that there is no evidence of independent creation, in addition to the strong showing of the similarities, there is no need to prove access.  Even assuming arguendo, given the strong showing of similarities, Plaintiff in this case should prove access, the level of access required in the inverse ratio analysis is very low.

 Proof of access requires an opportunity to view the plaintiff's work. *L.A. Printex*, 676 F.3d at 846. To prove access, a plaintiff must show **a reasonable possibility** that the defendant had a chance to view the protected work. *Id.*  Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a chain of events linking the work and defendant's access to that work, or (2) widespread dissemination of the work. *Three Boys Music Corp*., 212 F.3d at 482.

In this case, as discussed above, Interfocus had actual access at least through the Prior Case, which establishes more than a reasonable possibility. Further, the striking similarities of the works also presume the access and copying.

In addition, NB widely disseminated the design by circulating the sample and selling fabrics bearing the designs at issue.

After the registrations of the new designs including the Subject Designs, Neman Brothers provided samples in the forms of swatch (a small piece of fabric), hanger (fabric sample with headers), and CAD (a piece of paper having the design printed upon) to the customers, who are primarily garment manufacturers, wholesalers and/or importers either located in, or using the vendors in, fashion districts in Los Angeles, CA, or Shenzhen and Shaoxing cities, China. Neman Brothers on a constant basis widely circulated the samples, and sold the fabrics, bearing the Subject Designs. Neman Decl. ¶14. While Neman Brothers give out swatches, hangers and CADs as samples for free to potential customers, in the case customers order a few yards, typically 1-5 yards, in order to make their garment samples, Neman Brothers charge more or less of $5 dollars per yard, depending on the quantity and the fabric type. Neman Decl. ¶14. Neman Brothers also provide samples using multiple different colorways for each design. Neman Decl. ¶14 - Exhibit 7.

As shown in the swatch sheet, Neman Brothers creates multiple style numbers based on kind of fabric, colorways, and the design, which is to be used for communications with customers and vendors. Neman Decl. ¶15. For Subject Design 1, Neman Brothers used 20335 as part of the style numbers. Neman Decl. ¶15. While other part of the style numbers may change depending upon the fabric type and the colorways, 20335 would be used to specify the design on the fabric would be the Subject Design 1. Neman Decl. ¶15.

Neman Brothers sold the fabrics bearing the Subject Design 1, identified as "20335", to customers in the amount of about 143,048 yards for 2 years since the registration in 2017 until early 2019. Neman Decl. ¶16 - Exhibit 8. Due to Interfocus' infringing

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive the orders for the fabrics bearing the Subject Design 1. Neman Decl. ℙ16 – Exhibit 8. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $214,572 per year. Neman Decl. ℙ16. At the rate of 30% margin, Neman Brothers' typical margin ratio, it is about $71,524 as lost profit per year, as to Subject Design 1. Neman Decl. ℙ16. Therefore, after Interfocus infringement, Neman Brothers lost $143,048 profits for the years of 2020 and 2021. Neman Decl. ℙ16.

For Subject Design 2, Neman Brothers used 20419 as part of the style numbers. Neman Decl. ℙ17 - Exhibit 9. Neman Brothers sold the fabrics bearing the Subject Design 2, identified as "20419", to customers in the amount of about 48,870 yards for 2 years mainly since the registration in 2017 until early 2019. Neman Decl. ℙ18 - Exhibit 10. Neman Brothers could sell some fabrics in 2020 and 2021 too, but the total amount compared to prior years, was minimal. Neman Decl. ℙ18 – Exhibit 10. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive, except a few, the orders for the fabrics bearing the Subject Design 2. Neman Decl. ℙ18 – Exhibit 10. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $73,305 per year. Neman Decl. ℙ18. At the rate of 30% margin, it is about $21,991.5 as lost profit per year, as to Subject Design 2. Neman Decl. ℙ18. Therefore, after Interfocus infringement, Neman Brothers lost $43,983 profits for the years of 2020 and 2021. Neman Decl. ℙ18.

For Subject Design 3, Neman Brothers used 21060 as part of the style numbers. While other part of the style numbers may change depending upon the fabric type and the colorways, 21060 would be used to specify the design on the fabric would be the Subject Design 3. Neman Decl. ℙ19 – Exhibit 11.

