CHAN YONG JEONG, ESQ. (SBN 255244)
 jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>    Plaintiff/Counter-Defendant,<br><br>    vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>    Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**PLAINTIFFS NEMAN BROTHERS & ASSOC., INC. LOCAL RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION**<br><br>Date: August 23, 2021<br>Time: 10 a.m.<br>Courtroom 8D<br>Honorable Judge Christina A. Snyder |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

## JOINT STATEMENT OF UNCONTROVERTED FACTS

|  | Uncontroverted Fact | Basis |
|---|---|---|
| 1. | Neman Brothers is a Los Angeles-based textile converter selling fabrics to the garment manufacturers that manufacture garments out of our fabrics, to be sold to the retailer businesses. Neman Brothers generates business by marketing its line of designs to its customers, who will purchase Neman Brothers' design-oriented fabric to be created into clothing and sold at retail stores nationwide. | Declaration of Yoel Neman ("Neman Decl.") ¶4. |
| 2. | As the fabric wholesale industry is very competitive as to the qualities and the pricing, one major way of enhancing the competitiveness is to develop unique designs to be printed upon the fabric, which would make the fabrics more attractive, unique and competitive. Therefore, having original and proprietary artwork is critical to Neman Brothers' ability to compete in the marketplace, and it invests heavily in its design team and its proprietary line of design. | Neman Decl. ¶5. |
| 3. | Neman Brothers either internally creates, or purchases the ownership from design studios, | Neman Decl. ¶6. |

| | | |
|---|---|---|
| | two-dimensional works of art for use on textiles which Neman Brothers customers use to make garments to be sold to retail businesses. | |
| 4. | Unauthorized use of Neman Brothers' designs undermines its competitive advantage in a highly competitive industry. Therefore, for protection of the designs, Neman Brothers routinely registers new artworks as a collection for copyrights with the U.S. Copyright Office before introducing them to the market. | Neman Decl. ¶7. |
| 5. | Unfortunately, as there are many businesses selling illegal copies, some willful infringers and some innocent infringers, Neman Brothers get to find many illegal copies, and for protection of its copyrights, has had to file numerous cases when the parties could not settle the matter prior to filing the actions. Most of the cases settled. In none of the settlement agreements in those cases, Neman Brothers never agreed the defendants' liability for future infringements would be completely released as long as the defendants remove the future infringing garments off their selves or website because it would be like giving a permanent unlimited license for free unless the defendants pay fair amount in return for such quasi-license. | Neman Decl. ¶7. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| 6. | Neman Brothers pays companies that perform printing services to print fabric bearing Neman Brothers' exclusive designs. Neman Brothers then sells that fabric to its customer base, which is composed mainly of companies that make and sell garments to retailers. | Neman Decl. ¶8. |
| 7. | Neman Brothers, whenever introducing new designs, make sure its vendors and customers understand that Neman Brothers' designs are proprietary work copyright registered. Neman Brothers' vendors agree to not print or sell fabric bearing Neman Brothers' designs unless specifically authorized by Neman Brothers. | Neman Decl. ¶9. |
| 8. | Neman Brothers is the owner of two-dimensional artworks called NB161106 ("Subject Design 1"), NB170268 ("Subject Design 2") and NB180228 ("Subject Design 3") which are at issue in this case | Neman Decl. ¶10. |
| 9. | The Subject Design 1 was registered with the United States Copyright Office on January 13, 2017, and allocated Registration VAu-1-304-334. | Neman Decl. ¶11 - Exhibit 1 and 2. |
| 10. | The Subject Design 2 was registered with the United States Copyright Office on March 3, | Neman Decl. ¶12 - Exhibit 3 and 4. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | 2017, and allocated Registration VAu-1-317-742. | |
| 11. | The Subject Design 3 was registered with the United States Copyright Office on April 30, 2018, and allocated Registration VAu-1-330-970. | Neman Decl. ¶13 - Exhibit 5 and 6. |
| 12. | After the registrations of the new designs including the Subject Designs, Neman Brothers provided samples in the forms of swatch (a small piece of fabric), hanger (fabric sample with headers), and CAD (a piece of paper having the design printed upon) to the customers, who are primarily garment manufacturers, wholesalers and/or importers either located in, or using the vendors in, fashion districts in Los Angeles, Shenzhen, Foshan, Guangzhou, and Shaoxing cities where most of factories and mills are located. | Neman Decl. ¶14. |
| 13. | Neman Brothers on a constant basis widely circulated the samples, and sold the fabrics, bearing the Subject Designs. | Neman Decl. ¶14. |
| 14. | While Neman Brothers give out swatches, hangers and CADs as samples for free to potential customers, in the case customers order a few yards, typically 1-5 yards, in order to | Neman Decl. ¶14 - Exhibit 7. |

