CHAN YONG JEONG, ESQ. (SBN 255244)
  jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>　　　Plaintiff/Counter-Defendant,<br><br>　　　vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>　　　Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**DECLARATION OF YOEL NEMAN** |

DECLARATION OF YOEL NEMAN

I, YOEL NEMAN, declare:

1. I am over 18 years of age and have personal knowledge of each fact stated in this declaration. If called upon to testify thereto as a witness, I can and will testify. This declaration is submitted in support of Plaintiff's Motion for Summary Judgment and/or Adjudication against Defendant Interfocus, Inc. ("Interfocus"), and in opposition to Interfocus' Motion for Summary Judgment.

2. I am the president of Plaintiff NEMAN BROTHERS & ASSOC., INC. ("Plaintiff" or "Neman Brothers"). I have been working in the fashion industry involving fabrics, designs printed on the fabrics, and garments for over 30 years, and I am the duly authorized custodian of the business records, including the exhibits attached hereto.

3. I have the personal knowledge as to the manner of creation and maintenance of such business records. I hereby certify that the exhibits attached hereto have been created and maintained in Plaintiff's regular course of business, were made at or near the time of the act, condition or event recorded therein, and therefore, are true and genuine.

4. Neman Brothers is a Los Angeles-based textile converter selling fabrics to the garment manufacturers that manufacture garments out of our fabrics, to be sold to the retailer businesses. Neman Brothers generates business by marketing its line of designs to its customers, who will purchase Neman Brothers' design-oriented fabric to be created into clothing and sold at retail stores nationwide.

5. As the fabric wholesale industry is very competitive as to the qualities and the pricing, one major way of enhancing the competitiveness is to develop unique designs to be printed upon the fabric, which would make the fabrics more attractive, unique and competitive. Therefore, having original and proprietary artwork is critical to Neman Brothers' ability to compete in the marketplace, and it invests heavily in its design team and its proprietary line of design.

6. Neman Brothers either internally creates, or purchases the ownership from design studios, two-dimensional works of art for use on textiles which Neman Brothers customers use to make garments to be sold to retail businesses.

7. Unauthorized use of Neman Brothers' designs undermines its competitive advantage in a highly competitive industry. Therefore, for protection of the designs, Neman Brothers routinely registers new artworks as a collection for copyrights with the U.S. Copyright Office before introducing them to the market. Unfortunately, as there are many businesses selling illegal copies, some willful infringers and some innocent infringers, Neman Brothers get to find many illegal copies, and for protection of its copyrights, has had to file numerous cases when the parties could not settle the matter prior to filing the actions. Most of the cases settled. In none of the settlement agreements in those cases, Neman Brothers never agreed the defendants' liability for future infringements would be completely released as long as the defendants remove the future infringing garments off their selves or website because it would be like giving a permanent unlimited license for free unless the defendants pay fair amount in return for such quasi-license.

8. Neman Brothers pays companies that perform printing services to print fabric bearing Neman Brothers' exclusive designs. Neman Brothers then sells that fabric to its customer base, which is composed mainly of companies that make and sell garments to retailers.

9. Neman Brothers, whenever introducing new designs, make sure its vendors and customers understand that Neman Brothers' designs are proprietary work copyright registered. Neman Brothers' vendors agree to not print or sell fabric bearing Neman Brothers' designs unless specifically authorized by Neman Brothers.

10. Neman Brothers is the owner of two-dimensional artworks called NB161106 ("Subject Design 1"), NB170268 ("Subject Design 2") and NB180228 ("Subject Design 3") which are at issue in this case.

DECLARATION OF YOEL NEMAN

11. The Subject Design 1 was registered with the United States Copyright Office on January 13, 2017, and allocated Registration VAu-1-304-334. A true and correct copy of the Subject Design 1 and the Copyright Registration Certificate thereof are attached hereto as Exhibit 1 and 2.

12. The Subject Design 2 was registered with the United States Copyright Office on March 3, 2017, and allocated Registration VAu-1-317-742. A true and correct copy of the Subject Design 2 and the Copyright Registration Certificate thereof are attached hereto as Exhibit 3 and 4.

