CHAN YONG JEONG, ESQ. (SBN 255244)
 jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>　　　　vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>　　　　Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**DECLARATION OF CHAN YONG JEONG, ESQ.** |

I, CHAN YONG JEONG, declare:

1. I am the attorney for Plaintiff/Cross-defendant Neman Brothers in this action. I was also the counsel for Neman Brothers in the prior case against Interfocus. ("Prior Case")

2. I am over 18 years of age and have personal knowledge of each fact stated in this

1
**DECLARATION OF CHAN YONG JEONG
IN OPPOSITION TO INTERFOCUS MOTION**

declaration.  If called upon to testify thereto as a witness, I can and will testify.

3. This declaration is submitted in support of Plaintiff's Motion for Summary Judgment, and in opposition to Interfocus Motion for summary judgment.

4. In this present case, the section 5 using the word "cure" clarifies what the section intended by expressly providing;

> "Plaintiff agrees that it will not file a lawsuit or lodge a complaint against Defendant for an alleged infringement before the expiration of **thiity (30) days after given Defendant Adequate Notice of the alleged infringement to allow Paities time to <u>resolve the dispute</u> ainicably**."
> (Interfocus' Sealed Exhibit 3 and Redacted Exhibit 2).

5. Obvious is that the Parties agreed "dispute" remains to be resolved, even after the seven business days to "cure". Interfocus may or may not decide there is any infringement and therefore, it may or may not take down the accused garments. With that, the Parties were to negotiate the settlement. Interfocus' Sealed Exhibit 3 and Redacted Exhibit 2.

6. Further, Section 6 also states; [1]

> "The Parties agree to make **good faith efforts to settle all future disputes** (if any). For instance, the Parties optionally may enter into commercially feasible transactions, such as a license agreement for the sale of the garments bearing Plaintiff's designs by InterFocus." Interfocus' Sealed Exhibit 3 and Redacted Exhibit 2.

7. If the Parties really intended "cure" to mean "complete release from liability by taking down the garments from the website", Section 6 would have not needed at all. The same settlement agreement in the same section 5 and the subsequent section 6 expressly and clearly state, at least twice that there would be disputes, which the parties were to try to settle in "good faith" "amicably".

---

[1]   For unknown reason, while unilaterally disclosing, without Neman Brother's consent, Sections 5 and 7, Interfocus redacted Section 6.

8. The settlement agreement as a contract is clear as to what the parties intended and what "cure" would mean. While "cure" was not a good choice[2] of a word, the parties still made it clear as to what and how to be done when there would be a subsequent infringement after the execution of the settlement, that is, giving seven business days to Interfocus to take down the accused garment, taking 30 days to negotiate the settlement, and if no settlement, Neman Brothers may file a suit.

9. Even assuming arguendo the above is still not sufficiently clear but uncertain, the analysis discussed below, pursuant to the applicable statutes and the case law, would again make it clear that Interfocus is playing a word game in bad faith.

10. After receiving Neman Brothers' cease and desist letter, Interfocus wrote a reply letter on October 5, 2021. After confirming "InterFocus promptly removed the product listings at issue", the letter[3] on the second page stated;

> "As a **gesture of good faith** and **in accordance with Section 6** of the parties' Settlement Agreement and Mutual Release dated March 23, 2020, InterFocus provides the following summary **information regarding sales**[4]

---

[2] The term "cure" was put by Interfocus while negotiating on the drafts. Submitted herewith as Exhibit 26 is a true and correct copy of Email from Interfocus Counsel with Settlement Draft 1 in the Prior Case.

[3] The writer of the said letter was Ms. Linna Chen who represented Interfocus during the negotiation of the settlement agreement in the prior case and during the negotiation of the subsequent infringement before filing this case. Mr. Mark Lee was retained for Interfocus for the first time, after February 2, 2021, about two months after this case was filed. Exhibit 41. Submitted herewith as Exhibit 41 is a true and correct copy of Mr. Mark Lee's Email dated February 2, 2021.

