CHAN YONG JEONG, ESQ. (SBN 255244)
 jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>       Plaintiff/Counter-Defendant,<br><br>       vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>       Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**NEMAN BROTHERS & ASSOC., INC.'S OPPOSITION TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**<br><br>Date: August 16, 2021<br>Time: 10 a.m. |

1

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION** ................................................................. **2**

**II. STANDARD OF REVIEW** ................................................... **2**

**III. ARGUMENTS** .............................................................................. **3**

   1.  The Settlement Agreement Clearly Provides the Dispute Remains for the Settlement After the Seven-Business-Day "Cure" Period. ............................ 3

   2.  The Subsequent Acts of the Parties Including Interfocus Clearly Show That "Cure" Only Meant "Take Down", And Therefore, the Dispute Remains to Be Resolved........................................................................................ 5

   3.  The Parties' Intent under the Circumstances at the Time of Executing the Agreement Is Clear.................................................................... 9

   4.  Given the Clear Interpretation of Sections 5 And 6 As A whole, the Parties' Intent under the Circumstances at the time of Execution, And the Subsequent Acts of the Parties, Epecially Interfocus' Acts, the Term "Cure" Should Be Rejected Or Made More Clear to Mean Only "Remove" the Garments in Order to Avoid Continuing Infringements......................................................................... 11

   5.  The Interfocus' Bad-faith Interpretation of "Cure" Is Nothing But An Improper Attempt to "Forfeit" Neman Brothers' Copyrights................................. 12

   6.  Interfocus' Material Breach of Refusing to Make Reasonable Efforts to Resolve the Disputes In Good Faith in Connection with the Other Garments Formed A Material Breach, And Also A Repudiation, Which Justified And Excused Neman Brothers' Filing A Claim Instead of Repeating the Same Negotiation That Was Already Frustrated Due to Interfocus' Bad Faith................................... 13

   7.  The case Against One Step Up Had Different Issues.............................. 15

**IV.  CONCLUSION**................................................................ 16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

CASES

*Adams v. Johns–Manville Corp.*, 876 F.2d 702, 704 (9th Cir.1989)……………………. 3

*Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1196……………………………………………..6

*Ballard v. MacCallum* (1940) 15 C.2d 439, 444……………………………………… 12

*Beck v. American Health Group Int'l,* 211 Cal.App.3d 1555 (1989)……………………. 3

*Burns v. Peters* (1936) 5 Cal. 2d 619, 623……………………………………………...3

*In re Beverly Hills Bancorp,* 649 F.2d 1329, 1332–33 (9th Cir.1981)………………….. 2

*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal. 2d 744, 754…………………….....5

*Hawley v. Orange County Flood Control Dist.* (1963) 211 Cal.App.2d 708, 713…….. 13

*Heidlebaugh v. Miller* (1954) 126 Cal.App.2d 35, 38. ………………………...……11, 12

*Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989)……………………………………… 2

*Lawyer's Title Ins. Co. v. U.S. Fidelity & Guar. Co.*, 122 F.R.D. 567, 569 (N.D.Cal.1988)………………………………………………………………………… 3

*Mill Valley v. Transamerica Ins. Co.*, 98 Cal.App.3d 595 (1979)……………………… 3

*Parsons v. Bristol Dev. Co.,* 62 Cal. 2d 861 (1965)…………………………………... 3

*Pierce v. Merrill* (1900) 128 Cal. 464, 472……………………………………………… 3

*Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 229…………………………………… 14

*Southern Pac. Trans. Co. v. Santa Fe Pac. Pipelines* (1999) 74 Cal.App.4th 1232, 1242……………………………………………………………………………………….6

*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1242……………………………………………………………….6

