RIMON, P.C.
Mark Lee (SBN 94103)
mark.lee@rimonlaw.com
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone/Facsimile: 213.375.3811

RIMON, P.C.
Zheng Liu (SBN: 229311)
zheng.liu@rimonlaw.com
800 Oak Grove Avenue, Suite 250
Menlo Park, California 94025
Telephone/Facsimile: 650.461.4433

Attorneys for Defendants
INTERFOCUS INC. d.b.a. www.patpat.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERFOCUS, INC. d.b.a. www.patpat.com, a Delaware Corporation; CAN WANG, and individual, and DOES 1-10, inclusive.,<br><br>　　　　Defendants.<br><br>INTERFOCUS, INC. d.b.a. www.patpat.com, a Delaware Corporation; CAN WANG, an individual, and DOES 1-10, inclusive,<br><br>　　　　Counterclaim Plaintiffs,<br><br>　　v.<br><br>NEMAN BROTHERS & ASSOC., INC., a California Corporation,<br><br>　　　　Counterclaim Defendant. | Case No. 2:20-cv-11181-CAS-JPRC<br><br>**SUPPLEMENTAL BRIEF OF INTERFOCUS INC. D.B.A. WWW.PATPAT.COM IN FURTHER SUPPORT OF :**<br><br>1) **MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTERCLAIM; AND**<br><br>2) **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Continued Hearing Date: December 6, 2021<br>Time:  10:00 am<br>Courtroom:  8D<br><br>The Hon. Christina A. Snyder |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION. ...................................................................................... 1

II. RECENT ADMISSIONS ESTABLISH THAT THE THREE COPYRIGHT REGISTRATIONS AT ISSUE ARE INVALID AS A MATTER OF LAW. ................................................................................... 1

III. THE ACCUSED GARMENTS MAY HAVE COME FROM NEMAN BROTHERS' AUTHORIZED CHINESE GARMENT MANUFACTURER, BARRING PLAINTIFF'S CLAIMS UNDER THE FIRST SALE DOCTRINE. ................................................................. 6

IV. DEFENDANTS' ACCUSED GARMENTS DO NOT INFRINGE PLAINTIFF'S ALLEGED COPYRIGHTS. ................................................ 8

V. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE CONTRACTUALLY BARRED BY THE PREVIOUS SETTLEMENT AGREEMENT. ............................................................... 12

VI. CONCLUSION. ......................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ets-Hokin v. Skyy Spirits, Inc.*,
 225 F.3d 1068 (9th Cir. 2000) ................................................................................ 9

*Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*,
 925 F. 3d 1140 (9th Cir. 2019) ........................................................................... 5, 6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
 568 U.S. 519 (2013) .............................................................................................. 8

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
 922 F.3d 946 (9th Cir. 2019) ................................................................................. 9

*Mattel, Inc. v. MGA Entm't, Inc.*,
 616 F.3d 904 (9th Cir. 2010) ................................................................................. 8

*Omega S.A. v. Costco Wholesale Corporation*,
 776 F.3d 692 (9th Cir. 2015) ................................................................................. 8

*Palmer/Kane LLC v. Rosen Book Works LLC*,
 204 F. Supp. 3d 565 (S.D.N.Y. 2016) ................................................................... 4

*Pension Trust Fund for Operating Engineers v. Federal Insurance Co.*,
 307 F.3d 944 (9th Cir. 2002) ............................................................................... 14

*Star Fabrics, Inc., v. Zulily*,
 LLC, No. CV178358PSGMRWX, 2018 WL 5264360 (C.D. Cal.
 Apr. 17, 2018) ....................................................................................................... 9

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
 959 F.3d 1194 (9th Cir. 2020) ............................................................................... 5

**Statutes**

17 U.S.C. §204 ............................................................................................................ 2

17 U.S.C. § 408(c)(1) ................................................................................................. 3

17 U.S.C. §408(c)(2) .................................................................................................. 3

# TABLE OF AUTHORITIES CONT'D

Page(s)

**Statutes Cont'd**

17 U.S.C. § 409 ........................................................................................................... 4

17 U.S.C. § 409(2) ...................................................................................................... 4

17 U.S.C. § 409(4) ...................................................................................................... 4

17 U.S.C. § 409(5) ...................................................................................................... 5

17 U.S.C. § 409(9) ...................................................................................................... 5

17 U.S.C. § 411(b) ...................................................................................................... 5

