1  RIMON, P.C.
   Mark Lee (SBN 94103)
2  mark.lee@rimonlaw.com
   2029 Century Park East, Suite 400N
3  Los Angeles, California 90067
   Telephone/Facsimile: 213.375.3811
4
   RIMON, P.C.
5  Zheng Liu (SBN: 229311)
   zheng.liu@rimonlaw.com
6  800 Oak Grove Avenue, Suite 250
   Menlo Park, California 94025
7  Telephone/Facsimile: 650.461.4433

8  Attorneys for Defendants
   INTERFOCUS INC. d.b.a. www.patpat.com
9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

13  NEMAN BROTHERS & ASSOC.,          | Case No. 2:20-cv-11181-CAS-JPRC
    INC., a California Corporation,
14                                     | **DECLARATION OF DEBORAH
         Plaintiff,                    | YOUNG IN SUPPORT OF
15                                     | SUPPLEMENTAL BRIEF OF
         v.                            | INTERFOCUS INC. D.B.A.
16                                     | WWW.PATPAT.COM IN
    INTERFOCUS, INC. d.b.a.            | FURTHER SUPPORT OF :**
17  www.patpat.com, a Delaware
    Corporation; CAN WANG, and         | **1) MOTION FOR SUMMARY
18  individual, and DOES 1-10, inclusive., |    JUDGMENT AND PARTIAL
                                       |    SUMMARY JUDGMENT ON
19       Defendants.                   |    PLAINTIFF'S COMPLAINT
                                       |    AND DEFENDANT'S
20  _____   |    COUNTERCLAIM; AND**
21  INTERFOCUS, INC. d.b.a.            | **2) OPPOSITION TO PLAINTIFF'S
    www.patpat.com, a Delaware         |    MOTION FOR SUMMARY
22  Corporation; CAN WANG, an          |    JUDGMENT**
    individual, and DOES 1-10, inclusive,
23                                     | Continued
         Counterclaim Plaintiffs,      | Hearing Date:     December 20, 2021
24
         v.                            | Time:             10:00 am
25                                     | Courtroom:        8D
    NEMAN BROTHERS & ASSOC.,
26  INC., a California Corporation,    | The Hon. Christina A. Snyder
27       Counterclaim Defendant.
28

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

## DECLARATION OF DEBORAH YOUNG

I, Deborah Young, declare:

1.      I have been retained as a textile expert on behalf of Defendant InterFocus, Inc. ("InterFocus") in this action, and I am preparing a report that will be served on December 17, 2021. I also have been asked to summarize my views on the potential similarities and differences between the fabric designs in certain garments InterFocus is alleged to have sold in this action, and certain fabric designs in which, I am informed and believe, Plaintiff Neman Brothers & Associates, Inc. claims copyright, based on my research to date, and I do so in this declaration.

2.      I received a Master of Fine Arts in Fiber in 2001 from California State University at Long Beach.  I also received a Bachelor of Fine Arts in Textile Design from California State University at Long Beach in 1996.

3.      Since 1996, I have been teaching in the field of textile design and science at California State University at Long Beach, Otis College of Art and Design, the Fashion Institute of Design and Merchandising (FIDM), in Los Angeles, and California Polytechnic University, Pomona. I have been an instructor of Textile Science at the Fashion Institute of Design and Merchandising in Los Angeles since 1998, and California State University, Pomona since 2014. I teach courses in textile science covering all aspects of textile production, identification, application, and verification, covering fiber through finishing. I also teach textile testing lab classes.

4.      I teach a course on the history of worldwide textile design covering the last 5,000 years, and have done so since about 2001. This class is particularly relevant to this case because it focuses on contemporary design that finds its roots in historic trends in art and design history, along with regional, cultural and ethnographic elements and motifs. My extensive experience in preparing for and teaching this class has given me a unique perspective from which to view current fashion trends and design elements, and the function of textile designs. The course focuses on the repeating, cyclical nature of designs over the centuries, along with

1

the inevitable cross-pollination of concepts, designs, and images from culture to culture, historical period to historical period and civilization to civilization. These elements of history continue to inform trends of today. In this class, I assist students in creating textile designs, inspired by historical periods and designers. I also have taught general art history courses, as well as a course specific to cross-cultural designs and motifs, called Icons of Culture.

5.      I have authored two textile textbooks. The first is entitled "Swatch Reference Guide for Fashion Fabrics," initially published in 2010, now in its 5th edition, and published by Bloomsbury Publications of New York and London. In 2017, I authored "Swatch Reference Guide for Interior Textiles," distributed by the same publisher. Additionally, I wrote the testing lab manual used in FIDM's labs for textiles and color management.

