CHAN YONG JEONG, ESQ. (SBN 255244)
jeong@jeonglikens.com
JEONG & LIKENS, L.C.
222 South Oxford Avenue
Los Angeles, CA 90004
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for Counter-Defendant NEMAN BROTHERS & ASSOC., INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>　　　　Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**NEMAN BROTHERS SUPPLEMENTAL BRIEF**<br><br><br>DATE: DECEMBER 6, 2021<br><br>TIME: 10 A.M. |

1

**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

## I.     Introduction

Interfocus sold illegal copies, and was sued in the prior case. Soon after settling the case, Interfocus again sold illegal copies of the same subject designs. At the beginning, it argued it obtained a release as to future infringements even though the release section clearly states the release is given to the extent the liabilities were related to the sale of the then-accused garments on or before the execution of the settlement agreement.

Seeing the argument not working, the defendant started arguing Neman's designs might not be original because they were still investigating about the similar designs widely available in the open market and the websites in China, based on which the defendant even requested for a continuance of Neman's summary judgment motion schedules. Decl of Weiwei Le (DKT 35-1), para. 14. The Court granted it. However, the defendant did not present any evidence as to any preexisting prior art negating the originality of the subject designs at all. At most, the defendants' declarants Tao, Xiao and Chen claim it was widely available in China during the last two years, not before 2017, the year the subject designs were registered. DKT. 66-6, 66-8, 66-13. One of them also stated that a fabric supplier was willing and able to easily copy the subject designs without checking any copyright or license issue at all. Chen Decl. (DKT 66-13) para. 7-8.

Seeing the argument not working again, the defendant added a new argument that the accused garments "might" have been made out of the fabrics made under Neman's order or permission. But it could not prove it "was" made out of the fabrics under Neman's order or permission. There is no evidence. At most, the declarants state the fabrics are often times crossing the borders from Vietnam and China, and other illegal copies are widely available in China. DKT 66-8, para. 2-3. There is no evidence identifying the supplier of the accused fabrics or proving the supplier made the accused fabrics under Neman's order or permission.

The defendant never denied it did not have any preventive measure even after the prior case settled, which reckless and willful blindness the Ninth Circuit Court held sufficiently proves willful infringements. *Unicolors, Inc. v. Urban Outfitters, Inc*. 853 F.3d 980, 991-92 (9th Cir.

2

**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

2017)[1]. While the defendant falsely stated it requested its suppliers to write a confirmation about the copyright issues, it never produced any single piece of paper to that effect, and its 30(b)(6) witness Weiwei Le ("Le") admitted at her deposition there was no such thing, and the defendant never checked on the copyright issues.

Le admitted at her deposition Interfocus took no preventive measure after the settlement of the prior case. While the Interfocus' discovery responses falsely stated under penalty of perjury that it asked its vendors to execute a writing to confirm about the copyright issues (**Exhibits 42 (DKT 42-44, Interrogatory No. 18), and Exhibit 51**), Le admitted there is simply no writing. **Exhibit 52 (121:21-122:10)**. Interfocus did not have any measure, did not check its vendors preventive measure, and did not have any employee in charge of the preventive measure. **Exhibit 52 (85:22-86:15)**. Le stated it should be fine to freely use the subject designs only because it is widely available in Chinese markets.

## II.   Arguments

1. **Defendant violated FRCP "Rules 26 and 37" by withholding the identities of Gongwei Xiao, Zijia Chen and Changguan Tao and their contact in formation Until the date of filing their declarations.**

Interfocus presented with its supplemental brief the declarations of the managers working for Interfocus' suppliers off the accused garments and a declaration of a director working for a fabric supplier.

First of all, Interfocus member identified or disclosed any of them throughout the whole case until the date of filing their declaration. In response to the plaintiffs interrogatories ask him about identity and contact information of potential witnesses, Interfocus never even mentioned the managers' name or at least the company email addresses. **Jeong Decl. para. 6.** Further, Le's declaration (DKT 46-1) clearly indicates Interfocus was contacting its suppliers in order to investigate about the source of the accused fabrics and other similar fabrics at least a while

---

[1] A showing of recklessness or willful blindness is sufficient. Urban acted recklessly or with willful blindness to Unicolors' copyright. *Id..* (citing *Wash. Shoe Co.*, 704 F.3d at 674).

