# **EXHIBIT 52**

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3     _____
                                            )
 4     NEMAN BROTHERS & ASSOC., INC., a     )
       California Corporation,              )
 5                                          )
             Plaintiff/Counter-Defendant    )
 6                                          )
          vs.                               ) Case No.: 2:20-cv-
 7                                          ) 11181-CAS-JPR
       INTERFOCUS, INC., a California       )
 8     Corporation, et al.,                 )
                                            )
 9           Defendant/Counter-Claimant     )
                                            )
10
11
12
13
14                      CONFIDENTIAL
15           WEB VIDEOCONFERENCE DEPOSITION OF
16                       WEIWEI LE
17                       VIA ZOOM
18                   NOVEMBER 16, 2021
19
20    ATKINSON-BAKER, a Veritext Company
      500 North Brand Boulevard, Third Floor
21    Glendale, California  91203
      (800) 288-3376
22    www.depo.com
23
24    REPORTED BY:  MIRELLA O. LEYVA, RPR, CSR NO. 11614
25    FILE NO.: 4950809

                                                      Page 1
```

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3   _____
                                           )
 4   NEMAN BROTHERS & ASSOC., INC., a      )
     California Corporation,               )
 5                                         )
            Plaintiff/Counter-Defendant    )
 6                                         )
          vs.                              ) Case No.: 2:20-cv-
 7                                         ) 11181-CAS-JPR
     INTERFOCUS, INC., a California        )
 8   Corporation, et al.,                  )
                                           )
 9          Defendant/Counter-Claimant     )
                                           )
10
11
12
13
14
15
16                       CONFIDENTIAL
17
18      Web Videoconference Deposition of WEIWEI LE, taken
19   on behalf of Plaintiff/Counter-Defendant, via Zoom,
20   commencing at 10:02 a.m., Tuesday, November 16, 2021,
21   before Mirella O. Leyva, RPR, CSR No. 11614.
22
23
24
25
                                                    Page 2
```

```
 1                A P P E A R A N C E S:
 2         For the Plaintiff/Counter-Defendant:
 3         JEONG & LIKENS, L.C.
           BY:   CHAN YONG JEONG, ESQ.
 4               (Web videoconference appearance)
           222 South Oxford Avenue
 5         Los Angeles, California  90004
           (213) 688-2001
 6         Jeong@jeonglikens.com
 7         For the Defendant/Counter-Claimant:
 8         RIMON, P.C.
           BY:   ZHENG LIU, ESQ.
 9               (Web videoconference appearance)
           800 Oak Grove Avenue
10         Suite 250
           Menlo Park, California  94025
11         (650) 461-4433
           zheng.liu@rimonlaw.com
12
           Also present:   Lingling Martin, Mandarin
13                         Interpreter
14
15
16
17
18
19
20
21
22
23
24
25

                                                       Page 3
```

November 16, 2021

```
 1                    I N D E X
 2    EXAMINATION BY:                                  PAGE
 3    MR. JEONG                                           5
 4
 5
 6                   E X H I B I T S
 7    NUMBER          DESCRIPTION                      PAGE
 8    Exhibit 1       Notice of Deposition                6
 9    Exhibit 2       Cease and Desist letter            42
10    Exhibit 3       Plaintiff's Complaint              43
11    Exhibit 4       Miscellaneous documents            44
12    Exhibit 5       Declaration of Gongwei Xiao        51
13    Exhibit 6       Request for Production of          55
                      Documents
14
      Exhibit 7       Declarations of Mark S. Lee and    69
15                    Weiwei Le
16    Exhibit 8       Declaration of Changuang Tao       92
17    Exhibit 9       Defendant and Counterclaim         93
                      Plaintiff InterFocus, Inc.
18                    d.b.a www.patpatcom's Responses
                      to Plaintiff and Counterclaim
19                    Defendant's Request for
                      Interrogatories
20
      Exhibit 10      Declarations of Mark S. Lee and   107
21                    Weiwei Le in Opposition to
                      Plaintiff's Motion for Summary
22                    Judgment for Adjudication
23    Exhibit 11      Defendant and Counterclaim        108
                      Plaintiff InterFocus, Inc.,
24                    d.b.a. www.papat.com's Initial
                      Disclosures Pursuant to FRCP
25                    26(a)
```

```
 1        THE REPORTER:  Good morning, my name is Mirella
 2   Leyva, a California Certified Shorthand Reporter, and
 3   this deposition is being held via videoconferencing
 4   equipment.  The witness and reporter are not in the same
 5   room.  The witness was sworn in remotely.
 6
 7                       LINGLING MARTIN
 8   was sworn in remotely as interpreter to translate from
 9   English into Mandarin and from Mandarin into English the
10   examination and testimony of the witness, WEIWEI LE.
11
12                         WEIWEI LE,
13   the witness herein, having been first duly sworn
14   remotely, testified in English and through the
15   interpreter as follows:
16
17                         EXAMINATION
18      MR. JEONG:  Okay, Ms. Le indicated to her counsel
19   she can communicate in English, but from time to time
20   she may need interpreter's help.  So just in case, we've
21   arranged Madam Interpreter too.
22           So we will generally proceed in English, but
23   whenever Ms. Le requests help from the interpreter, we
24   will let her translate everything for her.
25      Q.   Is that okay?
```

