UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., | CASE NO.: 2:20-cv-11181-CAS-JPR |
|     Plaintiff/Counter-Defendant, | RESPONSE OF THE REGISTER OF COPYRIGHTS TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2) |
|     vs. | |
| INTERFOCUS, INC., et al., | |
|     Defendants/Counter-Claimants. | |

On January 13, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights (the "Register") on the following question:

> [W]hether [the Register] would have refused the registration of VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970, if it had known that Neman Brothers was not the sole author of all of the works included in those group applications.[1]

---

[1] Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 1 (January 13, 2022) ("Request").

By letter dated March 30, 2022 (attached here as Exhibit A), the Court informed the Register that its Request may have been premature in light of the Supreme Court's recent decision in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*[2]  The Court requested that the Register abstain from responding to the Request "if [she] deems doing so to be appropriate," until the Court determines whether Neman Brothers was aware of its legal obligation to identify the third party authors of works included in its registrations.[3]

The Register acknowledges that for the copyright registrations at issue to be held invalid, the Court must find not only that Neman Brothers & Assoc., Inc. ("Neman Brothers") included inaccurate information in its applications for copyright registration, but also that it did so "with knowledge that it was inaccurate."[4]  In *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, the Supreme Court clarified that an applicant's lack of knowledge of either fact or law can preclude a finding that the registration is invalid.  Because the Register had completed her review of the Neman Brothers' applications prior to receipt of the Court's March 30 letter and had concluded that the third party authorship of works included in the applications raises multiple issues of registrability, the Register believes it would be useful to submit her response to the Court at this time.  The Register hereby provides the Court with her analysis of the full scope of potential inaccuracies to assist the Court's determination under *Unicolors*.

After her review, applying the legal standards and examining practices set forth below, the Register concludes that had the U.S. Copyright Office ("Copyright

---

[2] Letter to Kimberley Isbell at 1 (March 30, 2022) (citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,*___U.S. ___, 211 L.Ed.2d 586 (Feb. 24, 2022).
[3] *Id.*
[4] 17 U.S.C. § 411(b)(1)(A).

RESPONSE OF THE REGISTER OF COPYRIGHTS

Office" or "Office") known that Neman Brothers was not the sole author of all the works claimed in the unpublished collections registered under VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970, the Office would not have registered the works. Before issuing any registrations, the Office would have communicated with the applicant to (1) determine if the collections met the eligibility criteria for the unpublished collection option and (2) resolve the relevant omissions.

## BACKGROUND

### I. Examination History

A review of the records of the U.S. Copyright Office ("Copyright Office" or "Office") reveals the following:

On January 6, 2017, February 28, 2017, and April 30, 2018, the Copyright Office received separate applications from Neman Brothers to register two-dimensional artwork collections titled, respectively, "2016 December Artworks," "2017 February Artwork," and "2018 April Artwork." These three collections contained a combined total of 219 titles, including Subject Design No. 1, Subject Design No. 2, and Subject Design No. 3 (the "Subject Designs"), which are the designs at issue in this litigation. Each application identified Neman Brothers as the sole author (as a work made for hire) of, and copyright claimant for, each collection. The applications stated that the collections were completed in 2016, 2017, and 2018, as indicated by their titles, and that the works were unpublished. Based on the representations that the two-dimensional artwork contained in the collections were unpublished, the Office registered each collection of works as an "unpublished collection." The Office registered "2016 December Artworks" on February 6, 2018, under registration number VAu001304334 with an effective date

of registration ("EDR")[5] of January 13, 2017; "2017 February Artwork" on May 23, 2018, under registration number VAu001317742 with an EDR of March 3, 2017; and "2018 April Artwork" on September 24, 2018, under registration number VAu001330970 with an EDR of April 30, 2018.  The Office had no reason to question the representations in the applications and accepted them as true and accurate.