Neman Brothers sold the fabrics bearing the Subject Design 3, identified as "21060", to customers in the amount of about 16,247 yards for 2 years since the registration in early 2018 until 2019. Neman Decl. ℙ20 - Exhibit 12. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers received only a few orders for the fabrics bearing the Subject Design 3. Neman Decl. ℙ20 – Exhibit 12. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $24,370.5 per year. Neman Decl. ℙ20. At the rate of 30% margin, it is about $7,311.15 as lost profit per year, as to Subject Design 3. Neman Decl. ℙ20.

The above sufficiently establish Interfocus' reasonable possibility that it had access to the Subject Designs.

### 3. Plaintiff Is Entitled to Statutory Damages Against Interfocus As A Willful Infringer, Or An Innocent Infringer.

(1) Interfocus As A Willful Infringer

Against a willful infringer, courts may increase the award of statutory damages up to $150,000 for each design. Merely reckless behavior can support a finding of willful infringement under Copyright Act. 17 U.S.C.A. § 101 et seq. (West 2021). A finding of willful infringement under Copyright Act does **not require a showing of actual knowledge**; a showing of recklessness or willful blindness is sufficient. *Id.*

> Retail company acted recklessly or with **willful blindness** to fabric designer's copyright, so as to willfully infringe designer's copyright; designer presented evidence that company adopted **reckless policy** with regard to copyright infringement because it made **no attempt to check or inquire into whether any designs it used in its apparel were subject to copyright protections**, that company kept thousands of fabric swatches at its design studio that it had purchased from art studios or taken from

vintage clothing remnants, that company's designers used swatches to create thousands of apparel designs each year, and that company did **not attempt to discover origin of subject design**. *Unicolors, Inc. v. Urban Outfitters, Inc.,* 853 F.3d 980, 991-92 (9th Cir. 2019).

In this case, Interfocus had **reviewed, liked, ordered, tested, uploaded and sold the Infringing Garments 1 and 2 after the knowledge** about the Subject Designs 1 and 2, at least through the Prior Case. Interfocus' Operations Director Weiwei Le admitted she was in charge of legal issues by working closely with the U.S. attorneys and also in charge of operations of the Interfocus website patpat.com during the last five years which period include the time for the Prior Case. Moreover, Interfocus response to Interrogatories admitted Interfocus reviews and picks the garments, and controls the procedure of uploading, displaying and selling the garments. Jeong Decl. ¶¶36–37. In the ordinary procedures, Interfocus orders the garments it "likes" after it reviews the sample pictures, and do the quality inspection, and start sales of the garments. Jeong Decl. ¶36; Exhibit 42, Responses to Interrogatory No. 6. Interfocus further admitted it controlled the display procedure of the garments by stating Interfocus' vendors do not upload the information relating to the Infringing Garments. Jeong Decl. ¶37; Exhibit 42, Responses to Interrogatory No. 7.

In addition, as discussed above, the comparisons of the care tags of the Prior Infringing Garments 1 and 2 with the same of the Infringing Garments 1 and 2 show the Infringing Garments at issue in this case are not part of the prior production of the Prior Infringing Garments. Neman Decl. ¶34; Exhibits 39 and 40. It was a new production that happened in July 2020, which procedure started from May 2020 which was less than two months after the settlement on March 23, 2020 in the Prior Case. Neman Decl. ¶34; Exhibits 39 and 40.

The above clearly shows Interfocus soon after signing the Prior Settlement Agreement on March 23, 2020, promptly started the sampling procedure, reviewed the

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

samples of the Infringing Garments 1 and 2, ordered them again as Interfocus liked it in May 2020 (Exhibits 39 and 40), uploaded the garment pictures with the information on the website on July 1, 2020 for Infringing Garment 1 and June 19, 2020 for Infringing Garment 2 and sold them until September 16, 2020. Exhibit 33. Even worse, it turned out the Interfocus continued to sell the Prior Infringing Garment 1 and the Prior Infringing Garment 2 even after the Prior Settlement until September 2020. Jeong Decl. ¶38; Exhibit 33.