| | | | |
|---|---|---|---|
| | | make their garment samples, Neman Brothers charge more or less of $5 dollars per yard, depending on the quantity and the fabric type. Neman Brothers also provide samples using multiple different colorways for each design. | |
| | 15. | As shown in the swatch sheet, Neman Brothers creates multiple style numbers based on kind of fabric, colorways, and the design, which is to be used for communications with customers and vendors. For Subject Design 1, Neman Brothers used 20335 as part of the style numbers. While other part of the style numbers may change depending upon the fabric type and the colorways, 20335 would be used to specify the design on the fabric would be the Subject Design 1. | Neman Decl. ¶15. |
| | 16. | Neman Brothers sales history records, maintained in the MOD2, a sale record keeping system, show each sale of fabrics bearing the Subject Design 1, identified as "20335", to customers in the amount of about 143,048 yards for 2 years since the registration in 2017 until early 2019, which typically makes 70,000 to 140,000 garments to be sold through retailers including national retail stores such as Rainbow, Macy's and other online stores. For | Neman Decl. ¶15; Exhibit 8. |

6

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | example, Byer California is one of the biggest garment manufacturers in the U.S. selling the garments to the national retail chains such as Kohl's, Macy's, etc. and actually used on multiple occasions in the years of 2017-2019 a factory located in Shaoxing City to make garments out of the Neman Brother's fabrics. Exhibit 8. | |
| 17. | Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive the orders for the fabrics bearing the Subject Design 1. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $214,572 per year. At the rate of 30% margin, Neman Brothers' typical margin ratio, it is about $71,524 as lost profit per year, as to Subject Design 1. Therefore, after Interfocus infringement, Neman Brothers lost $143,048 profits for the years of 2020 and 2021. | Neman Decl. ¶15. |
| 18. | Neman Brothers' swatch sheet showing multiple different colorways of the Subject Design 2. For Subject Design 2, Neman | Neman Decl. ¶17 - Exhibit 9. |

| | | |
|---|---|---|
| | Brothers used 20419 as part of the style numbers. | |
| 19. | Neman Brothers sales history records, maintained in the MOD2, a sale record keeping system, show each sale of fabrics bearing the Subject Design 2, identified as "20419", to customers in the amount of about 48,870 yards for 2 years mainly since the registration in 2017 until early 2019. Neman Brothers could sell some fabrics in 2020 and 2021 too, but the total amount compared to prior years, was minimal. | Neman Decl. ¶18 - Exhibit 10. |
| 20. | Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive, except a few, the orders for the fabrics bearing the Subject Design 2. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $73,305 per year. At the rate of 30% margin, it is about $21,991.5 as lost profit per year, as to Subject Design 2. Therefore, after Interfocus infringement, Neman Brothers lost $43,983 profits for the years of 2020 and 2021. | Neman Decl. ¶18 – Exhibit 10. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | 21. | Exhibit 11 is a true and correct copy of Neman Brothers' swatch sheet showing multiple different colorways of the Subject Design 3. For Subject Design 3, Neman Brothers used 21060 as part of the style numbers. While other part of the style numbers may change depending upon the fabric type and the colorways, 21060 would be used to specify the design on the fabric would be the Subject Design 3. | Neman Decl. ¶19 – Exhibit 11. |
| | 22. | Neman Brothers sales history records, maintained in the MOD2, our sales record keeping system, show each sale of fabrics bearing the Subject Design 3, identified as "21060", to customers in the amount of about 16,247 yards for 2 years since the registration in early 2018 until 2019. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers received only a few orders for the fabrics bearing the Subject Design 3. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $24,370.5 per year. At the rate of | Neman Decl. ¶20 - Exhibit 12. |