13. The Subject Design 3 was registered with the United States Copyright Office on April 30, 2018, and allocated Registration VAu-1-330-970. A true and correct copy of the Subject Design 3 and the Copyright Registration Certificate thereof are attached hereto as Exhibit 5 and 6.

14. After the registrations of the new designs including the Subject Designs, Neman Brothers provided samples in the forms of swatch (a small piece of fabric), hanger (fabric sample with headers), and CAD (a piece of paper having the design printed upon) to the customers, who are primarily garment manufacturers, wholesalers and/or importers either located in, or using the vendors in, fashion districts in Los Angeles, Shenzhen, Foshan, Guangzhou, and Shaoxing cities where most of factories and mills are located. Neman Brothers on a constant basis widely circulated the samples, and sold the fabrics, bearing the Subject Designs. While Neman Brothers give out swatches, hangers and CADs as samples for free to potential customers, in the case customers order a few yards, typically 1-5 yards, in order to make their garment samples, Neman Brothers charge more or less of $5 dollars per yard, depending on the quantity and the fabric type. Neman Brothers also provide samples using multiple different colorways for each design. Exhibit 7 is a true and correct copy of Neman Brothers' swatch sheet showing multiple different colorways of the Subject Design 1.

DECLARATION OF YOEL NEMAN

15. As shown in the swatch sheet, Neman Brothers creates multiple style numbers based on kind of fabric, colorways, and the design, which is to be used for communications with customers and vendors. For Subject Design 1, Neman Brothers used 20335 as part of the style numbers. While other part of the style numbers may change depending upon the fabric type and the colorways, 20335 would be used to specify the design on the fabric would be the Subject Design 1.

16. Exhibit 8 is a copy of Neman Brothers sales history records, maintained in the MOD2, a sale record keeping system, describing each sale of fabrics bearing the Subject Design 1, identified as "20335", to customers in the amount of about 143,048 yards for 2 years since the registration in 2017 until early 2019, which typically makes 70,000 to 140,000 garments to be sold through retailers including national retail stores such as Rainbow, Macy's and other online stores. For example, Byer California is one of the biggest garment manufacturers in the U.S. selling the garments to the national retail chains such as Kohl's, Macy's, etc. and actually used on multiple occasions in the years of 2017-2019 a factory located in Shaoxing City to make garments out of the Neman Brother's fabrics. Exhibit 8. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive the orders for the fabrics bearing the Subject Design 1. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $214,572 per year. At the rate of 30% margin, Neman Brothers' typical margin ratio, it is about $71,524 as lost profit per year, as to Subject Design 1. Therefore, after Interfocus infringement, Neman Brothers lost $143,048 profits for the years of 2020 and 2021.

17. Exhibit 9 is a true and correct copy of Neman Brothers' swatch sheet showing multiple different colorways of the Subject Design 2. For Subject Design 2, Neman Brothers used 20419 as part of the style numbers.

DECLARATION OF YOEL NEMAN

18. Exhibit 10 is a copy of Neman Brothers sales history records, maintained in the MOD2, a sale record keeping system, describing each sale of fabrics bearing the Subject Design 2, identified as "20419", to customers in the amount of about 48,870 yards for 2 years mainly since the registration in 2017 until early 2019. Neman Brothers could sell some fabrics in 2020 and 2021 too, but the total amount compared to prior years, was minimal. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers did not receive, except a few, the orders for the fabrics bearing the Subject Design 2. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its loss of sale from the infringement amounts to $73,305 per year. At the rate of 30% margin, it is about $21,991.5 as lost profit per year, as to Subject Design 2. Therefore, after Interfocus infringement, Neman Brothers lost $43,983 profits for the years of 2020 and 2021.

19. Exhibit 11 is a true and correct copy of Neman Brothers' swatch sheet showing multiple different colorways of the Subject Design 3. For Subject Design 3, Neman Brothers used 21060 as part of the style numbers. While other part of the style numbers may change depending upon the fabric type and the colorways, 21060 would be used to specify the design on the fabric would be the Subject Design 3.