[4] Interfocus' witness Weiwei Le also admits in her declaration that after she personally reviewed the cease and desist letter and saw Neman Brothers' counsel arguing about "additional copyright infringements", she "requested that I be provided with all available **information concerning the extent of such sales**" which would have not been needed had she really thought Interfocus' cure would bar Neman Brothers' claims. Decl. of Weiwei Le (Docket 35-1), ¶¶6-7.

**of the articles at issue** that were made on the PatPat platfonn." (emphasis added) Exhibit 33.

11. Submitted herewith as Exhibit 33 is a true and correct copy of Interfocus Counsel's Letter dated October 5, 2020.

12. The same letter at the end also stated;

"InterFocus has removed the product listings identified in your letter and **is further prepared to pay to your client its entire profit** [amount redacted] from sales of the articles at issue. Please let us know if you agree." (emphasis added) Exhibit 33.

13. In addition, in the subsequent negotiations, Interfocus indicated again that Interfocus knew what Sections 5 and 6 meant and that "cure" did not mean release from infringement liabilities. In emails on September 18, 2020 and September 29, 2020, Neman Brothers' counsel Mr. Jeong wrote "Please email me the records of purchase and sale so that we can discuss the settlement" and "10/15 is the last day we can settle by, before filing a lawsuit. I did not receive any sale/purchase records." Exhibit 31. Submitted herewith as Exhibit 31 is a true and correct copy of Emails exchanged for settlement discussions, dated September 18 and September 29, 2020.

14. In response, Interfocus counsel wrote "We have compiled the sales information and are preparing a response to you." Exhibit 31.

15. After receiving from Neman Brothers' counsel the counteroffer with the arguments about Interfocus' willful infringement liability under *Unicolors, Inc. v. UrbanOutfitters, Inc.*, 853 F.3d 980, 991-92 (9th Cir. 2019) (Exhibit 32), Interfocus counsel Mr. David Yang stated "InterFocus has already taken down the items identified in your letter. There is thus no need for your client to rush to file a new lawsuit. With all due respect, we would consider a rush to the courthouse to be inconsistent with **the two sides' agreement to make good faith efforts to settle their future disputes**." Exhibit 34. He also wrote to suggest "to negotiate a business deal **rather than to have the two sides waste time and**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**money on litigation**" and then, suggested to combine the settlement with the license deal to fill the gap of the offered amounts between the parties. Exhibit 34. Submitted herewith as Exhibits 32 and 34 are a true and correct copy of the Emails exchanged for settlement discussions, dated October 5 and October 6, 2020.

16. On November 12, 2020, the counsels for the parties had a telephone conversation, and next day, Ms. Chen wrote "Nice talking to you yesterday. **I look forward to (1) the proposed settlement agreement**, and (2) example Neman Brothers' design files." Exhibit 35. Submitted herewith as Exhibit 35 is a true and correct copy of Email from Interfocus Cou.nsel asking for a Settlement Agreement draft dated November 13, 2020

17. At the said teleconference, the parties reached an agreement on the amount and major terms of the licensing. Neman Brothers' counsel then sent a settlement draft by making changes to the prior settlement agreement putting the agreed-upon amount and adding the terms of the licensing.

18. The draft provided;

> WHEREAS, on or about September 15, 2020, Plaintiff served a cease and desist letter to Defendant [Interfocs] pursuant to section 5 of the prior settlement agreement ("Prior Settlement Agreement") executed in March 2020, regarding certain garments displayed and sold at Defendant's website. www.patpat.com ("Website") which Plaintiff believed to have infringed upon its copyrights for certain designs as specified therein (the "Dispute"); WHEREAS, **the Parties now desire to resolve all disputes**. and enter a Licensing agreement between them in an orderly manner… Exhibit 36.

19. Submitted herewith as Exhibit 36 is a true and correct copy of the First Draft of the Settlement Agreement Negotiated between Neman Brothers and Interfocus (not executed).