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991-92 (9th Cir. 2019)…………7

*Union Bank v. Winnebago Indus.*, 528 F.2d 95, 99 (9th Cir.1975)……………………… 3

*Vandenbergh v. Davis* (1961) 190 Cal.App.2d 694, 698………………………………...12

STATUTES

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

Civ. C. §1442 …………………………………………………….. 12

Civ. C. §1637 ……………………………………………………… 3

Civ. C. §1638 ……………………………………………………… 3

Civ. C. 1639 …………………………………………………….. 3

Civ. C. §1647……………………………………………………….9

Civ. C. §1649 ……………………………………………………….9

C. Civ. Proc. §1860………………………………………………….9


SECONDARY SOURCE

CACI, No. 318 [Interpretation—Construction by Conduct]……………………..…5

5 Corbin (Rev. ed.), § 24.16 ……………………………………………………….6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. INTRODUCTION

Interfocus argument based on their own interpretation of one word "cure" which they argue to mean complete release after removing the on-going infringement. In reading the settlement agreements as a contract, the case law mandates to look for the **objective intent manifested by the agreement as a whole**, and **also manifested by the conducts of the parties**, both at the time of, and subsequent to, the execution.

Reading of the relevant sections 5 (notification) and 6 (future disputes), and the settlement agreement, in their entirety, clearly shows their subjective interpretation of cure is out of context.

Further, the intent manifested by Interfocus itself during the negotiation of the prior settlement agreement in March 2020 and the subsequent negotiation after receiving the cease and desist letter in September 2020, consistently and clearly shows that Interfocus' argument based on "cure" was nothing but a litigation tactic Interfocus invented for the first time after this lawsuit was filed.

## II. STANDARD OF REVIEW

The Interfocus' Motion mainly relies on its own self-serving interpretation of the terms of the Settlement Agreement executed in the Prior Case between the Parties. "The construction and enforcement of settlement agreements are governed by principles of **local law which apply to interpretation of contracts generally**." (emphasis added) *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989). This is true even though the underlying cause of action is federal. *Id.; In re Beverly Hills Bancorp,* 649 F.2d 1329, 1332–33 (9th Cir.1981). Under California law, the interpretation of a contract is a question of law subject to de novo review. If interpretation requires the resolution of disputed facts or a determination of the credibility of extrinsic evidence, the appellate court will defer to the district court's resolution of those issues if it is supported by substantial evidence. But

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

once the facts are resolved, the interpretation of the agreement in light of those facts is a question of law. *Parsons v. Bristol Dev. Co.,* 62 Cal. 2d 861 (1965).

### III. ARGUMENTS

<u>1. The Settlement Agreement Clearly Provides the Dispute Remains for the Settlement After the Seven-Business-Day "Cure" Period.</u>

**A settlement agreement is treated as any other contract for purposes of interpretation**. *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 704 (9th Cir.1989). Under California law, **the intent of the parties** determines the meaning of the contract. Cal. Civ. Code §§ 1636, 1638. The relevant intent is "**objective**"—that is, the **intent manifested in the agreement** and **by surrounding conduct**—rather than the subjective beliefs of the parties. *Lawyer's Title Ins. Co. v. U.S. Fidelity & Guar. Co.*, 122 F.R.D. 567, 569 (N.D.Cal.1988); *Beck v. American Health Group Int'l,* 211 Cal.App.3d 1555 (1989). For this reason, the true intent of a party is irrelevant if it is unexpressed. *Union Bank v. Winnebago Indus.*, 528 F.2d 95, 99 (9th Cir.1975); *Mill Valley v. Transamerica Ins. Co.*, 98 Cal.App.3d 595 (1979)

**Where the language of a contract is clear and not absurd**, it will be followed. Civ. C. §1638 (West 2021); see *Pierce v. Merrill* (1900) 128 Cal. 464, 472. **If the meaning is uncertain, the general rules of interpretation are to be applied**. Civ. C. §1637 (West 2021); see *Burns v. Peters* (1936) 5 Cal. 2d 619, 623. When a contract is reduced to writing, **the parties' intention is ascertained from the writing alone,** if possible, **subject to other provisions governing interpretation**. Civ. C. 1639 (West 2021).