Copyright Act of 1976 ................................................................................................ 3

**Other Authorities**

37 C.F.R. § 202.4(c)(5) ............................................................................................... 3

37 C.F.R. § 202.4(c)(7) ............................................................................................... 3

37 CFR 202.3(b)(4)(B)(4) .......................................................................................... 3

43 FR 965 .................................................................................................................... 3

82 FR No. 196 ........................................................................................................ 3, 4

Fed. R. Evid. 408 ...................................................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

New evidence obtained since the last hearing on the parties' motions further supports summary judgment for Defendants, and more clearly requires denial of Plaintiff's motion for summary judgment as described below.[1]

## II. RECENT ADMISSIONS ESTABLISH THAT THE THREE COPYRIGHT REGISTRATIONS AT ISSUE ARE INVALID AS A MATTER OF LAW.

Neman Brothers' President[2] Yoel Neman, who signed and certified the accuracy of the three group copyright registrations at issue (see Dkt. No. 42-1 and Exs. 2, 4 and 6) admitted in deposition that those registrations contain significant factual inaccuracies that were known to Neman Brothers when it filed them.

For example, although the registrations claim Neman Brothers is the sole author of all the works they identify, Mr. Neman admitted that some of the works identified in each registration were authored by third party design studios from whom Neman Brothers purchased rights, who are not named as authors or claimants in the registrations. (See Lee Decl. Ex.1, Yoel Neman Deposition ("Neman Depo."). 26:16-24[3] and Exs.17, 27, and 33.) Indeed, he admitted that two of the three designs

---

[1] This Court continued the previous hearing on the present motions and ordered that the parties could submit supplemental briefing, on August 23, 2021. (Dkt. No. 58.)

[2] Though he admitted he was Neman Brothers' president in his declaration, Dkt. No.42-1 ¶ 2, in deposition he first denied that he was ever its president, then claimed he had stopped serving as president about 15 years ago. (Concurrently filed Declaration of Mark S. Lee ["Lee Decl."] and, Ex 1 thereto, Neman Depo. 11:1-3, 12:9-16, 13:13-16, 15:1-4, 17:12-17, and 18:12-20:11.)

[3] Mr. Neman testified:

"Q. And so if I understand you correctly, then, Neman Brothers files…what's called a group copyright registration about every month? (cont'd next page)

"A Yes.

---

1

at issue in this case were themselves not authored by Neman Brothers, but instead by two different European design studios, contrary to the claims made in the registrations. (*Id.*, Lee Decl. Ex.1, Neman Depo. 66:12-68:1, 70:11-71:5.) He also admitted that Neman Brothers cannot find a written assignment for one of the fabric designs at issue. (Lee Decl. Ex. 1, Neman Depo. 68:2-19, 70:11-71:5, 86:22-87:12, 120:15-121:15; 122:15-123:11.)[4] And, he admitted he and Neman Brothers knew those facts when he signed and certified the accuracy of the three registrations. (Cf. Lee Decl. Ex. 1, Neman Depo. 60:22, 87:21-24, 88:1-9, 88:14-19, 89:24-90:9, 97:17-98:2, 114:12-23, 115:3-14, 116:24-117:4, 117:24-118:5, 118:12-119:4, 129:3-129:19, 133:22-134:12[5], and Exs. 10, 17, 18, 27, 28 and 33 thereto.) These factual inaccuracies alone should invalidate these group registrations, because Copyright Office regulations have required that group registrations of unpublished works be limited to works by the same author or authors since 1978, as shown below.

   Congress authorized the Copyright Office to dictate the requirements for "a

---

"Q All right. Does a specific registration typically include both fabric designs that Neman Brothers purchased and fabric designs that Neman Brothers created together in the group?

   A Yes." (Lee Decl. Ex. 1, Neman Depo. 26:16-24.)

[4] This lack of a written assignment alone is itself fatal to any claim of copyright ownership of that work. 17 U.S.C. §204 (copyright assignment must be in writing.)

[5] Mr. Neman testified:

"Q Now, consistent with the earlier registrations we talked about, would some of the designs that are described on this registration have been designs that Neman Brothers purchased from other studios?

"A Yes.

"Q And some of them may have been works that Neman Brothers created?"

"A Yes.

"Q And Neman Brothers would've known those facts when it registered these works for copyright in this registration?

"A Yes."  (Lee Ex. 1, Neman Depo 133:22-134:12.)