6.      I hold membership in the Textile Society of America (TSA), and the American Association of Textile Chemists and Colorists (AATCC). I attend numerous seminars and textile shows, review current publications, and keep abreast of the industry at large. As an author of a contemporary textile textbook, I consistently research and analyze textile trends and act as textile buyer, interacting with many segments of the apparel industry for this endeavor.

7.      As a result of my teaching and education experience, I have developed significant expertise in recognizing and analyzing the elements and styles of world textile designs over diverse historical periods from ancient to modern. This includes an overview of design and motif trends, and the repetitive, cyclical nature of many patterns in nature and in design. For these reasons, I have become a qualified textile expert.

8.      I have reviewed the Complaint, exhibits to the Complaint, and the Amended Complaint and its exhibits that I understand were filed in this action. I was asked to review the Plaintiff's designs for the purposes of identifying any design elements or motifs that could be found in materials available in the public

2

domain in prior art publications from before the copyright dates ranging from January 2017 to April 30, 2018 as identified in the copyright registrations attached to the Amended Complaint.  I was also asked to comment on whether the designs are substantially similar to the protected works I understand are claimed by the Plaintiff, Neman Brothers.

9.  The Plaintiff images, below, were found in the exhibits to the complaint. They are called subject Designs 1, 2 and 3 in the original and Amended Complaints, and are identified in the Complaint as Exhibits 1, 3 and 8. For the purposes of this report, they will be identified as Subject Designs 1, 2 and 3 respectively, as they were in Plaintiff's Complaint and Amended Complaint. [1]



Subject Design 1, Complaint Exhibit 1



Subject Design 2, Complaint Exhibit 3

---

[1] I am informed and believe that Yoel Neman's declaration in this action reversed the order of the above Designs, such that what is called Design 1 in the pleadings is called Design 2 in his declaration, and what is called Design 2 in the pleadings in called Design 1 in his declaration.  I follow the Design number designations used in the pleadings in this declaration. To avoid any confusion, I am informed and believe that Mr. Neman stated that what Neman Brothers' pleadings identify as Designs 1, 2 and 3 were also designated as designs NB 170268, NB 161106, and NB 180228 in Neman Brothers' business records.

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

Subject Design 3

10.    Overall, these are quite common floral designs, which have been appropriated and repeated for centuries. They are simply expressions of existing flowers and are conventional expressions in the genre of florals. The genre is romantic, the contrast is dramatic, and the colors are informed by trend. These designs are evocative of actual flowers appearing as they do in nature, in clusters, with a few leaves for contrast. As such, these designs are not original concepts, they are simply reflections of nature with a finite number of possible variations in terms of execution. None of the Plaintiff's designs appear significantly fresh, unique or original, in my opinion. Florals have been a favorite of textile designers since designs were first placed on fabric.

11.    Floral designs, in general, have been produced and reproduced until they have become part of the common vernacular or visual vocabulary that defines contemporary style across all textile and design mediums. For example, Subject Design 1 is unremarkable, derivative and typical of the style initially popularized during the late Baroque and Rococo periods (18th Century France), when flowers on a striped background proliferated. Today, these floral stripes are simply genre

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

designs, not particularly interesting or divergent from the other flowers currently and historically offered in the marketplace. In a search conducted in September, I found that Googleimages.com has 86,200,000 images of flowers on stripes.

12.     A closer inspection of the designs at issue reveals that although the Plaintiff's and Defendant's designs share a concept and genre, they do not share the details of their designs. Plaintiff's Design 1 is repeated below and the Defendant's product (dress) is laid beside it for a direct comparison.  The dress image is identified as Exhibit 2 in the Amended Complaint.



Subject Design 1



Amended Complaint Exhibit 2, Defendant's Product

13.     I chose the largest and most visible cluster to detail for a comparative analysis – the four daisies with smaller clusters and a red flower. Even with the distortion of the image of the dress, it is quite evident that there are distinct differences. The centers of the daisies are different. Note the black in the Defendant's red flower, absent in the Plaintiff's. Also note the cluster of red flowers to the right of the main cluster, which is in an entirely different position between the

two designs. Further, the Plaintiff's red cluster has eight flowers, the Defendant's has nine with larger and lighter centers, and more detailed articulation, along with a different arrangement or composition.  The Defendant's design has a cluster of white flowers, completely absent in the Plaintiff's design. The relationship of the surrounding flowers is also different. The red flower in the bottom right of the Plaintiff's design is absent from the Defendant's. The white bud at the bottom of the Plaintiff's design is altogether missing from the Defendant's.