3
**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

before the date of declaration, August 2, 2021. Le Decl. (DKT 46-1) ¶3. At her deposition, Weiwei Le admitted that Interfocus counsels and Can Wang were in contact with the managers. **Exhibit 52 (44:9-14, 75:1-11).** The declarations of the managers themselves clearly show do you were prepared by the counsels. DKT. 66-6, 66-8, 66-13. However, even to this date of filing this supplemental brief, Interfocus never supplemented their deficient responses.

Interfocus did not provide any of the vender/supplier's personnel as potential witnesses, or even a single page of any transaction records showing the claims sale of the accused fabrics or garments from any of Xinqi, Aibeibei or Yngfusi to Interfocus. **Jeong Decl. para. 7.** The individuals' names were disclosed to Neman Brothers only in the form of their declarations filed on November 1, 2021[2], only nine days before the discovery cutoff on November 10, 2021. *Id.* Even during the time of negotiating and jointly filing the stipulation on October 22, 2021 (DKT 62) as to the deposition of Le, as the final stage of the discovery, and even after the Court graciously granted the stipulated order (DKT 63) dated October 26, 2021 regarding adjusting the discovery schedule, Interfocus and its counsels deliberately and intentionally kept it SECRET while contacting them and drafting the declarations for them. *Id.*

This sandbagging game Interfocus and its counsels played, forms multiple violations of FRCP rule 26 and rule 37. Interfocus' initial disclosure admits it knew the suppliers by giving only the company names and their mailing addresses in China, but no names of individuals, phone number or email addresses. **Exhibit 53.** Rule 26 mandates the disclosure of (i) the name, the address and telephone number of each individual likely to have discoverable information-- along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; and (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to

---

[2] The Accused Garments were being sold in around September 2020, at which time, multiple months before this case even began, Interfocus reasonably could, and should, have known who the so-called managers/directors who had knowledges about the accused products.

support its claims or defenses, unless the use would be solely for impeachment. F.R.C.P. R.26 (West 2021).

In addition, Interfocus would have not produced any witness from China for a deposition anyways. Even as to Interfocus President Can Wang, who Weiwei Le admitted knew better than her about the vendors/suppliers as she only relays the correspondences and the records between Can Wang, the defendant's counsels and its vendor Yinfusi. **Exhibit 52** (75:1-11, 65:16-66:4). However, when Neman's counsel was asking for deposition of Wang, the defendant's counsel refused to produce him claiming the Chinese laws would not allow it as he lives in China. **Exhibit 59.** Along the same line, the defendant and its counsels would have not produced Xiao, Tao or Chen whose identities and contact information they concealed. In addition, while it is true that the defendant's counsels were in contact with the declarants, they did not produce the correspondences with them even after the deposition of Le. **Exhibit 52** (75:1-11).

This is the game they played. The defendant and its counsels were in close contact with the declarants, but never disclosed them while providing only false information as discovery responses as discussed above.[3] As Rule 37 is self-executing, Ziao, Tao, and Chen should be excluded as witnesses and their declarations should also be stricken and should not be considered in this case.

### 2. Defendant failed to present any admissible evidence establishing "independent creation" defense.

None of the declarants discuss anything related to independent creation by Defendant, its suppliers or sub-suppliers. Rather, the declarants made statements for the conclusion that the accused patterns or similar patters were available online and in the open market, and typical fabric suppliers would and could easily make copies without checking on copyright or license issues. Zijia Chen stated he was told by a representative that his company "could manufacture the fabric or similar ones" and would not "require to show any proof that I worked for a company with a license from Neman Brothers." Chen Decl. ¶¶8-9. In short, whatever design anybody brings in, the company could easily copy and would not even ask about copyrights or

---

[3] In addition, the declarations full of vague hearsay statements with no foundation are all they could show after more than a year period.

license. This statement is nothing but an admission than the said Chinese company has been producing illegal copies during the last three years. In addition, Changguan Tao allegedly working for the supplier of the accused fabrics could not tell exactly who made the accused fabrics. Tao could state merely a hearsay statement that "Xin Ran[4] told me it purchased the fabric from open fabric market in Guangdong, China." There is no discussion about when, where, by whom, the accused fabrics were manufactured, with or without license at all.