Page 5

```
 1    screen now?  Exhibit 3 was the declaration of Mr. --
 2    okay, declaration of Mr. -- Mr. Xiao, X-i-a-o.  The
 3    information stated here, did you get that information
 4    from Yinfusi?
 5         A.   This information they send it directly to my
 6    attorney.
 7         Q.   You said you asked that question.  And what
 8    did they give you?
 9         A.   They provide -- so I asked the question, and
10    they provide all the information that they can get to my
11    attorney.
12         Q.   So what is it?  What is it that they gave to
13    you?
14         A.   I believe my attorney already provide what we
15    have to you.
16         Q.   So what information by Mr. Xiao is stated in
17    his declaration?  It was not in that response from
18    Yinfusi.  Yinfusi did not give you this information?
19    Did you read this document before?
20         A.   No.
21         Q.   And did you give Mr. Xiao -- X-i-a-o -- this
22    person's contact information to your counsel?
23         A.   Yinfusi should've give my attorney directly,
24    it's not through me.  I don't know.
25         Q.   Okay.
```

Page 65

```
 1    litigation?
 2         A.    Did I say I'm in charge?
 3         Q.    Yeah, you said in your declaration.
 4         A.    Can Wang is in charge in this litigation.
 5         Q.    Okay.
 6               Let's mark another document.  I was waiting
 7    for this.
 8               And how much time did you spend, by the way,
 9    for this litigation?
10         A.    Many times [sic].
11         Q.    How many hours, can you tell?
12         A.    It's from first litigation and the second
13    litigation total --
14         Q.    Ma'am -- ma'am, my question is this
15    litigation.
16         A.    Can you wait until I finish and ask your
17    question?
18         Q.    Okay, go ahead.
19         A.    So my question is, do you want to know
20    starting the first desist letter all the way to now, or
21    you just want to know from second desist letter all the
22    way until now?
23         Q.    My question is very clear, if you are
24    listening carefully.  For this second lawsuit, how many
25    hours did you spend?
```

Page 67

```
 1   litigation?
 2        A.   Did I say I'm in charge?
 3        Q.   Yeah, you said in your declaration.
 4        A.   Can Wang is in charge in this litigation.
 5        Q.   Okay.
 6             Let's mark another document.  I was waiting
 7   for this.
 8             And how much time did you spend, by the way,
 9   for this litigation?
10        A.   Many times [sic].
11        Q.   How many hours, can you tell?
12        A.   It's from first litigation and the second
13   litigation total --
14        Q.   Ma'am -- ma'am, my question is this
15   litigation.
16        A.   Can you wait until I finish and ask your
17   question?
18        Q.   Okay, go ahead.
19        A.   So my question is, do you want to know
20   starting the first desist letter all the way to now, or
21   you just want to know from second desist letter all the
22   way until now?
23        Q.   My question is very clear, if you are
24   listening carefully.  For this second lawsuit, how many
25   hours did you spend?
```

Page 67

```
 1              Yinfusi directly contacted your counsel;
 2    correct?
 3         A.   I don't know.
 4         Q.   So you gave Yinfusi contact information to
 5    your counsel; correct?
 6         A.   (No audible response.)
 7         Q.   Is that hard to understand?
 8         A.   No, I -- I -- I didn't give my attorney's
 9    information to Yinfusi.
10         Q.   Do not change my question.  My question is,
11    did you give Yinfusi contact information to your
12    counsel?
13         A.   I didn't.
14         Q.   Then how -- how would -- and then did you give
15    your counsel's contact information to Yinfusi?
16         A.   Because I'm not the only one.
17         Q.   No, that's not my question.  I'm not asking
18    why.  I'm asking, did you give your counsel's contact
19    information to Yinfusi?
20         A.   No.
21         Q.   And how would they contact each other?
22         A.   Probably somebody else give it, not me.
23         Q.   Who did?
24         A.   I don't know.
25         Q.   I thought you were in charge of this
```