## II.    The Court's Request

In its January 11, 2022 Order (the "Order") which accompanied the Request, the Court found that "[w]ith respect to 17 U.S.C. § 411's statutory criteria, Neman Brothers' registrations for [the Subject Designs] contain inaccurate information in that they do not identify third-party authors of the works contained in those registrations."[6]  Defendant and counter-claimant Interfocus Inc. ("Interfocus") alleged, and Neman Brothers conceded, that "some of the works identified in each registration were authored by third party design studios from whom Neman Brothers purchased rights, who are not named as authors or claimants in the registrations."[7]  Deposition testimony and declarations indicated that Neman Brothers' practice was to modify designs it purchased from other studios.[8]  Thus, in accordance with section 411(b)(2), the Court requested that the Register advise on "whether knowledge of the third-party authorship of works included in VAu-1-

---

[5] The EDR is the date that the Office received a completed application, the correct deposit copy, and the proper filing fee.

[6] Order on Mot. Summ. J. 26, ECF No. 82 ("Order"); *see* 17 U.S.C. § 411(b)(1).

[7] Mot. Summ. J. on Copyright Registration Invalidity 1, ECF No. 68.

[8] Order at 8–9.

RESPONSE OF THE REGISTER OF COPYRIGHTS

304-334, VAu-1-317-742, and VAu-1-330-970 'would have caused the register to refuse registration.'"[9]

## <u>ANALYSIS</u>

### I.   Relevant Statute, Regulation, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing applications for registration are codified at 37 C.F.R. §§ 202.1 to 202.24. Further, principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law. The Office publishes regular revisions of the *Compendium of U.S. Copyright Office Practices* to reflect changes in the law and/or Office practices, which are provided for public comment prior to finalization. Here, Neman Brothers applied to register the "2016 December Artworks" and "2017 February Artwork" as unpublished collections in early 2017, and applied to register the "2018 April Artwork" as an unpublished collection in 2018. Therefore, the governing principles the Office would have applied to the 2016 and 2017 unpublished collection applications are set forth in the version of the *Compendium of U.S. Copyright Office Practices, Third Edition* ("COMPENDIUM

---

[9] *Id.* at 27 (quoting *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 353 (S.D.N.Y. 2016)).

RESPONSE OF THE REGISTER OF COPYRIGHTS

(THIRD)") that was first released in December 2014.[10]  And the principles the Office would have applied to the 2018 unpublished collection application are set forth in the updated COMPENDIUM (THIRD) version that was released in September 2017.  Because the relevant practices remained similar between the 2014 and 2017 versions,[11] the Register's response cites the 2017 version and also cites the 2014 version where there is variation.

### a.  Identifying the Author of an Unpublished Collection

In pertinent part, the statutory requirements for copyright registration dictate that, an "application for copyright registration" must include "the name . . . of the author or authors," unless the work is anonymous or pseudonymous, as well as "any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright."[12]

At the time Neman Brothers submitted its 2016, 2017, and 2018 collections for registration, the Office permitted applicants to register an unlimited number of unpublished works with one application and filing fee.[13]  This registration

---

[10] The Copyright Office released the newest version of the COMPENDIUM (THIRD) in January 2021.

[11] *See* U.S. Copyright Office, Redlines Comparing the 2014 and 2017 Versions of the Compendium secs. 1106, 1106.1, 1106.2, 1106.3(E) (2017), https://www.copyright.gov/comp3/2017version/redlines/chap1100.pdf.

[12] 17 U.S.C. §§ 409(2), (10).

[13] COMPENDIUM (THIRD) § 1106.1.  On February 13, 2019, the Office replaced the accommodation for "unpublished collections" with a group registration option for a limited number of unpublished works.  *See* Group Registration of Unpublished Works, 84 Fed. Reg. 3693 (Feb. 13, 2019) (to be codified at 37 C.F.R. pts 201, 202).  Because the unpublished collection accommodation is no longer available, the 2021 version of the COMPENDIUM (THIRD) has deleted most

accommodation was known as an "unpublished collection."[14]