The above shows it is undisputed soon after the settlement of the Prior Case where the Subject Designs 1 and 2 were litigated, Interfocus again reviewed, chose, ordered, uploaded, displayed and sold the Infringing Garments 1 and 2, which sufficiently establishing more than mere reckless disregard or willful blindness. It was knowing and intentional misconducts.

Even as to Subject Design 3, Interfocus should be found to be a willful infringer under *Unicolors v. Urban Outfitters*. In response to the interrogatory asking about preventive measures Interfocus has taken, Interfocus stated Interfocus takes down the garments after receiving notices, which is not a "preventive" measure at all. Exhibit 42, Response to Interrogatory No. 18. Interfocus also stated in its response that it requires vendors to license its intellectual property to Interfocus. Again, it at the best means only if a vendor has an intellectual property, it would have to license it to Interfocus, which has nothing do to with reasonable preventive measure such as checking on the source of the design on the samples when reviewing and before making an order. In the discovery, Interfocus never produced any evidence showing such reasonable efforts. Jeong Decl. ¶41. The sampling procedure explained in Interfocus responses in fact admits it simply review, like and then order. Exhibit 42, Response to Interrogatory No. 6. There is no checking on copyright issues. Rather, even after knowing on the copyright issues, Interfocus would dare to order again, and display and sell online again. It is exactly what the Nineth Circuit Court called "willful blindness", "reckless policy", and "no attempt to

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

check or inquire" into copyright issues.

Accordingly, for Subject Designs 1, 2 and 3, the maximum statutory damages in the total amount of $450,000 should be given to Neman Brothers.

(2) Interfocus As An Innocent Infringer

A copyright owner may seek statutory damages in lieu of actual damages any time before the court renders its final judgment. 17 U.S.C.A. § 504(c) (West 2019). The statutory damages awarded **do not need to coincide with the actual dollar loss** caused by the infringement. *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004). The factors to be considered by the court in awarding statutory damages include: "(1) expenses saved and profits reaped by the defendant, (2) revenues lost by the plaintiffs, (3) the deterrent value of the award, and (4) whether the infringement was willful or innocent." *Broadcast Music, Inc. v. C.B.G., Inc.*, 2013 WL 6074121, at *4 (D. Mass. 2013) (*quoting Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1335 (D. Mass. 1994)).

A judge, in his discretion, may award between $750.00 and $30,000.00 as statutory damages for all infringements involved in the suit for any one work against any infringer absent a showing of willful infringement. 17 U.S.C.A. § 504(c)(1) (West 2021).

In this case, Interfocus produced only a self-serving chart made after receiving the cease and desist letter in September 2020, in anticipation of a litigation, which is nothing but a hearsay. In response to the interrogatories asking for accounting the total sales, earnings and costs, Interrogatory stated it would produce charts. Exhibit 42, Responses to Interrogatories 11 and 12. Interfocus never produced any real business records, such as purchase order, invoice, or sales reports from the sales record keeping system. Jeong Decl. ¶42. A defendant's refusal to state the volume and profits arising from alleged infringing activities during discovery supports a higher amount of statutory damages**. *See*

*Dive N'Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 383 (M.D. Fla 1993) (awarding maximum statutory damages to defendants who refused to provide sales information).

Therefore, if the Court finds Interfocus is merely an innocent infringer as to any of the Subject Designs, at least the maximum statutory damage in the amount of $30,000 for the individual design should be given to Neman Brothers.

## IV.    CONCLUSION

For all of the above reasons, a summary judgment should be granted for Plaintiff Neman Brothers and against Defendant Interfocus.

Alternatively, if this Court determines that summary judgment is inappropriate, Plaintiff respectfully requests that the Court summarily adjudicate the following issues:

1.  Plaintiff is the owner of the Subject Designs:

2.  Defendant copied the Subject Designs;

3.  Plaintiff is entitled to statutory damages in the amount of $450,000 against Defendant as a willful infringer, and/or an innocent infringer.

Plaintiff is entitled to recover its attorney's fees. Once Plaintiff's Motion for Summary Judgment is granted, the moving party will file a separate motion for attorney fees.

Dated: July 26, 2021

Respectfully submitted,

 */s/Chan Yong Jeong*

Chan Yong Jeong, Esq.

Attorney for Plaintiff

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**