9
**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | 30% margin, it is about $7,311.15 as lost profit per year, as to Subject Design 3. | |
| 23. | In 2019, Interfocus infringed upon Neman Brothers' copyrights on Subject Design 1, by displaying and selling the Maternity Dress ("Prior Infringing Garment 1") and shown in Exhibit 13. Submitted herewith as Exhibit 13 is a copy of the screenshots from Interfocus' website (patpat.com) and the pictures of the actual garment. Therefore, Neman Brothers sued Interfocus in 2019 (case no. 2:19-cv-10112) ("Prior Case"). | Neman Decl. ¶21 – Exhibit 12. |
| 24. | Interfocus also displayed and sold Baby Floral Shirt and Dress ("Prior Infringing Garment 2") The said garments were also litigated in the Prior Case. | Neman Decl. ¶22 - Exhibit 14. |
| 25. | The Prior Case settled and the parties executed the settlement agreement ("Prior Settlement Agreement") as shown in | Neman Decl. ¶23 – Interfocus' Sealed Exhibit 3 in March 2020 (Docket no. 39). |
| 26. | Not long after the Prior Settlement, on September 4, 2020, I found Interfocus again displayed and sold the same Maternity Dress | Neman Decl. ¶24 – Exhibits 15-16. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | ("Infringing Garment 1") in "navy" and "red" colors as shown in Exhibits 15 to 18. I ordered and bought the Infringing Garment 1. Submitted herewith as Exhibits 15 through 17 are copies of the screenshots from Interfocus' website (patpat.com) displaying the Infringing Garment 1. The pictures of Infringing Garment 1 are also submitted as Exhibits 16 and 18. While the dress in the picture of the dress on the screenshot in the Prior Case had short sleeves, the actual garment I received was sleeveless. Exhibit 13. The Infringing Garment 1 I found and bought also were sleeveless and identical with the dress in the Prior Case. | |
| 27. | The care tags of the Prior Infringing Garment 1 and the Infringing Garment 1 however, indicated different Stock Keeping Unit ("SKU") numbers which means they were from different batches of production. They also had different Lot Numbers, different fabric substance ratios (75% cotton and 25% polyester v. 100% cotton), different labels (Interfocus v. Shenzhen YS Garment Factory), and different production times (201905 v. 202007). As it typically takes a couple of months from sampling to actual production, the production in July 2020 means Interfocus started the whole | Neman Decl. ¶25 – Exhibit 39. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | procedure of sampling, ordering, reviewing, etc. at least  from May 2020, which is less than two months after the Prior Settlement on March 23, 2020. | |
| 28. | On September 4, 2020, Neman Brothers also found Interfocus displayed and sold Baby Dress (Infringing Garment 2) which were using the exact same pattern with the Prior Infringing Garment 2). Neman Brothers ordered and bought the Infringing Garment 2. | Neman Decl. ¶26 – Exhibits 19 and 20. |
| 29. | The side-by-side comparison of the care tags of the two show that they also had different SKU numbers, Lot Numbers, different fabric substance ratios (100% cotton v. 95% cotton and 5% polyester), different labels (Interfocus v. Foshan SCCQ Trading Lt.), and different production times (201901 v. 202007). | Neman Decl. ¶27 – Exhibit 40. |
| 30. | Again, as it typically takes a couple of months from sampling to actual production, the production in July 2020 means Interfocus started the whole procedure of sampling, ordering, reviewing, etc. at least from May 2020, which is less than two months after the Prior Settlement on March 23, 2020. | Neman Decl. ¶27 – Exhibit 39. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| 31. | In October 2020, I also found another infringing garment called Green Maxi Dress ("Infringing Garment 3"). | Neman Decl. ¶28 – Exhibits 21 and 22. |
| 32. | The side-by-side comparisons of the Subject Designs and the Infringing Garments reveals they are virtually identical in most of the objective details of the elements forming the designs and even arrangements of the elements. The chance for the two independently created designs to happen to have the same elements identical in details and the same arrangement of those elements would be far less than one in a million, in other words impossible. | Neman Decl. ¶29 – Exhibits 23-25. |
| 33. | The first page of Exhibit 23 shows most of the elements, if not all, on the Infringing Garment 1 are copied from the Subject Design 1. The second page shows the major motif (indicated in red circles) having the main elements arranged in a certain way are identical while there were some crude efforts to give the appearance of dissimilarity on the Infringing Design 1 by taking out a few small leaves or flowers. Not only the arrangement, the shapes of the flower, flower buds, stems, leaves, and color shadings are also the same. These are not a combination of generic shapes like triangle, | Neman Decl. ¶30 – Exhibit 23. |