20. Exhibit 12 is a copy of Neman Brothers sales history records, maintained in the MOD2, our sales record keeping system, describing each sale of fabrics bearing the Subject Design 3, identified as "21060", to customers in the amount of about 16,247 yards for 2 years since the registration in early 2018 until 2019. Due to Interfocus' infringing activities in 2019 and 2020 of displaying and selling the Infringing Garments on its website, from the second half of 2019 and until the present, Neman Brothers received only a few orders for the fabrics bearing the Subject Design 3. Given Neman Brothers typically sells the fabrics for more or less of $3 per yard, its

DECLARATION OF YOEL NEMAN

loss of sale from the infringement amounts to $24,370.5 per year. At the rate of 30% margin, it is about $7,311.15 as lost profit per year, as to Subject Design 3.

21. In 2019, Interfocus infringed upon Neman Brothers' copyrights on Subject Design 1, by displaying and selling the Maternity Dress ("Prior Infringing Garment 1") and shown in Exhibit 13. Submitted herewith as Exhibit 13 is a copy of the screenshots from Interfocus' website (patpat.com) and the pictures of the actual garment. Therefore, Neman Brothers sued Interfocus in 2019 (case no. 2:19-cv-10112) ("Prior Case").

22. Interfocus also displayed and sold Baby Floral Shirt and Dress ("Prior Infringing Garment 2") shown in Exhibit 14. Submitted herewith as Exhibit 14 is a copy of the screenshot from Interfocus' website and the pictures of the actual garment. The said garments were also litigated in the Prior Case.

23. The Prior Case settled and the parties executed the settlement agreement ("Prior Settlement Agreement") as shown in Interfocus' Sealed Exhibit 3 in March 2020 (Docket no. 39).

24. Not long after the Prior Settlement, on September 4, 2020, I found Interfocus again displayed and sold the same Maternity Dress ("Infringing Garment 1") in "navy" and "red" colors as shown in Exhibits 15 to 18. I ordered and bought the Infringing Garment 1. Submitted herewith as Exhibits 15 through 17 are copies of the screenshots from Interfocus' website (patpat.com) displaying the Infringing Garment 1. The pictures of Infringing Garment 1 are also submitted as Exhibits 16 and 18. While the dress in the picture of the dress on the screenshot in the Prior Case had short sleeves, the actual garment I received was sleeveless. Exhibit 13. The Infringing Garment 1 I found and bought also were sleeveless and identical with the dress in the Prior Case. Exhibits 15 and 16.

25. The care tags of the Prior Infringing Garment 1 and the Infringing Garment 1 however, indicated different Stock Keeping Unit ("SKU") numbers which means

DECLARATION OF YOEL NEMAN

they were from different batches of production. Exhibit 39. Submitted herewith as Exhibit 39 is a side-by-side comparison of the care tags of the Prior Infringing Garment 1 and the Infringing Garment 1. They also had different Lot Numbers, different fabric substance ratios (75% cotton and 25% polyester v. 100% cotton), different labels (Interfocus v. Shenzhen YS Garment Factory), and different production times (201905 v. 202007). Exhibit 39. As it typically takes a couple of months from sampling to actual production, the production in July 2020 means Interfocus started the whole procedure of sampling, ordering, reviewing, etc. at least from May 2020, which is less than two months after the Prior Settlement on March 23, 2020. Exhibit 39.

26. On September 4, 2020, I also found Interfocus displayed and sold Baby Dress (Infringing Garment 2) which were using the exact same pattern with the Prior Infringing Garment 2). Exhibit 19. Submitted herewith as Exhibit 19 is a screenshot from the Interfocus Website displaying the Infringing Garment 2. I ordered and bought the Infringing Garment 2. The pictures of Infringing Garment 2 are also submitted as Exhibit 20.

27. The side-by-side comparison of the care tags of the two show that they also had different SKU numbers, Lot Numbers, different fabric substance ratios (100% cotton v. 95% cotton and 5% polyester), different labels (Interfocus v. Foshan SCCQ Trading Lt.), and different production times (201901 v. 202007). Submitted herewith as Exhibit 40 is a side-by-side comparison of the care tags of the Prior Infringing Garment 2 and the Infringing Garment 2. Again, as it typically takes a couple of months from sampling to actual production, the production in July 2020 means Interfocus started the whole procedure of sampling, ordering, reviewing, etc. at least from May 2020, which is less than two months after the Prior Settlement on March 23, 2020. Exhibit 39.