20. In returning the draft after their review, Interfocus did not make any change to the above "Whereas" clauses or the amount while making changes to the terms of the licensing. Exhibit 37. Submitted herewith as Exhibit 37 is a true and correct copy of the Final Draft of the Settlement Agreement Negotiated between Neman

Brothers and Interfocus (not executed). As this time, the new settlement was to include the licensing, the sections 5 and 6 from the prior settlement agreement were mostly deleted. Exhibit 37. In the course of the negotiations, Neman Brothers in good faith emailed multiple designs and its copyright registrations for Interfocus' review. However, in the end, after wasting two months until November 2020, Interfocus refused to sign the settlement with no explanation.

21. NEVER did Interfocus argued that all of the copyright infringement were "cured", throughout the whole negotiation from September 15 until November 18, 2020. Rather, Interfocus knew what it agreed to, and did negotiate the settlement pursuant to Sections 5 and 6 of the prior settlement agreement. It was only after this lawsuit was filed and the new counsel Mr. Mark Lee appeared in this case, when Interfocus at a sudden started making the frivolous argument for "cure", which is nothing but a word play.

22. When settling the Prior Case, Ms. Chen for Interfocus made the first draft. Exhibit 26. In her first draft, she stated at the end of Section 5 "**Plaintiff further agrees not to seek further remedies including legal remedies once Defendant has cured** the alleged infringement by removing the allegedly infringed products and/or designs…" (emphasis added) Exhibit 26. Then, Neman Brothers' counsel **deleted** the said part, and added to the end of Section 6 to limit the scope of the release "…to the extent it relates to the past sale of the gaiments by Interfocus, shown in Exhibits C-1 through C-7 attached to the complaint (Docket No. 1) in the Action as of 11/26/2019." Exhibit 27, sections 5 and 7. Submitted herewith as Exhibit 27 is a true and correct copy of the Email from Neman Brothers Counsel with Settlement Draft 2 in the Prior Case.

23. Then, Ms. Chen again put in the draft "Plaintiff further agrees that for any infringement incurred after the Effective Date, **Defendant's legal obligation is limited to (1) removing** any infringing products and/or design from its website and social media account within the time limit as specified in this Agreement;

       **and (2) providing Plaintiff all profit** made by Defendant relating to the infringed products and/or designs." (emphasis added) Exhibit 28, section 5. Submitted herewith as Exhibit 28 is a true and correct copy of the Email from Interfocus Counsel with Settlement Draft 3 in the Prior Case.

24. Interfocus accepted the addition to Section 6. Exhibit 28, section 6. Mr. Jeong again **deleted** Ms. Chen's addition, and in his email stated "**Plaintiff will not waive any rights about the future actions if any.** We never do that unless Defendant pays more for it. If your client can pay 100k, my client can give an unlimited license to use the designs to sell the garments through Patpat website. Otherwise, there is no reason for Plaintiff to waive its right to sue your client for future infringements." (emphasis added) Exhibit 29. Submitted herewith as Exhibit 29 is a true and correct copy of the Email from Neman Brothers Counsel with Settlement Draft in the Prior Case.

25. Interfocus accepted the changes. Exhibit 30. Submitted herewith as Exhibit 30 is a true and correct copy of the Email from Interfocus Counsel approving the Final Draft of the Settlement Agreement in the Prior Case.

26. As stated in the email, there was no special circumstances to give Interfocus a de facto permanent and unlimited license to use Neman Brothers' design until it gets caught without having to pay any damages. The Prior Case was one of the typical copyright infringement cases, and the Settlement Funds to be paid was not big enough to cover such a de facto license to Interfocus. Given the above, from the time of negotiating the agreement, and even thereafter, receiving the cease and desist letter on September 15, 2020, throughout the whole time, it was very clear between the parties, there was no release whatsoever as to the future infringements subsequent to March 2020.