The word "cure" as a verb in plain English, according to the Oxford Dictionary, means;

*verb*

    1.  relieve (a person or animal) of the symptoms of a disease or condition.

"he was cured of the disease"
2.  preserve (meat, fish, tobacco, or an animal skin) by various methods such as salting, drying, or smoking.
"home-cured ham"

The plaining meaning of cure means only removing the issue of the on-going infringement (i.e. removing symptoms), which does not necessarily mean a complete release from the liability (i.e. medical bills) too. In this present case, even assuming it could arguably mean otherwise, reading of the entire section 5 using the word "cure", clarifies what the section intended by expressly providing at the end;

> "Plaintiff agrees that it will not file a lawsuit or lodge a complaint against Defendant for an alleged infringement before the expiration of **thiity (30) days after given Defendant Adequate Notice of the alleged infringement to allow Paities time to <u>resolve the dispute</u> ainicably**."
> (Interfocus' Sealed Exhibit 3 and Redacted Exhibit 2).

Obvious is that the Parties agreed "dispute" remains to be resolved, even after the seven business days to "cure". Interfocus may or may not decide there is any infringement and therefore, it may or may not take down the accused garments. If it does, the damage issue remains to be resolved, and if it does not, the willful and on-going infringement issue will also be added to the dispute.

Further, Section 6 also states; [1]

> "The Parties agree to make **good faith efforts to settle all future disputes** (if any). For instance, the Parties optionally may enter into commercially feasible transactions, such as a license agreement for the sale of the garments bearing Plaintiff's designs by InterFocus."

If the Parties really intended "cure" to mean "complete release from liability by taking down the garments from the website", Section 6 would have not needed at all. The

---

[1]     For unknown reason, while unilaterally disclosing, without Neman Brother's consent, Sections 5 and 7, Interfocus redacted Section 6.

4

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

same settlement agreement in the same section 5 and the subsequent section 6 expressly and clearly state, at least twice that there would be disputes, which the parties were to try to settle in "good faith" "amicably".

The prior settlement agreement as a contract is clear as to what the parties intended and what "cure" would mean. While "cure" was not a good choice[2] of a word, the parties still made it clear as to what and how to be done when there would be a subsequent infringement after the execution of the settlement, that is, giving seven business days to Interfocus to take down the accused garment, taking 30 days to negotiate the settlement, and if no settlement, Neman Brothers may file a suit.

Even assuming arguendo the above is still not sufficiently clear but uncertain, the analysis discussed below, pursuant to the applicable statutes and the case law, would again make it clear that Interfocus is playing a word game in bad faith.

The above shows **the objective intent manifested in the agreement** is to give seven business days to remove the on-going infringement while giving thirty days to the parties to resolve the dispute about the liability issue about the infringements done. Further, as discussed below, **the intent manifested by surrounding conduct** even more strongly shows Interfocus' argument is without merit and even false.

2. The Subsequent Acts of the Parties Including Interfocus Clearly Show That "Cure" Only Meant "Take Down", And Therefore, the Dispute Remains to Be Resolved.

**Acts of the parties, subsequent to the execution of the contract** and before any controversy has arisen as to its effect, **may be looked to in determining the meaning**. "This rule of practical construction is predicated on the *common sense* concept that '**actions speak louder than words.**' Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that **they knew what they were talking about** the courts

---

[2]      The term "cure" was put by Interfocus while negotiating on the drafts. Exhibit 26.