-2-
SUPPLEMENTAL BRIEF OF INTERFOCUS INC. OPPOSING PLAINTIFF'S MOTION AND SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT

single registration for a group of related works" in the Copyright Act of 1976. 17 U.S.C. § 408(c)(1). Congress also required that certain group registrations include only works by "the same individual author." 17 U.S.C. §408(c)(2).

Consistent with this Congressional mandate, the Copyright Office since 1978 has required that group registrations of unpublished works be limited to collections of works by the same author or including the same joint author. Calling its original regulation for such registrations as applying to "unpublished collections" of works, it required that "[a]ll of the elements [identified in the unpublished collection registration] are by the same author [or same joint author]" to qualify for such group registration. 43 FR 965, 966 (Jan. 5, 1978), https://tile.loc.gov/storage-services/service/ll/fedreg/fr043/fr043003/fr043003.pdf. That language was included in every regulation covering group registrations of unpublished works until the most recent regulatory amendments of 2019. See former 37 CFR 202.3(b)(4)(B)(4) (2010), https://www.govinfo.gov/content/pkg/CFR-2010-title37-vol1/pdf/CFR-2010-title37-vol1-sec202-3.pdf; Notice of Proposed Rulemaking for Group Registration of Unpublished Works, 82 FR No. 196, p. 47415, 47416 (October 12, 2017), https://www.govinfo.gov/content/pkg/FR-2017-10-12/pdf/2017-21722.pdf.).

The 2019 amendments to the relevant regulation even more clearly require that "[a]ll works [identified in the group registration of unpublished works] **must** be created by the same author or joint authors, and the author and claimant information for each work **must** be the same." 37 C.F.R. § 202.4(c)(5), https://www.law.cornell.edu/cfr/text/37/202.4.  (Emphasis added) That same amended regulation states that "[t]he applicant **must** identify the authorship that each author or joint author contributed to the works, and the authorship statement for each author or joint author **must** be the same." 37 C.F.R. § 202.4(c)(7)(2019), https://www.law.cornell.edu/cfr/text/37/202.4.; see also, Copyright Office Circular 34 p. 5, https://www.copyright.gov/circs/circ34.pdf (to qualify for group registration of unpublished works, "[a]ll of the authors **must** be named as copyright

1  claimants… [and the registration] **must** identify the authorship that each author or
2  joint author contributed to the works…") (Emphasis added.)

3      Thus, to qualify as a valid group registration of unpublished works, all of the
4  authors and co-authors of all of the works in the registration must be the same, all of
5  the authors also must be the copyright claimants identified in the registrations, and
6  the contribution of each author or joint author be identified for all of the works in
7  the group registration.  (Id.)  These group registrations provide significant cost
8  savings and other advantages to copyright owners but impose additional burdens on
9  the Copyright Office in evaluating them, so "compliance with the applicable
10 regulations should be strictly enforced." *Palmer/Kane LLC v. Rosen Book Works*
11 *LLC*, 204 F. Supp. 3d 565, 571 (S.D.N.Y. 2016); see also, 82 FR No. 196, p. 47415,
12 47416 (October 12, 2017) (describing the advantages to copyright claimants but the
13 potentially onerous burdens on the Copyright Office imposed by group registrations
14 of unpublished works.)

15      Neman Brothers' registrations, which nowhere acknowledge they include
16 many works authored by undisclosed third-parties different from and not including
17 Neman Brothers, and which nowhere identify those third parties as claimants (Lee
18 Decl. Ex. 1 and Exs 17, 27 and 33 therein), blatantly violate these requirements.
19 They constitute a combination of works from different authors, many of whom are
20 not identified, that is ineligible for group registration of unpublished works under
21 the Copyright Office regulations by which Neman Brothers purported to file them.

22      Neman Brother's registrations also contain numerous other factual errors and
23 omissions that should invalidate them under the general registration requirements of
24 17 U.S.C. § 409. The three registrations do not include "the name and nationality or
25 domicile of the author or authors" for the third-party created works as required by
26 17 U.S.C. § 409(2). They do not include a statement that the subgroup of included
27 works its employees created were "works made for hire" in violation of by 17
28 U.S.C. § 409(4). For the undisclosed third-party works included in each registration,

the registrations do not include "a brief statement of how the claimant obtained ownership of the copyright" as required by by 17 U.S.C. § 409(5). Finally, although Mr. Neman admitted that many of the works in each registration were later versions of previously copyrighted works, and were therefore derivative in nature (Lee Decl. Ex.1, Neman Depo. 89:2-7, 118:12-119:4, and 132:4-133:73), the registrations include neither "an identification of any preexisting work or works that it is based on or incorporates" a previous work, nor "a brief, general statement of the additional material covered by the copyright claim being registered" as mandated by 17 U.S.C. § 409(9). (Lee Decl. Ex. 1 and Exs. 17, 27 and 33 therein.)