Plaintiff's Design 1 detail



Defendant's Design detail

14.    The flowers themselves are simple abstractions of actual flowers, reminiscent of the simplistic florals of the 1960's, although the Defendant's design has more sophistication and nuance. The point is that these are not minimally creative, they are mere adaptations of nature. The five-petal flower with a yellow (or black) center is also a common expression of flowers such as vinca, phlox, daylilies or hibiscus. They are, in fact, quite generic. The concept and basic colorway may be shared, (although differences are found here as well) but the execution and details are not. What I understand to be called the "scenes-a-faire" doctrine excludes from copyright protection such commonplace elements. As one court stated:

> "Under the doctrine of "scenes-a-faire", courts will not protect a
> copyrighted work from infringement if the expression embodied in the

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

work necessarily flows from a commonplace idea; like merger, the rationale is that there should be no monopoly on the underlying unprotectable idea."

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000)

15.    Showing flowers on a striped background is also a common motif used by many designers. For example, Jean Paul Gaultier is a well-known French designer who has consistently taken advantage of the design concept of flower(s) on a striped background. The dress from that design house was sold at Sak's Fifth Avenue in 2012.



Dress by Jean Paul Gautier 2012

16.    It is evident that the concept of flowers on stripes are a common textile design. Examples that are true and correct copies of images from Bluefly.com and other retailers identified below during the 2015 sales season are shown below.  They illustrate a general trend of flower(s) on stripes. Some are single flower clusters, and some are more consistent, allover designs. This does show a pattern of flowers on stripes as discovered at Bluefly, Chico's and Dillard's, but the design was also

7

1   prevalent at Bloomingdale's, Zara, Max Mara, Juicy Couture, and Anthropologie in

2   the past decade. The concept itself is ubiquitous in the fashion marketplace, not

3   distinct or original, and has been used by many designers.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Bluefly.com Single
flower on stripes

Chico's

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF



Dillard's



web selection

17.   Two such flowered stripes from 1965 are presented below. These designs illustrate a pattern of design history using stripes and flowers together. The individual flowers may vary, but the concept is widespread. Ultimately, they "read" alike, even if there are nuanced differences.



Stripes, by Tina Skinner, Schiffer Publications, 1998.

18.   Subject Design 2 is a classic floral cluster or bouquet on a dark background. The floral sprays are singles or small clusters of two or three flowers. A very common genre, they are, once again, simple reflections of nature. The

9

image is repeated below for the court's convenience. Next to it is royalty free artwork found on the web. This illustrates how common the concept has been.

 

19.     Floral Clusters of the same genre are presented below from across several periods. Once again, although the individual flowers and composition may vary, they still "read" alike to the consuming public. When looking for these romantic, baroque florals, consumers do not distinguish which flower design is used, or even the number of flowers in a design. It is a stylistic choice that they are making. A consumer is as likely to purchase the designs shown above and below as Subject Design 2.

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

1
2
3
4
5
6
7
8
9





10
11

*Album of China Textile Patterns*. 1999 Shaoxing Textile Science & Technology Center.

*Swatches: A Sourcebook of Patterns*

Dorsey Sitley Adler and Robert D. Adler. 2005 TheTextile Design Group, Inc.

12
13
14
15
16
17
18
19
20
21
22
23
24





25
26
27
28

Note the common rose motif on a black background. *Swatches: A Sourcebook of Patterns with more than 600 Fabric Designs.* By Dorsey Sitley Adler and Robert D. Adler. © 2005 The Textile DesignGroup, Inc.

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

20.     It is my opinion that, given similar colorways, one design could be replaced with another within the genre, with no effect on the marketability or sales of the design or garment. The commonality in placement or composition of blossoms and even the execution and treatment of highlights is ubiquitous in this design genre, that is simply reflective of nature.

21.     The following images are of the Defendant's product. At first glance, it does appear that some of the floral representations are pretty close to the deposit materials for Design 2. The scale and the density of the two designs have a marked difference, however, along with the relationships and composition, ultimately rendering them somewhat similar but different designs within the genre.



FRONT

Defendant's Product

BACK

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Subject Design 2



Defendant's Product - front



Subject Design 2-

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

22.     In the images above, I identified  a common flower cluster for comparison. Although still not a perfect overlap, there is a distinct similarity between these two clusters. However, a cursory examination of the remaining motifs and relationships confirms that the composition is not the same. In fact, I cannot draw another point of comparison between the flowers or arrangement. In this instance, there is a common "read" among the designs – initially, they appear similar. On closer inspection, it is quite clear that while the two designs share a style, genre and colorway, they are not the same designs, each quite distinct.

23.     Subject Design 3 from the Amended Complaint is repeated below for comparison. The images below the Subject Design are Google images of the flowers that inspired the design, a Hibiscus and a Butterkin, both from Hawaii. These flowers, (actual and reproduced in print design) are part of a collection of floral designs used liberally in the resort market, as they suggest exotic places, warm climates, and vacation. The cool color palette used by the Plaintiff further supports this concept.