Further, as discussed in the motion, when two designs are "so strikingly similar" that "as a matter of logic, the only explanation [for the similarities] between the two works must be 'copying rather than ... coincidence, the possibility of independent creation is excluded and copying may be proven without a showing of access". 4–13 *Nimmer on Copyright* § 13.02[B] (2009); *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995*); Selle v. Gibb,* 741 F.3d 896, 903 (7th Cir. 1984)). As discussed in the motion, the subject designs and the accused patterns are virtually the same, which establishes more than striking similarity sufficiently showing the accused patterns are products of copying, and which also sufficiently excludes a chance of independent creation.

In other words, copying was made not as to a generic shape or typical expression that is merged into an idea of drawing "flowers", but objective details of the expression of the flowers, stems and leaves, as well as their arrangement. Neman Exhibits 23, 24 and 25 (DKT Nos. 42-25, 42-26 and 42-27). A chance of two different works having the same expression of a flower in objective details on flower buds, and their lining, shadings, arrangements and directions, by coincidence of independent creation, is "extremely" low especially when the works have extensive amounts of objective details. Further, the chance of the two works, in addition to having such identical expressions of a flower, also having identical expressions of multiple stems and leaves in the same objective details, by coincidence, would be even more extremely unlikely. Moreover, the chance of those flowers, stems and leaves as a combined element expressed in the same objective details to be put in the same arrangement and directions, by coincidence, would be even more extremely low. In addition, a chance for two designs to have more than one such identical combined sets by coincidence would be close to impossible.

---

[4] The defendant never disclosed the name Xin Ran, her company name, or contact information. Jeong Decl. para. 8.

All of the purportedly similar designs the defendant's declarants and expert claimed to have found to be similar with the subject designs, were not even close to the subject designs as to objective details while they were also expressing flowers. **Exhibit 54, 57.** The flower buds, their lining, shading, arrangement and directions as individual element are different in the expressions as to objective details. *Id*. The same is also true as to stems and leaves. *Id*. The same is true as to the combination of flowers, stems and leaves as a group element in each design, as to how they were combine. *Id*. In other words, the way they were arranged, and how each element was located and directed, in order to make a group element together. *Id*. Further, how those different group elements in the designs were again different, because having similarities to that levels as to each element, group elements and their arrangement, by coincidence, is simply impossible. *Id*.

On the other hand, the subject designs and the accused patterns are virtually the same, as to each element, group elements and their arrangement. **Exhibit 55, 56 and 58.**

The only ways to logically explain such identities of the accused patterns and the subject designs are either both works being the products of copying the same prior art, or one work being the product of copying the other. However, as discussed below, Defendant failed to present any admissible evidence to show existence of preexisting design that may attack the originality of the subject designs, leaving that the accused patterns are the products of "copying" the subject designs, as the only explanation for this case.

3. **In August 2021, Defendant requested for a continuance of Neman's MSJ hearing for the sake of its belated investigation as if it had a lead to find pre-existing designs, but ended up failing to present any admissible evidence establishing any "pre-existing design" negating the originality of the Subject designs.**

As to the preexisting designs, all Gongwei Xiao could state in her declaration were merely hearsay statements said by the alleged fabric supplier "Hengzhou", not Xiao, "this fabric and very similar fabrics are available on the internet." **Xiao Decl. ¶4**. Xiao did not even bother giving the name of the Hengzhou person who said it. There was no disclosure. **Jeong Decl. para. 5-9.** Even assuming arguendo the said statement were admissible, it proves nothing about any pre-existing design they may negate the originality of the subject designs. The Hengzhou person's hearsay statements goes on by saying "I have seen multiple offerings of garments in such fabrics on Aliexpress in the past two years." Again this proves nothing. rather it proves

7

**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

those allegedly similar designs of available online maybe nothing but illegal copies because they started becoming available only two years ago which is 2019, two years after the subject designs' registrations.