Page 66

```
 1         MR. JEONG:  I also want your communication with
 2   Xiao, X-i-a-o, because that's not privileged.  So you
 3   are communicating with third-party witness, and I want
 4   that.  If it is either you or Mark Lee, whoever that is,
 5   I want that -- communications, and also I want the
 6   communications with -- there was another one --
 7   Changuang Tao, C-h-a-n-g- -- g-u-a-n [sic], T-a-o.  I
 8   want the communications with them too.  That's not
 9   privileged.
10         MS. LIU:  And we dispute that, but we'll -- we'll
11   discuss that with you off the record.
12         MR. JEONG:  Okay.
13              I am speaking loud.  I -- I thought it was
14   helping her and, first of all, I'm doing this for Madam
15   Reporter because Madam Reporter a few times asked me to
16   kind of speak up because she could not hear me.  And
17   speaking slow, I'm -- I'm trying to speak slow so
18   that -- I want her to understand the question.  And the
19   thing is, whenever she needed she ask for the help of
20   the interpreter anyways.  So, yeah, I mean, I'm just
21   saying that for the record anyways.
22         MS. LIU:  Just try because, you know, she -- she --
23   you know, the witness gets upset when -- when she feels
24   that you are yelling.
25         MR. JEONG:  It appear that she get upset whenever
```

```
 1         Q.   Yeah, July -- so you don't remember what you
 2   wrote in your declaration?
 3         A.   I -- I remember the declaration.  The accused
 4   items, right, the products?  To be clear, I said, I
 5   don't remember it's from -- it's for the first
 6   litigation.  It's not second litigation.  So now which
 7   litigation we talking about?
 8         Q.   It's not about which litigation, it's about
 9   whether you remember or not.
10         A.   So my job, it just ask the product team to
11   take down the accused products.  My job is not to
12   remember all details on this lawsuit.  So my declaration
13   I state -- I asked -- I receive the letter.  I asked the
14   product team in Yinfusi to take down as soon as
15   possible.
16         Q.   I'm asking you about Yinfusi, besides you
17   telling them try to not buy similar designs with Neman
18   Brothers.  Did you -- did you do anything, or did you
19   say anything?
20         A.   Yes, I asked them to take down all the
21   products and do not put on the similar items.
22         Q.   I'm talking about after the settlement of the
23   first lawsuit, you said you talked to Yinfusi and tried
24   to not buy and sell similar designs with Neman Brothers?
25         A.   Not similar designs with Neman Brothers.  It's
```

Page 85

```
 1      only accused items, the items that you listed on the
 2      first lawsuit.
 3             Q.    That's it?
 4             A.    Yes.
 5             Q.    Did you ask them to do anything to avoid
 6      future lawsuits?
 7             A.    Yes, just from the -- the first lawsuit items,
 8      "Don't put on any similar items back to the Web site
 9      again."
10             Q.    So, besides saying those things, did you ask
11      them to do anything further to avoid future lawsuits or
12      infringement of any -- any others' copyrights or Neman
13      Brothers' copyrights?
14             A.    I think I answered the question before, just,
15      "Do not" --
16             Q.    I'm just trying to confirm I got all the
17      information from you.
18             A.    Yes, yes, yes.  So for Neman Brothers, right,
19      it's, "Do not put back on the Web site" for the similar
20      items that -- which listed on the first lawsuit, and
21      also asked them to avoid those name brand -- similarity
22      with the name brand.
23             Q.    Now, we were discussing about whether you
24      asked about the identity of the fabric manufacturer who
25      had that -- who printed that design printed on the
```

Page 86

1    communicate with your counsel when I'm asking questions.
2    Just listen to me and -- because I saw you looking to
3    your counsel, so don't do that.
4              I'm asking you that InterFocus may think, "Oh,
5    you know what, this design has no owner, so I" -- "I
6    have the right to use it," or "You know what, my vendor
7    made it," or "My vendor's vendor made it, so they said
8    it's fine, so I own it," or "I can use it."  So not just
9    necessarily about Neman Brothers' permission.
10        A.   Uh-huh.
11        Q.   Does InterFocus have any right or permission
12   to use the subject designs?
13        A.   Yes, I think so.
14        Q.   Why?
15        A.   Because those are purchased from open market,
16   so --
17        Q.   So "open market" means what?
18        A.   Open market just -- you get it everywhere.  So
19   you log into Web site, and you can purchase.
20        Q.   So while that is in the open market, you can
21   use that design?
22        A.   My understanding is, yes.
23        Q.   So then that's InterFocus' understanding?  So
24   whatever is in the market, anybody can freely use it --
25   the design?