To register multiple unpublished works under this option, all of the elements in the collection were required to "be created by the same author, or if the elements were created by multiple authors, at least one of the authors must have contributed copyrightable authorship to each work in the collection."[15]  When completing the application for an unpublished collection, the applicant was required to identify "all of the authors who created or co-created any of the elements [in the collection], even if a particular author did not contribute copyrightable authorship to all of those elements."[16]

The Supreme Court has explained that, other than in a work made for hire context, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."[17]  To be an author, one must have created material that is "sufficiently original to merit protection."[18]  Accordingly, "[w]hen completing an application, the applicant should only provide the name(s) of the author(s) who created the copyrightable material that the applicant intends to register."[19]  The applicant "should not provide the name of any person who created material that is *de*

---

references to it.  The 2014 and 2017 versions of the COMPENDIUM (THIRD) include chapter 1100, section 1106 referenced in this response.  *See Prior Editions of the Compendium of the U.S. Copyright Office Practices*, COPYRIGHT.GOV, https://copyright.gov/comp3/prior-editions.html (last visited March 25, 2022).

[14] COMPENDIUM (THIRD) §§ 1106, 1106.1.

[15] *Id.* § 1106.1.  In addition, "[t]he copyright claimant for all of the elements and the collection as a whole must be the same person or organization."  *Id.*

[16] *Id.* § 1106.3.(E).

[17] *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

[18] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991).

[19] COMPENDIUM (THIRD) § 613.3.

RESPONSE OF THE REGISTER OF COPYRIGHTS

*minimis* or uncopyrightable."[20]  For example, if an artist seeks to register a work that consists of a painting of a person and a short phrase coined by someone else, the artist would only be required to name herself, the author of the painting, on the application because the creator of the phrase did not contribute copyrightable material.[21]

If the work is a work made for hire, the author is not the individual who actually created the copyrightable material, but "'the employer or other person for whom the work was prepared.'"[22]

### b.  Limitation of Claim and Derivative Works

The statutory requirements for copyright registration dictate that an application for registration shall "in the case of a compilation or derivative work" include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[23]

If an author adds new copyrightable authorship to an existing work, the new work is generally considered a derivative work.[24]  A derivative work could be

---

[20] *Id.* § 613.10(C); *see also* 37 C.F.R. § 202.1(a) (2021) ("Words and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring" are "not subject to copyright").

[21] *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (1991) (discussing the "narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent").

[22] *Cmty. for Creative Non-Violence*, 490 U.S. at 737 (quoting 17 U.S.C. § 201(b)).

[23] 17 U.S.C. § 409(9).

[24] A "derivative work" is defined as "a work based upon one or more preexisting works, such as . . . [an] art reproduction, abridgment . . . or any other

RESPONSE OF THE REGISTER OF COPYRIGHTS

based on a work that the author adding new copyrightable authorship owns or a work that another person owns.  Whether owned by another person or owned by the applicant, material that was previously published or previously registered is considered "unclaimable,"[25] and an applicant who wants to register a derivative work that contains an appreciable amount of unclaimable material must exclude that material by providing "a brief, accurate description of the unclaimable material in the appropriate field/space of the application."[26]  However, "there is generally no need to limit the claim if the derivative work is solely based on or derived from unpublished material, unregistered material, or copyrightable material that is owned by the claimant named in the application."[27]

### c.  Identifying the Claimant and Transfer Statements

An application for registration must also include "the name and address of the copyright claimant."[28]  To register multiple works using the unpublished collection option, the copyright claimant must have been (1) an author or co-author of all of the works in the collection, or (2) a person or organization that owned all of the rights under copyright that initially belonged to the author or co-authors of

---

form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a 'derivative work'." *Id.* § 101 (defining "derivative work").

[25] Unclaimable material is "(i) previously published material; (ii) previously registered material; (iii) material that is in the public domain; and/or (iv) copyrightable material that is not owned by the claimant named in the application."  COMPENDIUM (THIRD) § Glossary.

[26] *Id.* §§ 621, 621.1.

[27] *Id.* § 507.2.

[28] 17 U.S.C. § 409(1).