13
**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | circle, square or line, but about a very detailed hand-drawn and intricate description of flowers, stems, leaves, and their arrangement. No designer would not be able to draw the design twice in the exact same way in such details without seeing it and copying it. This part standing alone forms an original and protectible element, and the Infringing Garment 1 copied it. | |
| | 34. | Even the elements describing small flowers, small leaves, and small stems, as well as their shapes, shades, locations, colors, directions and arrangements are strikingly identical, which cannot possibly be a coincidence of two independently created design having such identities in every details. The second and the third pages of Exhibit 23 also show the remaining elements on Infringing Garment 1 were nothing but the result of flipping or rotating the elements of the Subject Design 1. | Neman Decl. ₱30 – Exhibit 23. |
| | 35. | The same is true about the Infringing Garment 2. On the first page, the circles in different colors indicate which parts are corresponding to each other on the two. Most of the elements, if not all, on the Infringing Garment 2 are from the elements of the Subject Design 2. | Neman Decl. ₱31 – Exhibit 24. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| 36. | The second page of Exhibit 24 shows the biggest element as the main motif, circled in red on page 1, are identical in shapes, arrangements, directions, and locations while there were some crude efforts to give the appearance of dissimilarity on some leaves or flowers. Such also appear to be the result of lowering the printing cost for the garment's low pricing by simplifying some details and colors of the elements. Pages 3, 4 and 5 also show the remaining elements used on the Infringing Garment 2 are nothing but a rotated or flipped version of the elements on the Subject Design 2. | Neman Decl. ¶32 – Exhibit 24. |
| 37. | The first page of Exhibit 25 again shows the main motifs on the Infringing Garment 3 are copies of the elements on the Subject Design 3. The second page shows all elements of the main motif circled in red on the first page are the same as the elements of the Subject Design 3. The third page also shows the remaining elements are in fact a rotated or flipped version of the element on Subject Design 3. | Neman Decl. ¶33 – Exhibit 25. |
| 38. | As discussed above, the comparisons of the care tags of the Prior Infringing Garments 1 and 2 with the same of the Infringing Garments 1 and 2 show the Infringing Garments at issue in this case are not part of the prior production of the | Neman Decl. ¶34 - Exhibits 39-40. |

| | | |
|---|---|---|
| | Prior Infringing Garments. It was a new production that happened in July 2020, which procedure started from May 2020 which was less than two months after the settlement on March 23, 2020 in the Prior Case. | |
| 39. | Interfocus failed to present any evidence for such rebuttal, rather, the evidence below strongly show that NB owns the Subject Design. For example, in response to the interrogatories asking about Interfocus' or its vendor's independent creation and any prior work, Interfocus stated only "**it is informed and believes** the designs at issue are very similar to independently created pre-existing designs…" which has no evidentiary value at all. (emphasis added) | Jeong Decl. ⁋35; Exhibit 42, Responses to Interrogatories No. 1-5. |
| 40. | Interfocus response to Interrogatory 6 admits that in the ordinary procedures, Interfocus orders the garments it likes after it reviews the sample pictures, and do the quality inspection, and start sales of the garments. | Jeong Decl. ⁋36; Exhibit 42, Responses to Interrogatory No. 6. |
| 41. | Interfocus further admitted it controled the display procedure of the garments by stating Interfocus' vendors do not upload the information relating to the Infringing Garments. | Jeong Decl. ⁋37; Exhibit 42, Responses to Interrogatory No. 7. |