28. In October 2020, I also found another infringing garment called Green Maxi Dress

DECLARATION OF YOEL NEMAN

("Infringing Garment 3"). The screenshots and pictures of Infringing Garment 3 are also submitted as Exhibits 21 and 22.

29. The side-by-side comparisons of the Subject Designs and the Infringing Garments reveals they are virtually identical in most of the objective details of the elements forming the designs and even arrangements of the elements. The chance for the two independently created designs to happen to have the same elements identical in details and the same arrangement of those elements would be far less than one in a million, in other words impossible.

30. Submitted herewith as Exhibit 23 is the side-by-side comparisons of the Subject Design 1 and the design printed on the Infringing Garment 1. The first page of Exhibit 23 shows most of the elements, if not all, on the Infringing Garment 1 are copied from the Subject Design 1. The second page shows the major motif (indicated in red circles) having the main elements arranged in a certain way are identical while there were some crude efforts to give the appearance of dissimilarity on the Infringing Design 1 by taking out a few small leaves or flowers. Not only the arrangement, the shapes of the flower, flower buds, stems, leaves, and color shadings are also the same. These are not a combination of generic shapes like triangle, circle, square or line, but about a very detailed hand-drawn and intricate description of flowers, stems, leaves, and their arrangement. No designer would not be able to draw the design twice in the exact same way in such details without seeing it and copying it. This part standing alone forms an original and protectible element, and the Infringing Garment 1 copied it. Even the elements describing small flowers, small leaves, and small stems, as well as their shapes, shades, locations, colors, directions and arrangements are strikingly identical, which cannot possibly be a coincidence of two independently created design having such identities in every details. The second and the third pages of Exhibit 23 also show the remaining elements on Infringing Garment 1 were nothing but the result of flipping or rotating

DECLARATION OF YOEL NEMAN

the elements of the Subject Design 1.

31. The same is true about the Infringing Garment 2. Submitted herewith as Exhibit 24 is the side-by-side comparison of the Subject Design 2 and the Infringing Garment 2. On the first page, the circles in different colors indicate which parts are corresponding to each other on the two. Exhibit 24. Most of the elements, if not all, on the Infringing Garment 2 are from the elements of the Subject Design 2. Exhibit 24.

32. The second page of Exhibit 24 shows the biggest element as the main motif, circled in red on page 1, are identical in shapes, arrangements, directions, and locations while there were some crude efforts to give the appearance of dissimilarity on some leaves or flowers. Such also appear to be the result of lowering the printing cost for the garment's low pricing by simplifying some details and colors of the elements. Pages 3, 4 and 5 also show the remaining elements used on the Infringing Garment 2 are nothing but a rotated or flipped version of the elements on the Subject Design 2.

33. Submitted herewith as Exhibit 25 is the side-by-side comparison of the Subject Design 3 and the Infringing Garment 3. The first page again shows the main motifs on the Infringing Garment 3 are copies of the elements on the Subject Design 3. The second page shows all elements of the main motif circled in red on the first page are the same as the elements of the Subject Design 3. The third page also shows the remaining elements are in fact a rotated or flipped version of the element on Subject Design 3.

34. As discussed above, the comparisons of the care tags of the Prior Infringing Garments 1 and 2 with the same of the Infringing Garments 1 and 2 show the Infringing Garments at issue in this case are not part of the prior production of the Prior Infringing Garments. Exhibits 39-40. It was a new production that happened in July 2020, which procedure started from May 2020 which was less than two months after the settlement on March 23, 2020 in the Prior Case. Exhibits 39-40.

DECLARATION OF YOEL NEMAN

*Under penalty of perjury under the laws of the State of California, I declare that the foregoing is true and correct.*

Dated: July 26, 2021                               Respectfully submitted by,

_____
Yoel Neman
Director and Custodian of Records for
Neman Brothers & Assoc., Inc.

DECLARATION OF YOEL NEMAN