27. Interfocus' interpretation of "cure", if followed, would result in that no matter how many infringements for how much and how often, Interfocus would be fine as long as it takes down the accused garments within seven business days after

receiving the Neman Brothers' notice. It only paid $15,000 for a settlement of a litigation, which Interfocus claims to be the payment for **a de facto permanent and unlimited license** to use for sale on their website until the time it gets caught.[5] If followed, it would be a forfeiture of Neman Brothers' rights to take necessary actions to protect its copyrights and seek damages provided by the U.S. Copyrights Acts.

28. As discussed above, in the course of the negotiations, Neman Brothers in good faith tried to settlement the matters by even combining it with a licensing. It even emailed multiple designs and its copyright registrations for Interfocus' review. However, in the end, after wasting two months until November 2020, Interfocus refused to sign the settlement with no explanation.

29. The above made it clear Interfocus was playing only a delay game with no good faith efforts to settle, and would do the same even if Neman Brothers starts over with the issue of the Infringing Garment 3, which would be nothing but a waste of time only to repeat the same discussion that Interfocus frustrated. It forms a material breach as to the Infringing Garments 1 and 2, and a repudiation as to the Infringing Garment 3.

30. Infringing Garment 3 was found in October 2021, and was discussed and agreed to be covered by Section 8 (Mutual Release) of the final draft of the subsequent settlement which specified the release to be given to Interfocus to the extent it relates to the past sale of the garments through the Website on or before the Effective Date, which was defined to be the full execution date in November 2020. Exhibit 37.

31. As Interfocus complained of it, Neman Brothers' counsel offered to voluntarily dismiss without prejudice the claim on the Infringing Garment 3 and start over the procedure under Sections 5 and 6 as to the Infringing Garment 3, but

---

[5]   Ironically, Interfocus agreed to $85,000 for the settlement of the pending infringement issues with the licensing only for two years. Exhibit 37.

Interfocus also refused to do so. On February 2, 2021, when Mr. Mark Lee contacted Mr. Jeong for the first time to request a stipulation to extend the due date to file the answer, and until the time of filing the answer and the counterclaim on February 19, 2020 (Dockets 17 and 18), Mr. Lee never attempted to confer on the issue of Infringing Garment 3. After filing the pleadings, Mr. Lee refused to stipulate to the dismissal of the related claim without prejudice.

32. Interfocus' argument based on the case against One Step Up ("OSU Matter") is misplaced and off the points of this case. In the OSU Matter, as the court's ruling clearly stated the settlement agreement at issue provided a release to the OSU to the extent it was specified in Section 2. Exhibit 38, p. 5 of 8. Submitted herewith as Exhibit 38 is a true and correct copy of the Ruling on the MSJ in Neman Brothers v. One Step Up (2:17-cv-6400-RGK-SS).

33. The said agreement stated the release applies to "all claims that Neman Brothers "may have in com1ection with any conduct involving the Accused Ga1ments, to the extent such conduct pe1tains to the goods set forth or described in Section 2 above ...." Exhibit 38, p. 5 of 8. Therefore, the question was whether the accused garments at issue were part of the 18,400 garments specified in Section 2. Exhibit 38, p. 5-6 of 8.

34. In this case, however, the release was given "**to the extent it relates to the past sale** of the garments by InterFocus, shown in Exhibits C-1 through C-7 attached to the complaint (Docket No. 1) in the Action filed on 11/26/2019." Defendant's Redacted Exhibit 2, Section 7. The prior settlement agreement was executed as of March 2020. Defendant's Redacted Exhibit 2, Section 7. Therefore, the question is whether the Infringing Garments sold after March 2020. As admitted in Interfocus counsel's letter in October 2020, the said garments were uploaded for sale after March 2020 and until September 2020: Infringing Garment 1 (both navy and red) on July 1, 2020, Infringing Garment 2 on June 19, 2020. Exhibit 33, p.2-3. As discussed above, the Infringing Garment 3 was on the Interfocus

9
**DECLARATION OF CHAN YONG JEONG
IN OPPOSITION TO INTERFOCUS MOTION**

Website as of October 2020 so that Neman Brothers could actually purchase the garment. Exhibit 22, p.2. Further, one of the caretags showing the production information indicated "Made in China 202008". Accordingly, the pending claims in this case are not barred by the release that was applicable to the sale in or before March 2020.