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

**should enforce that intent**." (emphasis added) *Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal. 2d 744, 754; see CACI, No. 318[3] [Interpretation—Construction by Conduct]; *Southern Pac. Trans. Co. v. Santa Fe Pac. Pipelines* (1999) 74 Cal.App.4th 1232, 1242 (conduct of parties to agreements by pipeline company to pay rent for easements on railroad right-of-way had to be considered on issue of valuation); *Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1196 (any ambiguity regarding allocation of proceeds or value of system power pool sales or trades in state water project contract was clarified by *course of dealing between parties*); see also 5 Corbin (Rev. ed.), § 24.16. "In construing contract terms, **the construction given the contract by the acts and conduct of the parties with knowledge of its terms**, and **before any controversy arises** as to its meaning, is relevant on the issue of the parties' intent." (emphasis added) *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1242.

In this case, after receiving Neman Brothers' cease and desist letter, Interfocus wrote a reply letter on October 5, 2021. After confirming "InterFocus promptly removed the product listings at issue", the letter[4] on the second page stated;

> "As a **gesture of good faith** and **in accordance with Section 6** of the parties' Settlement Agreement and Mutual Release dated March 23, 2020, InterFocus provides the following summary **information regarding sales**[5]

---

[3] The jury instruction states "In deciding what the words in a contract meant to the parties, you may consider **how the parties acted after the contract was created** but before any disagreement between the parties arose." (emphasis added)

[4]    The writer of the said letter was Ms. Linna Chen who represented Interfocus during the negotiation of the settlement agreement in the prior case and during the negotiation of the subsequent infringement before filing this case. Mr. Mark Lee was retained for Interfocus for the first time, after February 2, 2021, about two months after this case was filed. Exhibit 41.

[5]    Interfocus' witness Weiwei Le also admits in her declaration that after she personally reviewed the cease and desist letter and saw Neman Brothers' counsel arguing about "additional copyright infringements", she "requested that I be provided with all available **information**

> **of the articles at issue** that were made on the PatPat platfonn." (emphasis
> added) Exhibit 33.

The same letter at the end also stated;

> "InterFocus has removed the product listings identified in your letter and **is
> further prepared to pay to your client its entire profit** [amount redacted]
> from sales of the articles at issue. Please let us know if you agree."
> (emphasis added) Exhibit 33.

In addition, in the subsequent negotiations, Interfocus indicated again that Interfocus knew what Sections 5 and 6 meant and that "cure" did not mean release from infringement liabilities. In emails on September 18, 2020 and September 29, 2020, Neman Brothers' counsel Mr. Jeong wrote "Please email me the records of purchase and sale so that we can discuss the settlement" and "10/15 is the last day we can settle by, before filing a lawsuit. Exhibit 31. I did not receive any sale/purchase records." In response, Interfocus counsel wrote "We have compiled the sales information and are preparing a response to you." Exhibit 31.

After receiving from Neman Brothers' counsel the counteroffer with the arguments about Interfocus' willful infringement liability under *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991-92 (9th Cir. 2019) (Exhibit 32), Interfocus counsel Mr. David Yang stated "InterFocus has already taken down the items identified in your letter. There is thus no need for your client to rush to file a new lawsuit. With all due respect, we would consider a rush to the courthouse to be inconsistent with **the two sides' agreement to make good faith efforts to settle their future disputes.**" Exhibit 34. He also wrote to suggest "to negotiate a business deal **rather than to have the two sides waste time and money on litigation**" and then, suggested to combine the settlement with the license deal to fill the gap of the offered amounts between the parties. Exhibit 34.

---

**concerning the extent of such sales**" which would have not been needed had she really thought Interfocus' cure would bar Neman Brothers' claims. Decl. of Weiwei Le (Docket 35-1), ¶¶6-7.

7

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

On November 12, 2020, the counsels for the parties had a telephone conversation, and next day, Ms. Chen wrote "Nice talking to you yesterday. **I look forward to (1) the proposed settlement agreement**, and (2) example Neman Brothers' design files." At the said teleconference, the parties reached an agreement on the amount and major terms of the licensing. Neman Brothers' counsel then sent a settlement draft by making changes to the prior settlement agreement putting the agreed-upon amount and adding the terms of the licensing.