The above errors support invalidation of the three copyright registrations at issue as a matter of law. *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F. 3d 1140 (9th Cir. 2019) (affirming summary judgment for defendant on copyright infringement claim because the group registration at issue knowingly combined published and unpublished fabric designs in violation of Copyright Office's regulations for registration of unpublished collections.)

However, this Court should not rule on this issue in the first instance. Instead, the Ninth Circuit has instructed that "once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) 'the inaccurate information was included in the application for copyright registration'; and (3) the inaccurate information was included on the application 'with knowledge that it was inaccurate,'" this Court should instead submit a request to the Register of Copyrights pursuant to 17 U.S.C. § 411(b) "to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020). The Ninth Circuit has held it is reversible error not to do so. *Unicolors, Inc., supra* (reversing and remanding judgment for plaintiff because the district court did not refer the copyright registration validity question to the Copyright Office in the first instance).

As invalidation of Neman Brothers' copyright registrations would be fatal to its copyright infringement claims, this Court should make such a request to the Copyright Office now, and stay this action until the Copyright Office responds.[6] If the Copyright Office advises that the inaccurate information Neman Brothers provided would have caused it to refuse the registrations, this Court should invalidate all three of them and grant summary judgment to InterFocus on Neman Brothers' copyright infringement claims herein. *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F. 3d at 1146-47 (granting summary judgment for defendant based on a Copyright Office determination that it would have denied the group registration of unpublished fabric designs at issue.)

### III. THE ACCUSED GARMENTS MAY HAVE COME FROM NEMAN BROTHERS' AUTHORIZED CHINESE GARMENT MANUFACTURER, BARRING PLAINTIFF'S CLAIMS UNDER THE FIRST SALE DOCTRINE.

Yoel Neman also testified that the three fabric designs at issue were and are manufactured at a factory in Shaoxing, China which, at Neman Brothers' direction, delivered fabric bearing the three designs at issue to other businesses located in GuangZhou and Zhongshan in Guangdong province, China, and nearby ThanhXuan, Minh Tan and HCM City in Vietnam. (Lee Decl. Ex. 2, Neman Depo.77:10-78:3, 82:19-25, 84:6-11, 84: 24-85:14, 106:8-21, 107:24-108:20, 108:24-109:21, 111:4-20, 112:24-113:10, 124:9-125:9, 126:14-127:10, and Lee Decl. Ex. 3, Neman Depo Exs. 13, 16, 22-26, 30 and 32) He also testified that he did not know what happened to that fabric after it was delivered to those companies. (Lee Decl. Ex.2, Neman Depo. 77:13-78:22, 79:1-8, 110:3-112:8, 133:22-134:10.)

InterFocus, meanwhile, purchased the garments Neman Brothers alleges

---

[6] The procedure by which such a request should be made is laid out in *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, supra, 925 F. 3d at 1143, where the Ninth Circuit describes how the district court did so.

infringed its copyrights from garment manufacturers in the same Guangdong province of China, who in turn obtained the fabrics from companies who sourced them from open fabric markets in the same Guangdong province to which Neman Brothers' manufacturer delivered fabric bearing two of the designs at issue. Fabrics bearing the third design was delivered to Vietnam by the same manufacturer. (Declaration of G. Xiao ["Xiao Decl."] ¶¶ 2-4; Declaration of Changquan Tao ["Tao Decl."] ¶¶ 2-4.) Vietnam is next to Guangdong province in China and the two areas have significant commerce with each other. (Declaration of Zijia Chen ["Z. Chen Decl."] ¶¶ 2- 3.) Such fabric markets, as well as companies accessible on the internet in China, sell fabrics with designs identical or very similar to those manufactured by Neman Brothers' Chinese factory. (Xiao Decl. ¶¶ 2-4; Tao Decl. ¶¶ 2-4; Z. Chen Decl. ¶ 4.)   Neman Brothers' Chinese manufacturer, or its customers, may have sold some of the fabric they acquired from Neman Brothers' suppliers there. Finally, a supplier of Interfocus conducted an experiment and approached Shaoxing Zhongxing Textile Co. Ltd., a company that has the same name as Neman's China manufacturer[7], whether it can make fabrics with or similar to the fabrics Neman accused of Interfocus of infringing.  The company said yes, and did not ask the supplier to show proof of license from Neman. (Z. Chen Decl. ¶¶ 5-8.)