Subject Design 3



Subject Design 3

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF



Exhibit N - Hibiscus Flower

Exhibit O - Hawaiian flower Butterkin(Sida Fallax)

24.     In the images below, the front and back of Defendant's garment is shown. The scale of the motifs in the Defendant's product is larger. The Accused garment has less negative space than the Plaintiff's, which means there is decreased space between. The execution and details of the floral expression also have some distinct differences.  Regardless, the design could have been created as easily from the inspiration of the actual flowers or the designs below. As both Plaintiff and Defendant are using the same floral inspiration for the design, it does not follow that





Exhibit P – Defendant's accusedproduct from the Amended Complaint

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

1  one copied the other.

2      25.    The images on the following page show a history of this genre of

3  design, using the same flowers and same concepts- over the last one hundred and

4  forty years. In fact, the text that those images were taken from, is a study collection

5  of printed fabric designs.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Exhibit Q - France, 1880, Textile Designs; Two Hundred Years of European and American Patterns for Printed Fabrics, Organized by Motif, Style, Color, Layout, and Period. Meller & Ellfers, Abrams, New York, 1991

Exhibit R - France, 1880, Textile Designs; Two Hundred Years of European and American Patterns for Printed Fabrics, Organized by Motif, Style, Color,Layout, and Period. Meller & Ellfers, Abrams, New York, 1991

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

1
2
3
4
5
6
7
8
9
10
11
12
13





Exhibit S – Found on Christie's Auction web site. Jean Touret, 1935



Exhibit T – Found on Christie's web site. Tambute & Touret, 1938

14
15
16
17
18
19
20
21
22
23

26.     It is common business practice, both in the United States and China, for designers to sell off their leftover goods when a collection is complete. These goods are sold to wholesalers or jobbers, without regard to licensing or other limitations. Bargains can be found as they are often cheaper, as they are "leftovers" and limited in availability. In this way, it is entirely possible for a company to acquire goods unaware of any protections under copyright law. In the declaration of Zijia Chen in this matter, Ms. Chen states that she was readily able to purchase the same or similar fabrics, without question or proof of licensing.  Below is just one of many designs found in China that shares the same genre and floral concept.

24
25
26
27
28

17



Exhibit U and details, Shaoxing
Zhongxing Textile Co. Ltd. A
fabric manufacturer in China

27.     The next image illustrates once again, the ubiquitous use of these
florals found in another vintage Jean-Paul Gautier dress. Although the composition
or placement of the flowers is different, the floral expression is the same.



Exhibit V - Vintage Gautier Dress,
anddetail, found on the Real-Real

28.     It is my opinion that some of the florals presented above are as

DECLARATION OF DEBORAH YOUNG IN SUPPORT OF SUPPLEMENTAL BRIEF

similar to the Plaintiff's Design as any other of the genre, including the Defendant's Design. Exhibits N and O, certainly provide inspiration and context for the design.

29. After careful evaluation of all exhibits provided, it is my considered opinion that the Plaintiff's designs are commonplace with thin copyright protection, as they do not provide anything new to the genre or design vernacular.

30. It is also my opinion that there are more differences than similarities in these floral designs. They do share the romantic floral genre and are evocative of thousands of like designs that have been produced for centuries. The Plaintiff's Designs are not original concepts or designs. The Defendant's Designs are not copies; they merely share the genre.

31. As the subject designs are currently on-trend, there are many variations -- and similarities -- in these designs across numerous designer labels; they have become part of a common, contemporary design vernacular. When romantic themes and flowers are prevalent and desirable, it is quite simple to realize and execute this concept. Often these are accomplished in Photoshop or Illustrator with a plethora of digital brushes, stencils and stamps which "paint" a pattern automatically with the click of a mouse. Today, many designers use these time-saving programs. These and other digital tools are readily available and accessible to designers. "Canned" designs such as these are quite commonplace. Moreover, they contribute little or nothing to design history or design vocabulary. Design schools are now spending more time on digital curriculum than drawing skills, as it is so much quicker to execute a design. Using these tools has become a requisite part of the tool kit of the designer and the design process. As such, it is entirely likely to find overlap in design expressions. A Google search for these tools returned 3,250,000 results in 0.43 seconds.

32. After careful analysis and evaluation of the documents and images

19

1  provided to me, it is my considered opinion that the subject designs are quite
2  common and commercial within the current marketplace, and were simply
3  appropriated from prior artwork that existed long before the copyright dates.
4  These images offer a collection of genre designs found in today's marketplace.
5  They are quite common, easily accessible, and prolifically published. When
6  producing prints, designers are challenged to align their work with current
7  trends, inspired, at least in part, by runway shows and trend reports.  These
8  designs are reflections of the current trend. They do not seem innovative or
9  distinctive within the marketplace today, in my opinion. Consumers respond to
10 and purchase the genre or style; they do not necessarily select specific motifs in
11 favor of others.

        I declare, under penalty of perjury under the laws of the United States that the
foregoing is true and correct.


        Dated: 10-30-21                    _____

                                          Deborah E.  Young