In addition, as discussed above, the purportedly similar designs shown on the linked pages are not similar with the subject designs at all. The only commonality between the said designs and the subject designs is the "idea" of using flowers as motifs. However, the "expressions" of the designs in "objective details" were very different while the accused patterns on the accused garments were virtually identical with the subject designs.

Zijia Chen also failed to present any admissible statement. Chen also relays only a hearsay statement of the "representative"[5] of a fabric company in China with no name or contact information, stating "the company had been producing these fabrics below for some years, and at the latest, from 2019" which came after the subject designs. Chen Decl. ¶8.

Changguan Tao also made merely a hearsay statement that "XinRan told me it purchased the fabric from open fabric market in Guangdong, China" and a vague statement "this fabric is available on the internet. I have seen multiple offerings of garments made from this fabric on 1688." Chen Decl. ¶8. The 1688.com website written in Chinese was present with no certified translation. There is no information as to when the garments bearing the accused pattern were made by whom.

None of Interfocus, its suppliers and its sub-suppliers knows when the accused patterns were created by whom. Interfocus' 30(b)(6) witness Weiwei Le at her deposition admitted she had no information about the source of the accused fabrics either. **Exhibit 52, 125:5-13.** The only reason Le could provide as to why Interfocus could use or sell the accused products was because they were in the "open market". **Exhibit 52 (121:12-19).**

4. **<u>Defendant failed to present any admissible evidence establishing the application of the "first sale doctrine".</u>**

The Ninth Circuit Court in *Adobe Systems Inc.* held;

---

[5] This unknown person, so-called the representative was never disclosed either. Jeong Decl. para. 8.

> Congress amended the Copyright Act in 1976 and revised the first sale defense. 17 U.S.C. § 109(a). Unlike its predecessor, the amended statute explicitly required that a defendant raising a first sale defense own the copy at issue. *Id.* (limiting the first sale defense to "the *owner* of a particular copy" (emphasis added)). The first sale defense did "not ... extend to any person who has acquired possession of the copy ... from the copyright owner, by rental, lease, loan, or otherwise, without acquiring ownership of it." *Id.* at § 109(d)….
> Supreme Court first analyzed § 109(a) in *Quality King*. Distinguishing between the owner of a copy and a non-owner, such as a licensee, the Court emphasized that "because the protection afforded by § 109(a) is available only to the 'owner' of a lawfully made copy (or someone authorized by the owner), the first sale doctrine would not provide a defense to ... any nonowner such as a bailee, a licensee, a consignee, or one whose possession of the copy was unlawful." 523 U.S. at 146–47, 118 S.Ct. 1125. In other -words, to claim the benefits of the first sale defense, the holder of the copy must actually hold title.
>
> *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1078-79 (9th Cir. 2015).

In this case, there is no evidence showing any part of the accused fabrics were in fact made under Neman's order, permission or license, or somehow the ownership of a certain copy transferred to one of the suppliers in the supply chain of the accused fabrics. All Gongwei Xiao, Zijia Chen and Changguan Tao could present were inadmissible hearsay statements with no foundation. Even assuming arguendo they may be admissible, they stated merely the accused fabrics or the fabrics bearing similar designs were "available" online or in an open market "since 2019". They could not even tell who manufactured the accused fabrics.

5. **As to the Issue of Validity of the Copyright Registrations, Interfocus' supplemental brief merely repeats the same argument mentioned in their second motion for summary judgment (DKT. 68).**

The same issues regarding the alleged omissions and errors in the copyright applications raised by Interfocus' second motion for summary judgment and already responded by Neman Brothers' opposition (DKT 71). therefore, instead of repeating the same arguments, Neman Brothers would incorporate the arguments mentioned in its opposition. As discussed in Neman's

**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

opposition, Yoel Neman did not admit NB161106 was the exact same as purchased from Francesco. His testimony was about his general understanding about 'x' designation, not specifically the subject designs themselves. Adrineh Mokhtarians could and did explain specifically as to the procedure after the purchase of designs to make NB 161106 and NB 180228. In addition, the purchased designs and the subject designs themselves are the best evidence showing the differences based on the modifications made by Neman's designer. In other words, Mokhtarians' statements about the subject designs are not in contradiction with Neman's testimonies, but clearer and more specific supplementation. Notwithstanding the above, NB170268 is not subject to the above discussions anyways because it was internally created using the prior works as an inspiration, not motifs for modification, in most of the parts if not all.