Page 120

```
 1            MS. LIU:  Objection.  Asks for legal conclusion.
 2            MR. JEONG:  No, I'm talking about InterFocus on the
 3     sending, what -- what they -- she's saying InterFocus
 4     thinks it could use it because they bought it from open
 5     market.
 6       Q.   So I'm asking, does InterFo- -- is that -- is
 7     that the reason why InterFocus believed like anything
 8     that's in the open market, InterFocus can freely use it?
 9            MS. LIU:  Objection.  Asks for legal conclusion.
10     BY MR. JEONG:
11       Q.   Okay.  Anyways, please answer, Ms. Le.
12       A.   So let's say if the product -- I know
13     it's from Gucci and I saw somewhere exactly the same and
14     sell cheaper -- much cheaper, and I bought it, so I
15     know, before, this is not authorized by Gucci, and I
16     still tried to buy and resell, that's wrong.  But if
17     something -- and I go to the market and it's everywhere
18     and I purchased and I re-selled [sic] on our Web site, I
19     think it's -- it's okay.
20       Q.   Okay, I get it.
21            Does InterFocus have written agreement giving
22     permission to use any of the subject designs?
23       A.   Can you -- can you repeat it again?
24       Q.   So when I'm saying, "some of the designs," I'm
25     talking about those three designs --
```

Page 121

```
 1        A.   Uh-huh.
 2        Q.   -- in this case, Neman Brothers claimed to
 3   own; right?
 4        A.   Uh-huh.
 5        Q.   And my question is, does InterFocus have any
 6   written agreement to use any of the subject design,
 7   like, "Okay, you can use it," like they have an
 8   agreement in writing?  Does InterFocus have it?
 9        A.   We don't have those in writing from Neman
10   Brothers.
11        Q.   And then, if not Neman Brothers, anybody else
12   is fine?  Does -- does InterFocus have any writing -- in
13   writing any agreement to allow InterFocus to use any of
14   the subject designs?
15        A.   The thing is, we don't know this fabric -- it
16   belong to anybody else, so how can we get the agreement
17   in writing to sell this product?  That's international
18   (phonetic) property, so --
19        Q.   The thing is, you don't have it -- InterFocus
20   does not have it; correct?
21        A.   (No audible response.)
22        Q.   I mean, I'm just asking.  I'm not blaming you
23   or judging you at all, I'm just asking.
24             So if there's no writing, then you can --
25   agreement in writing, you can say, "No, we don't have
```

Page 122

CERTIFICATE

OF

DEPOSITION OFFICER

I, Mirella O. Leyva, Certified Shorthand Reporter, in and for the State of California, do hereby certify under the laws of the State of California:

That the testimony in the foregoing transcript is the Web videoconference deposition taken before me at the time and place therein set forth, at which time the witness was duly sworn by me through the interpreter;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed, and that the foregoing pages contain a true record of the testimony given by the witness.

In witness whereof, I have subscribed my name this date: November 18, 2021.

MIRELLA O. LEYVA, CSR, RPR
Certificate No. 11614

```
1    CHAN YONG JEONG, ESQ.
2    Jeong@jeonglikens.com
3                                    NOVEMBER 18, 2021
4    RE: NEMAN BROTHERS & ASSOC., INC. VS. INTERFOCUS, INC., ET AL.
5    NOVEMBER 16, 2021, WEIWEI LE, JOB NO. 4950809
6    The above-referenced transcript has been
7    completed by Veritext Legal Solutions and
8    review of the transcript is being handled as follows:
9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext
10      to schedule a time to review the original transcript at
11      a Veritext office.
12   _X_Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF
13      Transcript - The witness should review the transcript and
14      make any necessary corrections on the errata pages included
15      below, notating the page and line number of the corrections.
16      The witness should then sign and date the errata and penalty
17      of perjury pages and return the completed pages to all
18      appearing counsel within the period of time determined at
19      the deposition or provided by the Code of Civil Procedure.
20   __ Waiving the CA Code of Civil Procedure per Stipulation of
21      Counsel - Original transcript to be released for signature
22      as determined at the deposition.
23   __ Signature Waived - Reading & Signature was waived at the
24      time of the deposition.
25
```

Page 135