RESPONSE OF THE REGISTER OF COPYRIGHTS

those elements.[29]  If the person identified as the claimant did not own the copyright in one or more of the works in the collection, those works were required to be removed from the application or excluded from the copyright claim.[30]

If the basis for the claimant's claim to copyright is that it owns all of the rights under copyright, rather than being the author of all the works in the collection, then the applicant should provide "a brief statement of how the claimant obtained ownership of the copyright," also known as a transfer statement.[31] Copyright applications generally allow the claimant to specify whether it obtained ownership by written agreement, by inheritance, or by some other means.

There is a limited exception to this requirement for joint works.  A work is considered a "joint work" if it is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[32]  A person must "contribute a sufficient amount of original authorship to the work" to be considered an author of a joint work. [33]  An author may satisfy this requirement even if his contribution to the work is less significant than the contributions made by another author, but the author must contribute more than a *de minimis* amount of copyrightable expression.[34]

If the work submitted for registration is a joint work, no transfer statement is required as long as all the joint authors are named as co-authors and at least one of

---

[29] COMPENDIUM (THIRD) § 1106.3(G) (citing 37 C.F.R. § 202.3(a)(3)(2017)).
[30] *Id.* § 1106.3(G); *see also id.* § 621.8.
[31] 17 U.S.C. § 409(5); COMPENDIUM (THIRD) § 1106.3(G).
[32] 17 U.S.C. § 101 (definition of "joint work").
[33] COMPENDIUM (THIRD) § 505.2.
[34] *Id.* § 505.2.

those joint authors is named as the claimant.[35]  However, if the work was created by two or more authors but does not meet the statutory definition of a joint work, the applicant should provide a transfer statement explaining how the claimant obtained ownership of the work(s) created by another author.[36]

## II.   Other Copyright Office Regulations and Practices

The Copyright Office's regulations require applicants to make a "declaration . . . that the information provided within the application is correct to the best of [the applicant's] knowledge."[37]  Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[38]

When the Office determines that all of the "legal and formal requirements" of title 17 have been met, it will register the copyright claim and issue a certificate of registration under its seal.[39]  There may be instances during the application process, however, where communication between the applicant and the Office is required.  For example, it is not unusual for a registration specialist to correspond

---

[35] *Id.* § 620.5.  The 2014 COMPENDIUM (THIRD) did not provide this exception. *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 620.5 (3d ed. 2014) ("2014 COMPENDIUM (THIRD)").  The 2014 version required applicants to provide a transfer statement "[i]f the joint authors are not named as the copyright claimants."  *Id.*  The 2017 version clarified that an applicant does not need to provide a transfer statement when less than all of the joint authors are named as claimants because joint authors co-own the copyright in each other's contribution and each joint author owns an undivided interest in the copyright for the work as a whole.  17 U.S.C. § 201(a); *see* H.R. REP. NO. 94-1476, at 121, *reprinted in* 1976 U.S.C.C.A.N. at 5736; COMPENDIUM (THIRD) § 505.3.

[36] COMPENDIUM (THIRD) § 620.6.

[37] 37 C.F.R. § 202.3(c)(3)(iii) (2017).

[38] COMPENDIUM (THIRD) § 602.4(C).

[39] 17 U.S.C. § 410(a); COMPENDIUM (THIRD) § 602.

with an applicant about factual assertions if the assertions appear to conflict with other information provided in the application materials.[40]

Accordingly, if the Office becomes aware of an error at the time of application, such as one relating to whether the application appropriately identified each author who contributed copyrightable authorship to the work, or has questions about facts asserted in the application, it provides the applicant an opportunity to correct the error or verify the facts within a specified period of time. If the applicant responds in a timely fashion to the satisfaction of the Office, the Office can proceed with the registration. In this case, no errors were identified and no corrective action appeared to be necessary based on the information set forth in the applications and deposits.

In responding to the Court's question, the Register applies the foregoing governing statutory and regulatory standards and examining principles.