16

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| 42. | The above clearly shows Interfocus soon after signing the Prior Settlement Agreement on March 23, 2020, promptly started the sampling procedure, reviewed the samples of the Infringing Garments 1 and 2, ordered them again as Interfocus liked it in May 2020 (Exhibits 39 and 40), uploaded the garment pictures with the information on the website on July 1, 2020 for Infringing Garment 1 and June 19, 2020 for Infringing Garment 2 and sold them until September 16, 2020. Exhibit 33. Even worse, it turned out the Interfocus continued to sell the Prior Infringing Garment 1 and the Prior Infringing Garment 2 even after the Prior Settlement until September 2020. Exhibit 33. | Jeong Decl. ¶38; Exhibits 33, 39, 40. |
| --- | --- | --- |
| 43. | The above shows it is undisputed soon after the settlement of the Prior Case where the Subject Designs 1 and 2 were litigated, Interfocus again reviewed, chose, ordered, uploaded, displayed and sold the Infringing Garments 1 and 2, which sufficiently establishing copying after the actual access. | Jeong Decl. ¶39. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| 44. | Even as to Subject Design 3, Interfocus should be found to be a willful infringer under *Unicolors v. Urban Outfitters*. In response to the interrogatory asking about preventive measures Interfocus has taken, Interfocus stated Interfocus takes down the garments after receiving notices, which is not a "preventive" measure at all. Interfocus also stated in its response that it requires vendors to license its intellectual property to Interfocus. Again, it at the best means only if a vendor has an intellectual property, it would have to license it to Interfocus, which has nothing do to with reasonable preventive measure such as checking on the source of the design on the samples when reviewing and before making an order. | Jeong Decl. ¶40; Exhibit 42, Response to Interrogatory No. 18. |
| --- | --- | --- |
| 45. | In the discovery, Interfocus never produced any evidence showing such reasonable efforts. The sampling procedure explained in Interfocus responses in fact admits it simply review, like and then order. There is no checking on copyright issues. Rather, even after knowing on the copyright issues, Interfocus would dare to order again, and display and sell online again. It is exactly what the Nineth Circuit Court called | Jeong Decl. ¶41; Exhibit 42, Response to Interrogatory No. 6. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | "willful blindness", "reckless policy", and "no attempt to check or inquire" into copyright issues. | |
| 46. | In this case, Interfocus produced only a self-serving chart made after receiving the cease and desist letter in September 2020, in anticipation of a litigation, which is nothing but a hearsay. In response to the interrogatories asking for accounting the total sales, earnings and costs, Interrogatory stated it would produce charts. Interfocus never produced any real business records, such as purchase order, invoice, or sales reports from the sales record keeping system. | Jeong Decl. ¶42; Exhibit 42, Responses to Interrogatories 11 and 12. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

## STATEMENTS OF CONCLUSIONS OF LAW

| | | |
|---|---|---|
| 1. | The purpose of summary judgment is to isolate and dispose of legally untenable or factually unsupportable claims. | *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) |
| 2. | Once the moving party meets this initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial; otherwise, the moving party is entitled to judgment as a matter of law. | Fed. R. Civ. P. 56(e) (West 2021); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986). |
| 3. | Once the burden is shifted, a mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." | *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). |
| 4. | To avoid entry of summary judgment, the opposing party must produce specific material evidence capable of "affect[ing] the outcome of the suit under the governing law." "Factual disputes that are irrelevant or unnecessary will not be counted." | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). |
| 5. | In addition, the non-moving party must "identify with reasonable particularity the evidence that precludes summary | *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). |