35. Interfocus failed to present any evidence for such rebuttal, rather, the evidence below strongly show that NB owns the Subject Design. For example, in response to the interrogatories asking about Interfocus' or its vendor's independent creation and any prior work, Interfocus stated only "**it is informed and believes** the designs at issue are very similar to independently created pre-existing designs…" which has no evidentiary value at all. (emphasis added) Exhibit 42, Responses to Interrogatories No. 1-5. Submitted herewith as Exhibit 42 is a true and correct copy of Interfocus' responses to the Interrogatories (Set One). Further, Interfocus never produced any facts, or documents supporting such information or belief in the discovery.

36. Interfocus response to Interrogatory 6 admits that in the ordinary procedures, Interfocus orders the garments it likes after it reviews the sample pictures, and do the quality inspection, and start sales of the garments.

37. Interfocus further admitted it controled the display procedure of the garments by stating Interfocus' vendors do not upload the information relating to the Infringing Garments. Exhibit 42, Responses to Interrogatory No. 7.

38. The above clearly shows Interfocus soon after signing the Prior Settlement Agreement on March 23, 2020, promptly started the sampling procedure, reviewed the samples of the Infringing Garments 1 and 2, ordered them again as Interfocus liked it in May 2020 (Exhibits 39 and 40), uploaded the garment pictures with the information on the website on July 1, 2020 for Infringing Garment 1 and June 19, 2020 for Infringing Garment 2 and sold them until September 16, 2020. Exhibit 33. Even worse, it turned out the Interfocus

continued to sell the Prior Infringing Garment 1 and the Prior Infringing Garment 2 even after the Prior Settlement until September 2020. Exhibit 33.

39. The above shows it is undisputed soon after the settlement of the Prior Case where the Subject Designs 1 and 2 were litigated, Interfocus again reviewed, chose, ordered, uploaded, displayed and sold the Infringing Garments 1 and 2, which sufficiently establishing copying after the actual access.

40. Even as to Subject Design 3, Interfocus should be found to be a willful infringer under *Unicolors v. Urban Outfitters*. In response to the interrogatory asking about preventive measures Interfocus has taken, Interfocus stated Interfocus takes down the garments after receiving notices, which is not a "preventive" measure at all. Exhibit 42, Response to Interrogatory No. 18. Interfocus also stated in its response that it requires vendors to license its intellectual property to Interfocus. Again, it at the best means only if a vendor has an intellectual property, it would have to license it to Interfocus, which has nothing do to with reasonable preventive measure such as checking on the source of the design on the samples when reviewing and before making an order.

41. In the discovery, Interfocus never produced any evidence showing such reasonable efforts. The sampling procedure explained in Interfocus responses in fact admits it simply review, like and then order. Exhibit 42, Response to Interrogatory No. 6. There is no checking on copyright issues. Rather, even after knowing on the copyright issues, Interfocus would dare to order again, and display and sell online again. It is exactly what the Nineth Circuit Court called "willful blindness", "reckless policy", and "no attempt to check or inquire" into copyright issues.

42. In this case, Interfocus produced only a self-serving chart made after receiving the cease and desist letter in September 2020, in anticipation of a litigation, which is nothing but a hearsay. In response to the interrogatories asking for accounting the total sales, earnings and costs, Interrogatory stated it would produce charts. Exhibit 42, Responses to Interrogatories 11 and 12. Interfocus never produced any real

business records, such as purchase order, invoice, or sales reports from the sales record keeping system.

*Under penalty of perjury under the laws of the State of California, I declare that the foregoing is true and correct.*

Dated: July 26, 2021                    Respectfully submitted,

                                        */s/Chan Yong Jeong*
                                        Chan Yong Jeong, Esq.
                                        Attorney for NEMAN BROTHERS & ASSOC., INC.