The draft provided;

> WHEREAS, on or about September 15, 2020, Plaintiff served a cease and desist letter to Defendant [Interfocs] pursuant to section 5 of the prior settlement agreement ("Prior Settlement Agreement") executed in March 2020, regarding certain garments displayed and sold at Defendant's website. www.patpat.com ("Website") which Plaintiff believed to have infringed upon its copyrights for certain designs as specified therein (the "Dispute"); WHEREAS, **the Parties now desire to resolve all disputes**. and enter a Licensing agreement between them in an orderly manner… Exhibit 36.

In returning the draft after their review, Interfocus did not make any change to the above "Whereas" clauses or the amount while making changes to the terms of the licensing. Exhibit 37. As this time, the new settlement was to include the licensing, the sections 5 and 6 from the prior settlement agreement were mostly deleted. Exhibit 37. In the course of the negotiations, Neman Brothers in good faith emailed multiple designs and its copyright registrations for Interfocus' review. Jeong Decl.¶20. However, in the end, after wasting two months until November 2020, Interfocus refused to sign the settlement with no explanation.

NEVER did Interfocus argued that all of the copyright infringement were "cured", throughout the whole negotiation from September 15 until November 18, 2020. Jeong Decl.¶21. Rather, Interfocus knew what it agreed to, and did negotiate the settlement pursuant to Sections 5 and 6 of the prior settlement agreement. Jeong Decl.¶21. It was only after this lawsuit was filed and the new counsel Mr. Mark Lee appeared in this case, when Interfocus at a sudden started making the frivolous argument for "cure", which is

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

1   nothing but a word play. Jeong Decl. ¶21; Exhibit 41; Interfocus Counterclaim (Docket

2   No. 18.

3

4   3. The Parties' Intent under the Circumstances at the Time of Executing the Agreement Is

5   Clear.

6       "A contract must be so interpreted as to **give effect to the mutual intention of**

7   **the parties** as it existed at the time of contracting. Civ. C. §1649 (West 2021). "A

8   contract may be explained by reference **to the circumstances[6] under which it was**

9   **made, and the matter to which it relates**." (emphasis added) Civ. C. §1647 (West

10  2021). "For the proper construction of an instrument, **the circumstances under which it**

11  **was made**, including the situation of the subject of the instrument, and of the parties to it,

12  may also be shown, so that the Judge be placed in the position of those whose language

13  he is to interpret." (emphasis added) C. Civ. Proc. §1860 (West 2021).

14      When settling the Prior Case, Ms. Chen for Interfocus made the first draft. Exhibit

15  26. In her first draft, she stated at the end of Section 5 "**Plaintiff further agrees not to**

16  **seek further remedies including legal remedies once Defendant has cured** the alleged

17  infringement by removing the allegedly infringed products and/or designs…" (emphasis

18  added) Exhibit 26. Then, Neman Brothers' counsel **deleted** the said part, and added to

19  the end of Section 6 to limit the scope of the release "…to the extent it relates to the past

20  sale of the gaiments by Interfocus, shown in Exhibits C-1 through C-7 attached to the

21  complaint (Docket No. 1) in the Action as of 11/26/2019." Exhibit 27, sections 5 and 7.

22  Then, Ms. Chen again put in the draft "Plaintiff further agrees that for any infringement

23  incurred after the Effective Date, **Defendant's legal obligation is limited to (1)**

24  **removing** any infringing products and/or design from its website and social media

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [6]     When two equally plausible interpretations of the language of a contract may be
    made, parol evidence is admissible to aid in interpreting the agreement, thereby
27  presenting a question of fact that precludes summary judgment if the evidence is
    contradictory. *WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.
28

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

account within the time limit as specified in this Agreement; **and (2) providing Plaintiff all profit** made by Defendant relating to the infringed products and/or designs." (emphasis added) Exhibit 28, section 5. However, Ms. Chen accepted the addition to Section 6. Exhibit 28, section 6. Mr. Jeong again **deleted** Ms. Chen's addition, and in his email stated "**Plaintiff will not waive any rights about the future actions if any.** We never do that unless Defendant pays more for it. If your client can pay 100k, my client can give an unlimited license to use the designs to sell the garments through Patpat website. Otherwise, there is no reason for Plaintiff to waive its right to sue your client for future infringements." (emphasis added) Exhibit 29.