Thus, even if the three fabric designs at issue were validly registered with the Copyright Office (which they were not as described above), the fabric patterns of the accused garments sold by InterFocus may be similar because they were made from fabric manufactured by Neman Brothers' authorized Chinese manufacturer and

---

[7] While this company bears the same name as Neman's China manufacturer, Interfocus cannot verify whether they are the same company because Interfocus cannot take this company's deposition in China.

offered for sale in the Guangdong province's open fabric market.[8] If so, Neman Brothers' copyright claims are barred by the "First Sale" doctrine. *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013) (purchase of authorized product in foreign country created first sale defense when the product imported and sold in the U.S.); *Omega S.A. v. Costco Wholesale Corporation*, 776 F.3d 692, 695 (9th Cir. 2015) (first sale doctrine precluded copyright infringement claim based on resale of foreign gray market goods.)

## IV. DEFENDANTS' ACCUSED GARMENTS DO NOT INFRINGE PLAINTIFF'S ALLEGED COPYRIGHTS.

Floral pattern fabric designs with flowers as they appear in nature have been used for centuries. (Declaration of Deborah Young ["Young Decl."] ¶ 9.)  Further, Mr. Neman admitted that Neman Brothers does not claim copyright in the colors that appeared on the flowers or in the backgrounds of its designs, and it sells its designs in various colors. (Lee Decl. Ex. 1, Neman Depo. 79:9-17, 91:20-93:18)

Even if the three fabric designs at issue were validly registered (which they were not), all of these unoriginal, common, *scènes à faire,* elements dictated by the flowers' appearance in nature must be filtered out before evaluating substantial similarity of the works at issue under relevant law. *Mattel, Inc. v. MGA Entm't, Inc.*,

---

[8] InterFocus could not more specifically tie the source of the accused garments to Neman Brothers' Chinese manufacture or Chinese customers because it could not depose any of those third-party witnesses in China. Although China is a signatory to the Hague Evidence Convention, "China does not permit attorneys to take depositions in China for use in foreign courts. Under its Declaration and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that . . . participation in such activity could result in the arrest, detention, or deportation of the American attorneys and other participants."  See Consular Affairs, U.S. Dept. of State, "Taking Voluntary Depositions of Willing Witnesses," 7 *Foreign Affair Manual* 920 (2013), available at https://fam.state.gov/fam/07fam/07fam0920.html In addition, strict Covid-related travel restriction imposed by the Chinese government made further investigation impossible.

616 F.3d 904, 915-916 (9th Cir. 2010) (holding that "[t]he district court [erred] in failing to filter out all the unprotectable elements" from the work at issue because "a finding of substantial similarity between two works can't be based on similarities in unprotectable elements"); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (requiring that common, unoriginal, *scènes à faire* elements of a copyrighted work be filtered out before evaluating substantial similarity with an allegedly infringing work).

After eliminating such unprotectable elements, the only aspects of the images that are even arguably protected by copyright are the specific details of the flower shapes, and specific placement of the flowers, in the designs at issue, as Mr. Neman acknowledged. (Lee Decl. Ex. 1, Neman Depo. 92:14-23.) While fabric patterns can qualify for broad protection, see *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946 (9th Cir. 2019), they are afforded only "thin" copyright protection when, as here, most of their content come from unprotectable elements. *Star Fabrics, Inc., v. Zulily,* LLC, No. CV178358PSGMRWX, 2018 WL 5264360, at *3 (C.D. Cal. Apr. 17, 2018) (granting partial summary judgment to defendant on copyright infringement claim involving two fabric designs; court rules plaintiff had "only a thin copyright, because the zig-zag pattern [in the two fabrics at issue] constitutes a shared concept that must be subtracted for purposes of the extrinsic test.")