Further, even assuming Mokhtarians' clearer and more specific statements about the subject designs in her declaration is in conflict with Neman's deposition statement, Rule 30(b)(6) testimony is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements. "[t]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (quoting *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2015) and *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (2001)).

**6. Interfocus' argument that copyright infringement claims in this case were released by the prior settlement agreement it's nothing but an attempt to have a second bite of the same apple.**

The court in the prior ruling has already decided on this issue. However, Interfocus realizing that it's failing to present real evidence to establish independent creation or the first sale doctrine, attempts to again raise the same issue of release by the prior settlement. What Interfocus could add this time was only the former counsel Linna Chen's self-serving statement that she insisted on adding the notice and cure provision through the agreement, which directly contradicts with the contents of the emails exchanged with Neman Brothers' counsel during the time of negotiating the settlement agreement. **Plaintiff's exhibits 26 and 29.**

**NEMAN BROTHERS SUPPLEMENTAL BRIEF**

7. **<u>Defendant Never Denied the Willfulness of Its Infringement.</u>**

Neman argued Defendant's infringement was willful because even after the settlement of the Prior Case, Defendant did not have any reasonable preventive measures to avoid a copyright infringement and the subsequent infringements were committed within a few months from the date of the settlement of the prior case.

Le admitted at her deposition Interfocus took no preventive measure after the settlement of the prior case. While the Interfocus' discovery responses falsely stated under penalty of perjury that it asked its vendors to execute a writing to confirm about the copyright issues (**Exhibits 42 (DKT 42-44, Interrogatory No. 18), and Exhibit 51**), Le admitted there is simply no writing. **Exhibit 52 (121:21-122:10)**. Interfocus did not have any measure, did not check its vendors preventive measure, and did not have any employee in charge of the preventive measure. **Exhibit 52 (85:22-86:15)**.

The real problem lies upon Interfocus' irresponsible attitude as to the copyrights issues. Le on behalf of Interfocus and other declarants from Interfocus' vendors are saying it should be fine because the fabrics bearing the subject designs were everywhere in open markets and online, and even without checking copyright issues, fabric suppliers would be willing and able to easily copy any designs. This attitude appears to be pandemic in China, which may go without liabilities in Chinese courts, but not in the Courts in the U.S. especially the infringers are "repeatedly" displaying and selling the illegal copies in the U.S. market in violations of American businesses' designs, which is the products of time and efforts spent by the copyright owners.

This way, it is obvious that Interfocus and its vendors would not care at all as to others' copyrights and continue to sell illegal copies without checking the copyright ownership issues, which is a classic example of willful infringement.

8. **<u>Debora Young's declaration should not be considered.</u>**

Under Rule 56(c)(4), the expert must back up his or her opinion with specific facts: "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the *factual basis for the opinion is stated in the affidavit*, even though the underlying factual details and reasoning upon which the opinion is based are not." *Bulthuis v. Rexall Corp.* (9th Cir. 1985) 789 F.2d 1315, 1318 (emphasis added); *Brainard*

*v. American Skandia Life Assur. Corp.* (6th Cir. 2005) 432 F3d 655, 664 (expert opinion must set out facts and articulate logical line of reasoning); *Heath v. Board of Supervisors for Southern Univ. & Agricultural & Mechanical College* (5th Cir. 2017) 850 F3d 731, 737)—where expert gave no insight into his reasoning, proper to exclude expert's conclusory affidavit from summary judgment analysis.