## REGISTER'S RESPONSE TO THE COURT

Based on the foregoing statutory and regulatory standards, and its examining practices, had the Office been aware that Neman Brothers was not the sole author of all the works claimed in its 2016, 2017, and 2018 unpublished collection applications, the Office would not have registered Neman Brothers' unpublished collections. Instead, the registration specialists would have corresponded with Neman Brothers to obtain several additional pieces of information.

Authorship of Each Work in an Unpublished Collection

First, the registration specialists would have sought to determine whether the collections satisfy the requirement of the unpublished collection option that each of

_____

[40] COMPENDIUM (THIRD) § 603.2(C).

RESPONSE OF THE REGISTER OF COPYRIGHTS

the works in the collection was either created by the same author or, if the works were created by multiple authors, that at least one of the authors identified on the application contributed copyrightable authorship to each work in the collection.[41] Here, deposition testimony indicates that the three unpublished collections include works that were created by Neman Brothers employees, as well as works that were created by third parties that were purchased by Neman Brothers and to which Neman Brothers' employees added material.[42]  The specialists would therefore have inquired whether Neman Brothers contributed copyrightable authorship to each and every design, as it suggested on its applications.

Based on the information provided by the parties in this litigation, the Register has doubts as to whether the collections can meet this requirement. Neman Brothers explained in its filings to the Court that "it was [] standard procedure [for] Neman through its designer [to make] changes to the purchased designs before registration in order to make the designs more cost-efficient in manufacturing," and thus "for both purchased and internally-created designs, there was at least one author who contributed copyrightable authorship to each of the designs."[43]  Neman Brothers does not appear to have specified in its filings that it modified every third-party work in the three unpublished collections, or provided information from which it can be discerned whether the modifications it made to each of the works are sufficient for it to have contributed copyrightable authorship

---

[41] *Id.* § 1106.1.
[42] *See* Dep. of Yoel Neman 26:20–24, ECF No. 66-2.
[43] Neman Brothers' Opp. To Interfocus' Second Mot. Summ. J. 5, ECF No. 71.

RESPONSE OF THE REGISTER OF COPYRIGHTS

to every work, as required to have been eligible for the unpublished collection option.[44]

The declaration of Adrineh Mokhtarians provides information about how Neman Brothers created two of the designs at issue in this litigation.[45]  One of the works (NB170268, identified in the Order as Subject Design No. 2)[46] was a design hand-drawn by a Neman Brothers employee that was inspired by two designs that had previously been created by Neman Brothers, but includes new creative authorship.[47]  Another of the works (NB161106, identified in the Order as Subject Design No. 1)[48] was created by purchasing a design from another studio and adding certain elements to that design.[49]  But upon review of the images provided by Neman Brothers, it does not appear that the changes Neman Brothers made to the purchased design would constitute copyrightable authorship because they consist of virtually indiscernible modifications.[50]

Neman Brothers did not provide any information about how Subject Design No. 3 was developed, so the Register cannot opine on whether Neman Brothers contributed copyrightable authorship to that design.

Because it is unclear whether any of the collections represent the work of one common author, Neman Brothers' collections might not have been eligible for

---

[44] COMPENDIUM (THIRD) §§ 613.3, 1106.1.

[45] *See* Decl. of Adrineh Mokhtarians ¶¶ 10–13, ECF No. 71-2.

[46] *See* Order at 6–7.

[47] *See* Decl. of Adrineh Mokhtarians ¶ 10, Ex. 43–46, ECF No. 71-2.

[48] *See* Order at 6–7.

[49] *See* Decl. of Adrineh Mokhtarians ¶¶ 11–13, Ex. 47–49, ECF No. 71-2.

[50] *See Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 753 F.2d 1565, 1568 (11th Cir. 1985) (finding the changes made to a beach towel design insufficiently creative to warrant copyright protection because they are "so minor that they are virtually unnoticeable upon a cursory comparison of the two towels").

the unpublished collection option.  If the collections did not meet the eligibility requirements for the unpublished collection option, then certain designs should have been registered separately.