| | | |
|---|---|---|
| | judgment." A non-moving party is required to produce "evidence on which the jury could reasonably find for" the non-moving party. | |
| 6. | To meet its burden, the non-moving party's evidence must be substantive, a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." | *Addisu v. Fred Meyer, Inc.* 198 F. 3d 1130, 1134 (9th Cir. 2000). |
| 7. | And "uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. | *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). |
| 8. | Further, "[t]he non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders its claim implausible." | *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 U.S. Dist. LEXIS 3938, *10-11 (C.D. Cal. Feb. 22, 2000); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| 9. | Thus, "mere disagreement or the bald assertion [by the nonmovant] that a genuine issue of material fact exists" does not preclude summary judgment. | *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). |
|---|---|---|
| 10. | Infringement of a copyright occurs (1) when any one of the exclusive rights of a copyright owner has been violated. 17 U.S.C. § 501. The five exclusive rights, sometimes referred to as the "bundle of rights" belonging to an owner, are the rights to:<br>    1. Reproduce the work.<br>    2. Prepare derivative works based on the copyrighted work.<br>    3. Distribute copies to the public.<br>    4. Perform the work publicly.<br>    5. Display the copyrighted work publicly. | 17 U.S.C. § 106 (West 2021). |
| 11. | To establish infringement, a plaintiff **need only demonstrate that the alleged infringers violated at least one exclusive right** granted to copyright holders. | 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a) (West 2019); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | 12. | A copyright registration certificate constitutes **prima facie evidence** of the validity of the copyright and all facts stated on the certificates, including the statements relating to originality and Plaintiff's ownership of the designs. | 17 U.S.C. § 410(c) (West 2019); *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1144 (9th Cir. 2019), cert. denied, 140 S. Ct. 1294 (2020); 9th CIRCUIT MODEL JURY INSTRUCTION 17.5. |
| --- | --- | --- | --- |
| | 13. | Defendant bears **the burden of rebutting the presumption** of validity. *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). To invalidate this *prima facie* showing, Defendants must prove that the applicant defrauded the Copyright Office, and that the putative fraud related to the underlying ability to register the work. | *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). ; *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts")' 2-7 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.20[B], n.19 (1999) (a |

| | | | |
|---|---|---|---|
| | | | misstatement in the registration application does not "render the registration certificate incapable of supporting an infringement action"). |
| 14. | | Plaintiff should show that Defendant copied original aspects of its copyrighted design without its permission. | *L.A. Printex Indus, Inc. v. Aeropostale, Inc.* 676 F.3d 841, 846 (9th Cir. 2012). |
| 15. | | In addition to showing that a defendant **actually copied** the subject design, there are two ways to establish the "presumption" of Defendant's copying when there is no direct evidence of copying by presenting evidence demonstrating (1) **striking similarities** of the two designs: or (2) **substantial similarities in the inverse-ratio sliding scale with the defendants' reasonable opportunity to access** to the plaintiff's work. | *L.A. Printex Indus, Inc. v. Aeropostale, Inc.* 676 F.3d at 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d. Cir. 1976). |
| 16. | | Even if the evidence of Defendants' access were disputed, when two designs are "so strikingly similar as to preclude the possibility of independent creation, copying | *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (*citing Smith*, 84 F.3d at 1220; *See also Baxter*, 812 F.2d at 424, n.2 ("Proof of |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | may be proved without a showing of access." | striking similarity is an alternative means of proving 'copying' where proof of access is absent"), cert. denied, 484 U.S. 954 (1987)). |
| | 17. | Striking similarity exists when the similarities are sufficiently unique or complex as to make it unlikely that it was independently created. | *Selle v. Gibb*, 741 F.3d 896, 903 (7th Cir. 1984). |
| | 18. | A plaintiff "must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." | *Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D.Pa 1980) (*quoting Stratchborneo v. Arch Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973)). |
| | 19. | *Selle v. Gibb* identified six factors for determining striking similarity:  (1) the "striking similarity" is not merely a function of the number of identical notes that appear in both compositions: (2) the uniqueness of the sections that are asserted to be similar: (3) if the complaining work contains an unexpected departure from the normal metric structure or if the complaining work | *Selle v. Gibb*, 741 F.2d 896, 903-904 (7th Cir. 1984)( |