As stated in the email, there was no special circumstances to give Interfocus a de facto permanent and unlimited license to use Neman Brothers' design until it gets caught without having to pay any damages. The Prior Case was one of the typical copyright infringement cases, and the Settlement Funds to be paid was not big enough to cover such a de facto license to Interfocus.

In addition, according to Interfocus interpretation of "Cure", Interfocus is free to use Neman Brothers' designs as long as they don't get caught, and even if getting caught, Interfocus should be find as long as it removes the garments within seven days after notice, which is a de facto unlimited license. Interfocus here also says Neman Brothers received only "Nuisance Value" (Decl. of Weiwei Le (docket no. 35-1), ¶3) in return for such an unlimited license which makes no reasonable sense.

Further, for competitiveness in the market, Neman Brothers either internally creates, or purchases the ownership from design studios, two-dimensional works of art for use on textiles which Neman Brothers customers use to make garments to be sold to retail businesses. Neman Decl. ¶6. Unauthorized use of Neman Brothers' designs undermines its competitive advantage in a highly competitive industry. Neman Decl. ¶7. Therefore, for protection of the designs, Neman Brothers routinely registers new artworks as a collection for copyrights with the U.S. Copyright Office before introducing them to the market. Neman Decl. ¶7. Unfortunately, as there are many businesses selling illegal

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

copies, some willful infringers and some innocent infringers, Neman Brothers get to find many illegal copies, and for protection of its copyrights, has had to file numerous cases when the parties could not settle the matter prior to filing the actions. Neman Decl. ₱7. Most of the cases settled. In none of the settlement agreements in those cases, Neman Brothers never agreed the defendants' liability for future infringements would be completely released as long as the defendants remove the future infringing garments off their selves or website because it would be like giving a permanent unlimited license for free unless the defendants pay fair amount in return for such quasi-license. Neman Decl. ₱7.

Given the above, from the time of negotiating the agreement, and even thereafter, receiving the cease and desist letter on September 15, 2020, throughout the whole time, it was very clear between the parties, there was no release whatsoever as to the future infringements subsequent to March 2020.

4. Given the Clear Interpretation of Sections 5 And 6 As A whole, the Parties' Intent under the Circumstances at the time of Execution, And the Subsequent Acts of the Parties, Epecially Interfocus' Acts, the Term "Cure" Should Be Rejected Or Made More Clear to Mean Only "Remove" the Garments in Order to Avoid Continuing Infringements.

There are precedent cases where the parties had disputes due to a poor choice of word or even a mistake. "If necessary to carry out the intention of a contract, words may be **transposed, rejected, or supplied, to make its meaning more clear**." (emphasis added) *Heidlebaugh v. Miller* (1954) 126 Cal.App.2d 35, 38. For example, in *Vandenbergh v. Davis*, plaintiff executed a 3-year lease to defendant of the second floor of a 3-story building. The lease, prepared by a realtor, contained a lessor's covenant giving the lessee the "first refusal" to lease the third floor at not over $100 monthly rental, and a right to occupy that floor **until "lessor leases" it** and "lessee has refused to