Here, the differences between the flower designs and placement in Plaintiff's allegedly copyrighted works and InterFocus' accused clothing are significant, and at least preclude summary judgment for Plaintiff on the substantial similarity issue as follows:

**NB Design 170268[9]**

---

[9] In its Amended Complaint, Neman Brothers call this "Design 1," while in his declaration, Y. Neman called it "Design 2." (Cf. Dkt. No. 10 ¶ 12-13 and Ex. 1 thereto with Dkt. No. 42-1, ¶10 and Exs 1 and 2 thereto.) InterFocus refers to it by Neman Brothers' own design number NB170268 to avoid confusion.

This design features a striped rather than a solid color background, and it too should be filtered out as unprotectable because it is not original to Plaintiff, and is instead a common floral fabric design concept that dates back decades. (Young Dec. ¶¶ 14-16.)



Plaintiff's NB 170268 Design detail



Defendant's Accused Produce Design detail

The remaining design elements are significantly different, as shown above. The centers of the daisies are different. The black in the Defendant's red flower is absent in the Plaintiff's. The cluster of red flowers to the right of the main clusters are in entirely different positions in the two designs. Plaintiff's red cluster has eight flowers, while the Defendant's has nine, with larger and lighter centers and more detailed articulation. Defendant's design has a cluster of white flowers absent in the Plaintiff's design. The relationship of the surrounding flowers is also different. The red flower in the bottom right of the Plaintiff's design is absent from the Defendant's. The white bud at the bottom of the Plaintiff's design is missing from Defendants' garment. (Young Decl. ¶¶ 12-13.)

**NB Design 161106**[10]

There also are significant differences in the respective designs here once unprotectable elements of concept and color are filtered out.



*Defendant's Accused Product - front*



*Plaintiff's NB Design 161106*

Except for some similarity in one rose cluster highlighted above, there is no other point of comparison between the respective flower designs or flower placement in the designs (Young Decl. ¶ 17-21) Literally every flower and flower placement is different. (Id.)

**NB 180228** [11]

---

[10] In its Amended Complaint, Neman Brothers call this "Design 2," while in his declaration, Neman called it "Design 1." (Cf. Dkt. No.10 ¶ 14-15 and Ex.3 thereto with Dkt. No. 42-1 ¶¶ 10, 12 and Exs. 3 and 4 thereto.) InterFocus refers to it by Neman Brothers' own design number NB 161106 to avoid confusion.

[11] Neman Brothers consistently refers to this as Design 3, but InterFocus also sometimes refers to it by Neman Brothers' own design number NB 180228.

The below comparison again reveals common clusters of flowers as they appear in nature. The flowers in the accused garment are larger, and thus there is less negative space than Plaintiff's design due to decreased space between the flowers. Flower placement and details of the floral expressions also have differences. Similarities could easily be attributable to the inspiration of the actual flowers as they appear in nature, from which both copied. (Young Decl. ¶¶ 22-26.)



Subject Design 3, NB 180228



Defendant's Accused Garment

## V. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE CONTRACTUALLY BARRED BY THE PREVIOUS SETTLEMENT AGREEMENT.

This Court tentatively denied InterFocus' motion for summary judgment based on the "notice and cure" provisions in the Previous Settlement Agreement ("PSA") because it tentatively ruled the meaning of "cure" in that agreement "is reasonably susceptible to two or more interpretations," and is therefore "ambiguous." (Tentative Ruling served August 23, 2021 ["TR"], p. 17.) However,

two paragraphs later, this Court indicated that "the PSA is unambiguous in that it does not bar Neman Brothers' copyright claims, even if the alleged infringements are 'cured' within seven days of notice." (TR 17-18.)

Respectfully, the two statements are irreconcilable. "Cure" as used in the PSA cannot be both ambiguous and unambiguous. If ambiguous, as the Court first tentatively ruled, one of its meanings exempts InterFocus from liability based upon the plain meaning of "cure," as InterFocus previously argued at length. (See Dkt. Nos. 35, pp 7-10, 46, pp. 7-17, and 50 pp. 1-10.) [12] "Cure" **would** "bar Neman Brothers' copyright claims" under that meaning, as described in that briefing. InterFocus respectfully invites the Court to reconsider this aspect of its tentative ruling.