In this case, the defendant's purport expert witness never produced any data or supporting evidence. Young only pretends to discuss them in her declaration. She only states conclusory statements as to the materials she reviewed, the identity and the origin of the purported similar designs. While doing so, this so-called expert blatantly admits she would not disclose her full report until about 2 weeks after the motion hearing. **Young Decl. para. 1.** Young would only conveniently pick and choose whatever educational and professional backgrounds she would like to discuss only, while completely failing to disclose what cases she worked on as an expert witness in the past.

With no full disclosure or report, Neman would not be able to examine the so-called opinion, depose the expert and rebut with its own expert. Young intentionally avoids discussing how long time she worked this matter because she does not want to disclose how long the defendant's counsels concealed the expert information until they filed her declaration with no proper disclosure at all, which would make Neman unable to examine even the report, supporting materials or even her prior experiences as an expert witness, as well as to prepare and submit its rebuttal expert.

Young also admits Interfocus' counsels specifically "asked" only to "summarize" instead of preparing a full disclosure and report, which is nothing but another sandbagging game Interfocus continued to play in this case. **Young Decl. para. 1.**

Even assuming her declaration may be considered, for the reasons below, Young's declaration does not establish any material facts for the defense.

Her declaration claims the subject designs are common. "Idea" of drawing flowers maybe common, but she would not discuss at all that the subject designs' expressions in objective

details are not common compared to what she presents as similar designs. The expert is intentionally confusing herself as to difference between "idea" and "expression".[6]

In fact, **the designs themselves clearly show dissimilarities are shown by the designs themselves**. **Exhibits 54, 57.** However, Young keeps saying the subject designs are not new or fresh, only because they had the "idea" of drawing flowers. She avoids discussing the differences as to expressions of the designs which makes the subject designs original compared to others. Even if an expert relies on valid scientific studies, a judge may properly exclude the expert's conclusions where there is "too great an analytical gap" between the data studied and the opinion proffered. *General Elec. Co. v. Joiner* (1997) 522 US 136, 146.

Young also claims the accused patterns are different from the subject designs. For example, she stated "[a] closer inspection of the designs at issue reveals that although the Plaintiff's and Defendant's designs share a concept and genre, they do not share the details of their designs." Young Decl. para. 12. But she would not discuss about the virtual identities of the works, shown in Neman's Exhibits 23-25. DKT No. 45-25, 45-26 and 42-27. Rather, she compares only different parts by picking and choosing and rearranging in tricky ways.

While Young focuses on differences as to the center of the red flower and the clusters of the white flowers, she would not discuss about how this high level of similarities between the two works were the result of coincidence, not the result of one copying the other with deliberate modifications of some detail in in a "crude effort to give the appearance of dissimilarity," which itself evinces copying.

"**It is entirely immaterial** that, in many respects, plaintiff's and defendant's works are **dissimilar**, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." (emphasis added) *L.A. Printex Ind.*, 676 F. 3d. at 851 (citing 4 NIMMER ON COPYRIGHT § 13.03[B] [1][a]). Thus, an analysis of similarity should **focus on the elements that are similar, not on the elements that are dissimilar**. *See* 4 NIMMER ON COPYRIGHT §

---

[6] If she did not know the difference, she does not qualify as an expert.

13.03[B] [1][a] (2017). Therefore, Young's focusing on fining differences while being willfully blind to the obvious 'virtual identities' is simply off the point and irrelevant.

"Fragmented literal similarity exists where the defendant copies **a portion of the plaintiff's work** exactly or nearly exactly, without appropriating the work's overall essence or structure. *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004). "[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." (emphasis added) *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). "**Even if a copied portion be relatively small in proportion to the entire work**, if qualitatively important, the finder of fact may properly find substantial similarity." (emphasis added) *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990).

Therefore, even if it is merely a small portion of the design, or arrangement of the elements, the similarities will be sufficiently established. In this case, the side-by-side comparisons clearly show high level of similarities that cannot be the result of coincidence as opposed to deliberate copying.

### III.   Conclusion

Based on the above, the plaintiff's motion for summary judgment should be granted.

Dated: November 23, 2021                    Respectfully submitted,

                                            */s/Chan Yong Jeong*
                                            Chan Yong Jeong, Esq.
                                            Attorney for NEMAN BROTHERS