Identifying the Author(s)

Second, had the registration specialists been aware that the collections contain third-party authorship, they would have asked Neman Brothers to identify all of the authors who contributed copyrightable authorship to the works submitted for registration.  As explained above, an application to register an unpublished collection must identify all the authors who contributed copyrightable authorship to the works claimed in the collection.[51]  Neman Brothers' 2016, 2017, and 2018 unpublished collections each contain third-party authored designs that Neman Brothers allegedly modified.[52]  Neman Brothers named itself as the sole author and claimant, and asserted an unlimited copyright claim to the collections' designs. Therefore, Neman Brothers failed to "identify all of the authors who created or co-created" the elements claimed in the unpublished collections.[53]  Additionally, as explained above, Neman Brothers does not appear to have contributed copyrightable authorship to Subject Design No. 1, and therefore should not be identified as an author of that work.[54]

Limitation of Claim and Derivative Authorship

Third, had the registration specialists been aware of the facts as now presented, they would have inquired as to whether Neman Brothers' claims should have been limited.  Neman Brothers' modified designs are based on or incorporate

---

[51] 17 U.S.C. § 409(2); COMPENDIUM (THIRD) § 1106.1.
[52] *See* Dep. of Yoel Neman 26:20–24, ECF No. 66-2.
[53] COMPENDIUM (THIRD) § 1106.3(E).
[54] *Id.* § 613.3.

preexisting designs. Therefore, these modified designs are derivative works.[55] As explained above, "there is generally no need to limit the claim if the derivative work is solely based on or derived from unpublished material, unregistered material, or copyrightable material that is owned by the claimant named in the application," unless that material was previously published or registered.[56] However, if the designs in the collection contain an appreciable amount of unclaimable material, such as previously published or registered designs, then that material should have been identified and excluded from Neman Brothers' 2016, 2017, and 2018 unpublished collection claims.[57]

Yoel Neman's deposition testimony indicates that certain designs in the collections are newer versions of previously registered designs.[58] If the Office had been aware of that fact at the time of examination, the registration specialists would have confirmed whether the derivative works contain new authorship with a sufficient amount of original expression that is not a "merely trivial" variation on the preexisting works.[59] If the modifications contained sufficient derivative authorship, the specialists would have asked Neman Brothers to identify the new copyrightable authorship added to the previously registered designs and to exclude the previously registered material from its claims.[60]

Finally, the facts presented in the Order and Neman Brothers' filings to the Court leave unanswered critical questions about whether the works purchased from third parties were published before Neman Brothers made its modifications.

---

[55] *See* 17 U.S.C. § 101 (defining "derivative work").
[56] COMPENDIUM (THIRD) § 507.2.
[57] *See id.* § 507.2.
[58] Dep. of Yoel Neman 88:8–13; 89:2–7, ECF No. 66-2.
[59] *See* COMPENDIUM (THIRD) §§ 311.1, 311.2.
[60] *Id.* § 621.1.

RESPONSE OF THE REGISTER OF COPYRIGHTS

<u>Transfer Statement</u>

In addition, the registration specialists would have probed how Neman Brothers obtained copyright ownership in the third-party authored elements claimed in the collections by confirming whether ownership was claimed via joint authorship or transferred via written agreement.  As discussed above, unless the work is a joint work, if the claimant is not the sole author of the works in the collection, then the applicant must include a transfer statement explaining how the claimant obtained ownership of the copyright.  If Neman Brothers purchased completed designs and then created modified versions of those designs, the claimed works would not meet the statutory definition of a joint work, which requires that the authors prepare the work "with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[61]  Neman Brothers would have thus been required to provide a statement explaining how it obtained copyright ownership of the third-party authored works.[62]

<u>Supplementary Registration</u>

A supplementary registration may be used to correct certain errors or amplify the information provided in a copyright registration.[63]  As relevant here, the current version of the COMPENDIUM (THIRD) provides that a supplementary registration can be used to correct an error or omission in a basic registration

---

[61] 17 U.S.C. § 101 (defining "joint work").