| | | | |
|---|---|---|---|
| | | includes what appears to be an error and the accused work repeats the unexpected element or the error, then it is more likely that there is some connection between the pieces: (4) if the similar sections are particularly intricate, then again it would seem more likely that the compositions are related: (5) some dissimilarities that may be particularly suspicious, such as inversion and substitution of certain words in a "crude effort to give the appearance of dissimilarity," are themselves evidence of copying: and (6) the similarity should appear in a sufficiently unique or complex context as to make it unlikely that both pieces were copied from a prior common source. | |
| | 20. | The 9th Circuit Court in *Unicolors, Inc. v. Urban Outfitters, Inc*. held;<br><br>We conclude that a district court may grant summary judgment for plaintiffs on the issue of copying when the works are so overwhelmingly similar that <u>the possibility of independent creation is</u> | (emphasis added) 853 F.3d 980, 987 (9th Cir. 2017), for additional opinion, see, 2017 WL 1247134 (9th Cir. 2017) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | precluded. The works at issue in this case meet this standard. The *objective similarities between the works are stark*: the shapes, motifs, arrangements, spacing, and colors of the images in each design are nearly identical.. | |
| | 21. | Copying is **presumed** upon showing that (1) that the defendant had **reasonable opportunity to access** to the plaintiff's work and (2) that the works are **substantially similar**." | *L.A. Printex Indus, Inc. v. Aeropostale, Inc*. 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In the Ninth Circuit, the access and substantial similarity elements of infringement are "inextricably linked" by an inverse ratio rule. 9th CIRCUIT MODEL JURY INSTRUCTION 17.16. See also *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Under the 'inverse ratio' rule, if a |

| | | |
|---|---|---|
| | | defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work."). |
| 22. | In *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1125-30 (9th Cir. 2018), the Ninth Circuit provided "To prove 'unlawful appropriation,' the works must share substantial similarities and those similarities must involve parts of the plaintiff's work that are original and therefore protected by copyright." | (emphasis added) *Skidmore*, 905 F.3d at 1125 (citing *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1117 (9th Cir. 2018)). |
| 23. | **The originality is presumed** because the United States Copyright Office granted Plaintiff a Certificate over the Subject Design, and "[s]ince originality of the author is a necessary condition to the validity of the copyright, it follows that a certificate of registration properly obtained within the prescribed five year period constitutes prima facie evidence of the author's originality." | 3 NIMMER ON COPYRIGHT § 12.11[A] (1989). |

| 24. | For copyright purposes, **the required level of creativity is "minimal,"** and **"sweat of the brow" in creation is "wholly irrelevant."** CDN, Inc. v. Kapes, 197 F.3d 1256, 1259-61 (9th Cir. 1999). The circuit has recognized originality or creativity in a variety of works, including in: a price list that reflected selection and weighing of price date, see id.; a musical composition with the same pitch and sequence as another work, but with a nonidentical meter, tempo or key, see *Swirsky,* 376 F.3d at 851; and a picture, based on its subject, posture, background, lighting, or Perspective. | See *United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978); see also *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018) (noting that photographer's "selection and arrangement of [creative] elements produced an image entitled to the broadest protection a photograph can receive"). |
| --- | --- | --- |
| 25. | The Ninth Circuit applies a two-part test in determining substantial similarity: the extrinsic test and the intrinsic test. *Three Boys Music Corp.*, 212 F.3d at 485. The extrinsic test "considers whether two works share a similarity of ideas and expression based on external, objective criteria." the context of comparing fabric designs, the extrinsic test examines "the similarities in their objective details in appearance, including, but not limited to, the subject | *Smith*, 84 F.3d at 1218; *L.A. Printex Indus., Inc.* 676 F.3d at 849 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002)) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)) (internal quotations omitted).[1] |

---

[1] See also *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | matter, shapes, colors, materials, and arrangement of the representations." (internal quotations omitted). The intrinsic test, on the other hand, asks "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." | |
| | 26. | "**It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar,** if in other respects, **similarity** as to a substantial element of plaintiff's work can be shown." | (emphasis added) L.A. Printex Ind., 676 F. 3d. at 851 (citing 4 NIMMER ON COPYRIGHT § 13.03[B][1][a]). Thus, **an analysis should focus on the elements that are similar, not on the elements that are dissimilar.** See 4 NIMMER ON COPYRIGHT § 13.03[B][1][a] (2017). |
| | 27. | "Fragmented literal similarity exists where the defendant copies **a portion of the plaintiff's work** exactly or nearly exactly, without appropriating the work's overall essence or structure." "[I]t | *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004); (emphasis added) *Sheldon v.Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). |