lease same." Defendant took the position that he was not required to exercise his right of refusal until plaintiff actually signed a lease to a third party. Accordingly, he occupied the third floor for 2 years without paying rent. Meanwhile, plaintiff did have bona fide offers to lease, but defendant refused to allow the prospects to view the premises. The court held defendant was liable as a tenant at sufferance from the time he refused to rent. To avoid absurdity, the phrase "lessor leases" was construed as "layman's shorthand" for "**has an offer to lease**." *Vandenbergh v. Davis* (1961) 190 Cal.App.2d 694, 698. Likewise, in *Heidlebaugh*, a conditional sales contract (a commercial printed form) provided that, on default, the seller could sell "**with or with notice**." The sale was challenged for failure to give notice to the buyer. The court pointed to several provisions in the agreement reading "**with or without**," and held that the phrase in question was an inexplicable redundancy resulting from an obvious printer's error. Accordingly, the omitted letters "out" were supplied by interpretation. *Heidlebaugh, supra,* 126 Cal.App.2d at 38.

In this case, instead of "cure", "remove" or "take down" would have been a better choice of word while the prior settlement agreement, especially sections 5 and 6, in their entireties still clearly present what the parties intended as to how the parties were to handle subsequent infringements.

5. The Interfocus' Bad-faith Interpretation of "Cure" Is Nothing But An Improper Attempt to "Forfeit" Neman Brothers' Copyrights.

Forfeitures are disfavored; hence a contract, and conditions in a contract, will if possible, be **construed to avoid a forfeiture**. Civ. C. §1442 (West 2021); see Ballard v. MacCallum (1940) 15 C.2d 439, 444. In *Hawley*, plaintiff contracted to build a sewer line. The work was substantially delayed because of defendant district's failure to promptly correct a mistake in its plans. n this action for breach, a nonsuit was granted on the ground that the contract contained a "no damage for delay clause" that authorized only an extension of time but no damages. The appellate court reversed it. The clause had

the effect of imposing a forfeiture; such a clause is strictly construed. *Hawley v. Orange County Flood Control Dist*. (1963) 211 Cal.App.2d 708, 713.

Interfocus' interpretation of "cure", if followed, would result in that no matter how many infringements for how much and how often, Interfocus would be fine as long as it takes down the accused garments within seven business days after receiving the Neman Brothers' notice. It only paid $15,000 for a settlement of a litigation, which Interfocus claims to be the payment for **a de facto permanent and unlimited license** to use for sale on their website until the time it gets caught.[7] If followed, it would be a forfeiture of Neman Brothers' rights to take necessary actions to protect its copyrights and seek damages provided by the U.S. Copyrights Acts.

6. Interfocus' Material Breach of Refusing to Make Reasonable Efforts to Resolve the Disputes In Good Faith in Connection with the Other Garments Formed A Material Breach, And Also A Repudiation, Which Justified And Excused Neman Brothers' Filing A Claim Instead of Repeating the Same Negotiation That Was Already Frustrated Due to Interfocus' Bad Faith.

The important question is whether a particular breach will also give the injured party the right to refuse further performance on his or her own part, i.e., to terminate the contract. The test is whether the breach is material, and a total or complete breach is of course material justifying the other party's refusal to perform. Whether a partial breach is material depends on the importance or seriousness thereof and the probability of the injured party getting substantial performance. *Superior Motels v. Rinn Motor Hotels* (1987) 195 Cal.App.3d 1032, 1052. Where defendant buyer's delay in tendering the balance due under a contract for the sale of stock were held to justify plaintiff's treating the breach as total, despite defendant's frequently expressed willingness to perform. *Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 229.

---

[7]     Ironically, Interfocus agreed to $85,000 for the settlement of the pending infringement issues with the licensing only for two years. Exhibit 37.

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

As discussed above, in the course of the negotiations, Neman Brothers in good faith tried to settlement the matters by even combining it with a licensing. It even emailed multiple designs and its copyright registrations for Interfocus' review. Jeong Decl. ¶28. However, in the end, after wasting two months until November 2020, Interfocus refused to sign the settlement with no explanation.

The above made it clear Interfocus was playing only a delay game with no good faith efforts to settle, and would do the same even if Neman Brothers starts over with the issue of the Infringing Garment 3, which would be nothing but a waste of time only to repeat the same discussion that Interfocus frustrated. It forms a material breach as to the Infringing Garments 1 and 2, and a repudiation as to the Infringing Garment 3.