Further, although InterFocus believes that the meaning of the notice and cure provision of the PSA actually is "unambiguous" because the plain meaning of "cure" should contractually exempt InterFocus from liability without consideration of extrinsic evidence as a matter of law as described in previous briefing, concurrently submitted extrinsic evidence further supports InterFocus' interpretation. As the InterFocus attorney who negotiated the PSA explains, InterFocus always intended the "notice and cure" provision to have exactly that meaning, as the facts surrounding execution of the PSA demonstrate. (Declaration of Linna Chen ["L. Chen Decl."] ¶¶ 1, 5.)

InterFocus did not believe the claims had merit, but elected to settle this dispute on the terms stated in the PSA because the few sales of allegedly infringing garments meant that, from a business perspective, it was not worth the legal expense to litigate. It. (L. Chen Decl. Decl. ¶ 2.)

However, while it was willing to pay a nuisance value settlement once,

---

[12] As also argued at length in prior briefing, the PSA also bars all alleged infringements that occur before its execution pursuant to its release provisions, and thus bars all alleged infringements before March 2020. Dkt. No 35, pp 8-9.

InterFocus did not want to face subsequent nuisance suits from Neman Brothers in the future. (L Chen Decl. Decl. ¶ 5.) InterFocus sold large numbers of garments it purchased from third parties, and realistically could not independently police each one's copyright status in real time. (Id.)  Further, Neman Brothers was litigious, with between 90 and 100 copyright infringement suits filed in the Central District of California alone when InterFocus negotiated the PSA. (Lee Decl. ¶ 2 and Ex. 1 filed July 13, 2021, Dkt.. Nos. 35-1 and 35-2.) Neman Brothers also previously sued the same defendant twice for the same alleged copyright infringement, requiring that defendant to go through extensive law and motion work to get the case dismissed. See *Neman Brothers & Assoc., Inc. v. One Step up Ltd.*, 764 Fed. Appx 625 (9th Cir. 2019). InterFocus believed it was important to include a "notice and cure" provision in the PSA specifically to make sure it wouldn't also be sued for such minor alleged infringements in the future, by providing that it could "cure" any alleged infringement by complying with the PSA's provisions. (L. Chen Decl. ¶ 5.)

      The fact that opposing counsel stated in an email during settlement negotiations that Neman Brothers objected to earlier language in the PSA concerning that provision is unimportant and should be inadmissible.[13] Parties in settlement negotiations often say they won't agree to something before they ultimately do agree to it in an agreement. InterFocus' counsel emphasized to Neman Brothers' counsel that InterFocus would not agree to a settlement agreement that would allow InterFocus to be sued by Neman Brothers in the future (L. Chen Decl. ¶6.)  Those negotiations resulted in the "notice and cure" provision, and its plain language is the best evidence of the parties' intent. *Pension Trust Fund for Operating Engineers v. Federal Insurance Co*., 307 F.3d 944, 949 (9th Cir. 2002).

---

[13] The statement was made in the course of settlement negotiations (L. Chen Decl. ¶¶ 3-4), which this Court indicated it was going to exclude pursuant to Fed. R. Evid. 408 (TR 3, fn 2.)  Respectfully, the Court's subsequent consideration of the parties' settlement discussions is inconsistent with its ruling in that footnote 2.

-14-
SUPPLEMENTAL BRIEF OF INTERFOCUS INC. OPPOSING PLAINTIFF'S MOTION AND
SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT

Neman Brothers' attempt to avoid the PSA's plain terms by retroactively mischaracterizing what the parties intended based on settlement negotiations is obviously self-serving, especially when Neman Brothers" proposed "alternative" meaning for "cure" is meaningless and effectively renders "cure" a nullity, as described in previous briefing. Neman Brothers cannot meritoriously rewrite the plain language of the PSA through such extrinsic evidence. (See Dkt. No. 50.)  This is especially true here, where Neman Brothers was an experienced litigant represented by experienced counsel who had been involved in more than 90 copyright infringement settlements previously.

At a minimum, this evidence of intent makes even clearer that the PSA cannot "unambiguously" allow Neman Brothers' copyright infringement claims if InterFocus complies with its conditions, as it did. To the contrary, it unambiguously supports just the opposite.

## VI. CONCLUSION.

InterFocus' motion for summary judgment should be granted, and Neman Brothers' motion should be denied, for the reasons described above.

RIMON, P.C.

Dated:   November 1, 2021

By: /s/ Mark S. Lee
Mark S. Lee
Zheng Liu

Attorneys for Defendants and Counterclaim Plaintiffs
INTERFOCUS, INC. d.b.a. www.patpat.com