[62] *Id.* § 409(5); COMPENDIUM (THIRD) § 1106.3(G).

[63] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1802 (3d ed. 2021) ("2021 COMPENDIUM (THIRD)").

RESPONSE OF THE REGISTER OF COPYRIGHTS

involving the author(s) of the work.[64]  For instance, missing authors and transfer statements may be added to the registration record with a supplementary registration.[65]  The claim to copyright may also be amended to cover the works that were eligible for the unpublished collection option and excise non-eligible works.[66] Please note, however, that the Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute.[67]  In such cases, the Office typically stays its consideration of the supplementary registration application until the applicant confirms in writing that the dispute has been resolved.[68]

## CONCLUSION

After review of the available facts in this action and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that the Office would have refused registration for the subject applications if it had been aware of the errors in Neman Brothers' copyright applications.

Dated:      April 6, 2022

*Shira Perlmutter*

Shira Perlmutter

---

[64] 2021 COMPENDIUM (THIRD) § 1802.6(D).

[65] *Id.* § 1802.6(D).

[66] *Id.* § 1802.6(J).  Non-eligible works, *i.e.*, works for which Neman Brothers obtained copyright ownership but did not contribute copyrightable authorship, may be registered separately.

[67] *Id.* § 1802.9(G).

[68] *Id.*

18
RESPONSE OF THE REGISTER OF COPYRIGHTS

1                                      Register of Copyrights and Director

2                                      of the U.S. Copyright Office

RESPONSE OF THE REGISTER OF COPYRIGHTS

# EXHIBIT A



**UNITED STATES DISTRICT COURT**
CENTRAL DISTRICT OF CALIFORNIA
UNITED STATES COURTHOUSE
350 WEST FIRST STREET
LOS ANGELES, CALIFORNIA 90012

March 30, 2022

CHAMBERS OF
CHRISTINA A. SNYDER
JUDGE

TELEPHONE
(213) 894-8551

Ms. Kimberley Isbell
Acting General Counsel and Associate Register of Copyrights
U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000

Dear Ms. Isbell:

Pursuant to 17 U.S.C. § 411(b)(2), on January 13, 2022, I requested an advisory opinion from the Register of Copyrights in <u>Neman Brothers & Assoc., Inc. v. Interfocus, Inc. et al</u>, Case No. 2:20-cv-11181-CAS-JPR (C.D. Cal.), with respect to three group copyright registrations: VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970.

The basis for my request was that those registrations, as well as the corresponding applications, contain inaccurate information, in that they do not identify the third-party authors of certain works included in those registrations, and instead identify Neman Brothers as the sole author. Accordingly, the Court requested that the Register of Copyrights advise the Court on whether it would have refused the registration of VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970, if it had known that Neman Brothers was not the sole author of all of the works included in those group applications.

The foregoing request was made before the Supreme Court decided <u>Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.</u>, 142 S. Ct. 941 (2022). Based on that decision, it appears that if Neman Brothers "was not aware of the legal requirement that rendered information in its application inaccurate," the Court cannot find that Neman Brothers had the requisite intent to warrant referral to the Registrar of Copyrights. <u>Id.</u> at 947. Accordingly, the Court's request for an advisory opinion may have been premature. It appears that the Court must first determine whether Neman Brothers was aware of its legal obligation to identify the third-party authors of the works included in registrations VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970.

In light of these developments, the Court requests that the Registrar of Copyrights, if it deems doing so to be appropriate, abstain from determining whether it would have refused the registration of VAu-1-304-334, VAu-1-317-742, and VAu-1-330-970, if it had known that Neman Brothers was not the sole author of all of the works included in those group applications, until the Court determines whether Neman Brothers was aware of the legal requirement that rendered its application inaccurate.

Ms. Kimberley Isbell
Acting General Counsel and Associate Register of Copyrights
March 30, 2022
Page 2 of 2

Please do not hesitate to contact me if any other information would be helpful.

Very truly yours,

Christina A. Snyder
United States District Judge