30

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | is enough that substantial parts were lifted; **no plagiarist can excuse the wrong by showing how much of his work he did not pirate**." | |
| 28. | Along the same line, the Ninth Circuit Court also held "**Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important**, the finder of fact may properly find substantial similarity." | (emphasis added) *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). |
| 29. | An infringing design can be substantially similar even if the allegedly copied material constitutes **only a small portion of the challenged work**. | *Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc.*, No. LACV1501556JAKMRWX, 2015 WL12765142, at *5 (C.D. Cal. Oct. 29, 2015). |
| 30. | **Copying of a "major sequence"** is enough to find substantial similarity. Id. (citing *Univ. Pictures Co. v. Harold Lloyd Corp.*, 162 F. 2d 354, 361 (9th Cir. 1947). Copying of these key elements of Plaintiff's design is **a reproduction of the "major sequences"** and **most "qualitatively important" aspects** of Plaintiff's work. | See *Harold Lloyd Entm't, Inc.*, 2015 WL 12765142, at *5. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| 31. | Access can be shown if a Defendant had a reasonable opportunity to view, read, hear, or copy the plaintiff's work before the defendant's work was created. One way to demonstrate access is by showing plaintiff's work was widely disseminated. | 9th CIRCUIT MODEL JURY INSTRUCTION 17.16. |
|-----|---|---|
| 32. | Given that there is no evidence of independent creation, in addition to the strong showing of the similarities, there is no need to prove access.  Even assuming arguendo, given the strong showing of similarities, Plaintiff in this case should prove access, the level of access required in the inverse ratio analysis is very low. Proof of access requires an opportunity to view the plaintiff's work. To prove access, a plaintiff must show **a reasonable possibility** that the defendant had a chance to view the protected work. Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a chain of events linking the work and defendant's access to that work, or (2) widespread dissemination of the work. | *L.A. Printex*, 676 F.3d at 846.; *Three Boys Music Corp.*, 212 F.3d at 482. |
| 33. | With respect to the willful infringement of Shosho and Ross, the court may increase the award of statutory damages up to $150,000. | 17 U.S.C.A. § 101 et seq. (West 2021). |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | Merely reckless behavior can support a finding of willful infringement under Copyright Act. 17 U.S.C.A. § 101 et seq. (West 2021).  A finding of willful infringement under Copyright Act does not require a showing of actual knowledge; a showing of recklessness or willful blindness is sufficient. 17 U.S.C.A. § 101 et seq. (West 2021). | |
| 34. | Retail company acted recklessly or with **willful blindness** to fabric designer's copyright, so as to willfully infringe designer's copyright; designer presented evidence that company adopted **reckless policy** with regard to copyright infringement because it made **no attempt to check or inquire into whether any designs it used in its apparel were subject to copyright protections**, that company kept thousands of fabric swatches at its design studio that it had purchased from art studios or taken from vintage clothing remnants, that company's designers used swatches to create thousands of apparel designs each year, and that company did **not attempt to discover origin of subject design**. | *Unicolors, Inc. v. Urban Outfitters, Inc.,* 853 F.3d 980, 991-92 (9th Cir. 2019). |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| 35. | A copyright owner may seek statutory damages in lieu of actual damages any time before the court renders its final judgment. | 17 U.S.C.A. § 504(c) (West 2019). |
|---|---|---|
| 36. | The statutory damages awarded do not need to coincide with the actual dollar loss caused by the infringement. | *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004). |
| 37. | The factors to be considered by the court in awarding statutory damages include: "(1) expenses saved and profits reaped by the defendant, (2) revenues lost by the plaintiffs, (3) the deterrent value of the award, and (4) whether the infringement was willful or innocent." | *Broadcast Music, Inc. v. C.B.G., Inc.*, 2013 WL 6074121, at *4 (D. Mass. 2013) (*quoting Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1335 (D. Mass. 1994)). |
| 38. | A judge, in his discretion, may award between $750.00 and $30,000.00 as statutory damages for all infringements involved in the suit for any one work against any infringer absent a showing of willful infringement. | 17 U.S.C.A. § 504(c)(1) (west 2021). |
| 39. | . A defendant's refusal to state the volume and profits arising from alleged infringing activities during discovery supports a higher amount of statutory damages**.** | *See Dive N'Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 383 (M.D. Fla 1993) (awarding maximum |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | | statutory damages to defendants who refused to provide sales information). |
|---|---|---|

Dated: July 26, 2021

Respectfully submitted,

_/s/Chan Yong Jeong_____

Chan Yong Jeong, Esq.

Attorney for Plaintiff

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**