Infringing Garment 3 was found in October 2021, and was discussed and agreed to be covered by Section 8 (Mutual Release) of the final draft of the subsequent settlement which specified the release to be given to Interfocus to the extent it relates to the past sale of the garments through the Website on or before the Effective Date, which was defined to be the full execution date in November 2020. Jeong Decl. ¶30; Exhibit 37.

As Interfocus complained of it, Neman Brothers' counsel offered to voluntarily dismiss without prejudice the claim on the Infringing Garment 3 and start over the procedure under Sections 5 and 6 as to the Infringing Garment 3, but Interfocus also refused to do so. On February 2, 2021, when Mr. Mark Lee contacted Mr. Jeong for the first time to request a stipulation to extend the due date to file the answer, and until the time of filing the answer and the counterclaim on February 19, 2020 (Dockets 17 and 18), Mr. Lee never attempted to confer on the issue of Infringing Garment 3. Jeong Decl. ¶31. After filing the pleadings, Mr. Lee refused to stipulate to the dismissal of the related claim without prejudice. Jeong Decl. ¶31.

The above shows Neman Brothers was justified in not repeating the same procedure under Sections 5 and 6, which Interfocus already frustrated. In fact, Interfocus breached Sections 5 and 6 by refusing to separately negotiate the settlement on the Infringing Garment 3 when Neman Brothers offered to do so. It also forms a failure to reasonably mitigate the damages even if any.

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

<u>7. The case Against One Step Up Had Different Issues.</u>

Interfocus' argument based on the case against One Step Up ("OSU Matter") is misplaced and off the points of this case. In the OSU Matter, as the court's ruling clearly stated the settlement agreement at issue provided a release to the OSU to the extent it was specified in Section 2. Exhibit 38, p. 5 of 8. The said agreement stated the release applies to "all claims that Neman Brothers "may have in com1ection with any conduct involving the Accused Ga1ments, to the extent such conduct pe1tains to the goods set forth or described in Section 2 above .... " Exhibit 38, p. 5 of 8. Therefore, the question was whether the accused garments at issue were part of the 18,400 garments specified in Section 2. Exhibit 38, p. 5-6 of 8.

In this case, however, the release was given "**to the extent it relates to the past sale** of the garments by InterFocus, shown in Exhibits C-1 through C-7 attached to the complaint (Docket No. 1) in the Action filed on 11/26/2019." Defendant's Redacted Exhibit 2, Section 7. The prior settlement agreement was executed as of March 2020. Defendant's Redacted Exhibit 2, Section 7. Therefore, the question is whether the Infringing Garments sold after March 2020. As admitted in Interfocus counsel's letter in October 2020, the said garments were uploaded for sale after March 2020 and until September 2020: Infringing Garment 1 (both navy and red) on July 1, 2020, Infringing Garment 2 on June 19, 2020. Exhibit 33, p.2-3. As discussed above, the Infringing Garment 3 was on the Interfocus Website as of October 2020 so that Neman Brothers could actually purchase the garment. Exhibit 22, p.2. Further, one of the caretags showing the production information indicated "Made in China 202008". Accordingly, the pending claims in this case are not barred by the release that was applicable to the sale in or before March 2020.

## IV.   CONCLUSION

Based on the above, Interfocus' Motion for Summary Judgment should be denied, and the cross complaint should be dismissed with prejudice.

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT

Dated: July 26, 2021

RESPECTULLY SUBMITTED,

Respectfully submitted,

_/s/Chan Yong Jeong_____

Chan Yong Jeong, Esq.

Attorney for Plaintiff

NEMAN BROTHERS & ASSOC.,INC.'S OPPOSITION
TO INVERFOCUS' MOTION FOR SUMMARY JUDGMENT