RIMON, P.C.
Mark Lee (SBN 94103)
mark.lee@rimonlaw.com
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone/Facsimile: 213.375.3811

RIMON, P.C.
Zheng Liu (SBN 229311)
zheng.liu@rimonlaw.com
800 Oak Grove Avenue, Suite 250
Menlo Park, California 94025
Telephone/Facsimile: 650.461.4433

Attorneys for Defendants
INTERFOCUS INC. d.b.a. www.patpat.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTERFOCUS, INC. d.b.a. www.patpat.com, a Delaware Corporation; CAN WANG, and individual, and DOES 1-10, inclusive.,<br><br>Defendants. | Case No. 2:20-cv-11181-CAS-JPRC<br><br>**SECOND SUPPLEMENTAL BRIEF OF INTERFOCUS, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT INVALIDITY**<br><br>(Filed Concurrently with Declaration of Mark S. Lee and Exhibits 1-16 in Support Thereof)<br><br>Filing Date: October 27, 2022<br>Time:  Under Submission<br>Courtroom:  8D<br><br>The Hon. Christina A. Snyder |
| INTERFOCUS, INC. d.b.a. www.patpat.com, a Delaware Corporation; CAN WANG, an individual, and DOES 1-10, inclusive,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>NEMAN BROTHERS & ASSOC., INC., a California Corporation,<br><br>Counterclaim Defendant. | |

# TABLE OF CONTENTS

I.  INTRODUCTION. ...................................................................................... 1

II.  PROCEDURAL BACKGROUND. ............................................................... 1

    A.  The Parties Cross-Move for Summary Judgment. .................................. 1

    B.  This Court Refers the Copyright Invalidity Question to the Register
       of Copyrights. ......................................................................................... 1

    C.  The Supreme Court Issues Its Unicolors Decision. ............................... 2

    D.  The Register of Copyright Responds to This Court's Inquiry. ................ 2

    E.  Copyright Invalidity Investigation and Discovery. ................................ 3

III.  EMAN BROTHERS' COPYRIGHT REGISTRATIONS ARE INVALID AS
     A MATTER OF LAW. ..................................................................................... 11

    A.  This Court Already Ruled that the Three Copyright Applications at
       Issue Contained Inaccurate Authorship Information. ........................... 11

    B.  Neman Brothers' "Willful Blindness" to the Legal Requirements of Its
       Copyright Applications Invalidates the Resulting Registrations as A
       Matter of Law. ....................................................................................... 11

    C.  Neman Brothers Was "Willfully Blind" to the Legal Requirements of
       Its Group Copyright Applications. ........................................................ 15

IV.  CONCLUSION. ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gold Value International Textile, Inc. v. Sanctuary Clothing*,
LLC, 925 F. 3d 1140 (9th Cir. 2019) ................................................................... 19

*Healthestate, LLC, v. United States*,
160 Fed. Cl. 91 (Ct. Fed. Cl. 2022) ........................................................ 14, 15, 16

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
755 F. 3d 1038 (9th Cir. 2014) ........................................................................... 19

*Lauren Adele Oliver v. Meow Wolf, Inc.*,
2022 WL 3682936 (D. N.M. Aug. 25, 2022) .......................................... 14, 15, 16

*Lieb v. Korangy Publishing, Inc.*,
2022 WL 1124850 (E.D.N.Y. April 14, 2022) .............................................. *passim*

*Neman Bros. & Assoc. Inc. v. Burlington Stores, Inc.*,
2017 WL 5665004 (C.D. Cal. 08/09/2017) ........................................................... 9

*Neman Bros. & Assoc. Inc. v. La Main Connection Inc.*,
2017 WL 8220223 (C.D. Cal. April 19, 2017) ....................................................... 9

*Neman Bros. & Assoc. Inc. v. Marsons International, Inc.*,
2016 WL 9131964 (C. D. Cal. 12/15/2016) .......................................................... 9

*Neman Brothers & Associates, Inc. v. One Step Up, Ltd.*,
2017 WL 6885390 (C. D. Cal. Dec. 13, 2017) .................................................... 10

*Neman Brothers & Associates, Inc. v. Pride & Joys, Inc.*,
2014 WL 12967545 (C.D. Cal. Nov. 3, 2014) ....................................................... 9

*Neman Brothers & Associates, Inc. v Wal-Mart Stores, Inc.*,
2017 WL 8220214 (C. D. Cal. Nov. 15, 2017) .................................................... 10

*Norris Industries, Inc. v. International Telephone & Telegraph Corp.*,
696 F. 2d 918 (11th Cir. 1983) .......................................................................... 19

*Unicolors, Inc., v. H&M Hennes & Mauritz, L.P.*,
--U.S.--, 142 S. Ct. 941 (2022) ........................................................ 2, 12, 15, 16

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Unicolors, Inc. v. H&M Hennes & Mauritz,*
   L.P., 959 F.3d 1194 (9th Cir. 2020) ..............................................*passim*

**Statutes**

17 U.S.C. § 411(b) ............................................................................ 2

USC §411(b)(1) & (2) ...................................................................... 19

Copyright Act .......................................................................... 10, 19

**Other Authorities**

Copyright Office "Registration Specialists" ................................... 8

Copyright Office's "Compendium of Offices Practices" ............................ 7

Copyright Office's "Contact Us" .................................................. 9

Copyright Office's "eCO" ............................................................ 5

Copyright Office's "Form VA" ...................................................... 3

"Help" page.............................................................................. 16

https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf ........................ 8

https://www.youtube.com/watch?v=twAXvnO_NU0;
   https://www.youtube.com/watch?v=hoVD6oa-8EM&t=1009s............................ 7

William F. Patry, 5 *Patry on Copyright* § 17:125 .................................... 18

INTERFOCUS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF INTERFOCUS' MOTION FOR SUMMARY JUDGMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION.

Recently obtained evidence establishes that Plaintiff Neman Brothers & Assoc., Inc. ("Neman Brothers") was at least willfully blind to applicable legal requirements when it intentionally filed copyright applications with inaccurate authorship information. The Register of Copyrights has ruled the Copyright Office would have rejected those applications if it had known the true facts. Summary judgment of copyright invalidity should be entered in Defendant InterFocus, Inc.'s ("InterFocus'") favor for these reasons as described below.

### II.   PROCEDURAL BACKGROUND.

#### A.   The Parties Cross-Move for Summary Judgment.

Cross-motions for summary judgment are pending before this Court. Neman Brothers seeks summary judgment on liability and statutory damages (Dkt. No. 41), while InterFocus both opposes Neman Brother's motion and cross-moves for summary judgment on the grounds that Neman Brothers' three copyright registrations at issue are invalid as a matter of law.[1] (Dkt. Nos. 46, 66 and 68.)

#### B.   This Court Refers the Copyright Invalidity Question to the Register of Copyrights.

Neman Brothers admitted in discovery that there were factual inaccuracies in the three group copyright registrations it alleged InterFocus infringed herein (Dkt. Nos. 66, 68, 72 and 81). This Court therefore reserved judgment on the pending motions and asked the Copyright Office whether it would have refused to register

---

[1] InterFocus also opposes summary judgment for Neman Brothers on the grounds there are factual disputes whether Neman Brothers' current copyright claims are barred by: 1) its breach of the "notice and cure" provisions in a previous settlement agreement; 2) the "first sale" doctrine, because InterFocus acquired the allegedly infringing goods from authorized Neman Brothers' producers in China or Vietnam; and 3) a lack of protectable similarities between Neman Brothers' and InterFocus' goods. (Dkt. Nos. 46, 66 and 68.)

1  them if it had known the truth about authorship of the works identified in them.

2  (Dkt. No. 82 at 28.) This Court did that to comply with 17 U.S.C. § 411(b) and

3  Ninth Circuit authority which directed this Court to make such a request in these

4  circumstances. (Dkt. No. 82 at 25-28; see *Unicolors, Inc. v. H&M Hennes &*

5  *Mauritz*, L.P., 959 F.3d 1194, 1197 (9th Cir. 2020).)

6      **C.**    **The Supreme Court Issues Its *Unicolors* Decision.**

7      After this Court inquired with the Copyright Office, the Supreme Court

8  vacated and remanded the Ninth Circuit's *Unicolors* decision in *Unicolors, Inc., v.*

9  *H&M Hennes & Mauritz, L.P*., --U.S.--, 142 S. Ct. 941 (2022). The Supreme Court

10  advised that both factual inaccuracies and at least "willful blindness" to legal filing

11  requirements were required to refer a copyright validity question to the Copyright

12  Office. 142 S. Ct. at 948. It remanded the case to the Ninth Circuit to apply that

13  standard, 142 S. Ct. at 949, and the Ninth Circuit has given no further guidance in

14  the remanded action as of the filing of this brief.

15      **D.**    **The Register of Copyright Responds to This Court's Inquiry.**

16      The Register of Copyrights responded to this Court's inquiry on April 13,

17  2022. (Dkt. No. 85.) Her Response acknowledged the Supreme Court's *Unicolors*

18  decision and its factual and legal knowledge requirements, as well as this Court's

19  request to withdraw its inquiry, but nevertheless found "that the third-party

20  authorship of works included in the applications raises multiple issues of

21  registrability." (Dkt. No. 85 at 2.)  The Register therefore provided her "analysis of

22  the full scope of potential inaccuracies to assist the Court's determination under [the

23  Supreme Court's] *Unicolors* [decision]." *Id.*

24      After a lengthy analysis that discussed not only the third-party authorship

25  problems but also Neman Brothers' failure to disclose and limit its claims regarding

26  the derivative works in its applications, the Register concluded "that the [Copyright]

27  Office would have refused registration for the subject applications if it had been

28  aware of the errors in Neman Brothers' copyright applications." (Dkt. No. 85 at 6-9,

18.)

### E.    Copyright Invalidity Investigation and Discovery.

This Court allowed InterFocus limited discovery on the legal knowledge issue after *Unicolors*, and later set a briefing schedule so the parties could address how the Supreme Court's new *Unicolors* standard applies to the pending summary judgment motions. (Dkt. Nos. 86, 88 and 92.)

In fact, as shown below, evidence uncovered in InterFocus' investigation and discovery demonstrates that Neman Brothers was at least "willfully blind" to the legal requirements of the group registrations at issue, because the Copyright Office provided the clearest of directions on authorship and derivative work status but Neman Brothers ignored them, not only in the three applications at issue but hundreds of times before. Further, Neman Brothers cannot deny it knew the relevant legal requirements when it filed the applications at issue, because the former employees who filed them are gone and Neman Brothers doesn't knows what they knew or did not know when those applications were filed.

When Neman Brothers filed the three applications at issue, group registrations had to be completed in one of two ways. First, an applicant could use the Copyright Office's "Form VA" (that is, "Form Visual Arts") paper application. (Lee Decl. ¶¶ 3-5; Exs. 1-7.) Those application forms had attached to their front "line-by-line instructions" that had to be physically removed from the application page before it could be completed and submitted to the Copyright Office. (*Id*.) The layout of those instructions changed slightly from time to time, but the relevant language on authorship and derivative work status was the same in all of them. (*Id.*) Neman Brothers admitted those instructions were clear. (Neman Brothers' Rule 30(b)(6) witness Deposition ["30(b)(6) Depo."] 25:17-26:1; Lee Decl. ¶ 17 and Exs. 8 and 9.)

Those instructions described the legal requirements to fill out each line of the Form VA application. (Lee Decl. ¶ 5; Exs. 1-7.) At all relevant times, line 2 of Form VA required applicants to name the "author" of the works for which copyright

protection was sought in the application. Corresponding Section 2 of the attached instructions stated that "[u]nless the work was 'made for hire,' the individual who actually created the work is its 'author[,]'" as shown below. What constituted a "work made for hire" was defined immediately below that explanation as including, *inter alia*, "'a work prepared by an employee within the scope of his or her employment[,]" as also shown below:



(Lee Decl. ¶ 5; Exs. 1-7.)

   As shown above, Space 6 of the application required applicants to state whether the works that are the subject of the application were based on earlier works, and corresponding Section 6 of the line-by-line instructions explained that Space 6 should be completed "if this work is a 'changed version,' 'compilation' or 'derivative work,' and if it incorporates one or more earlier works that have already been published or registered." It further explained that "[a] derivative work' is 'a work based on one or more preexisting works.'" (Lee Decl. ¶ 5; Exs. 1-7.)

   Neman Brothers admitted that it understood that "author" means the person

-4-

1   who created the work. (Neman Brothers' 30(b)(6) Depo. 26:14-20; Lee Decl. ¶17

2   and Ex. 9.)  Neman Brothers' principal Yoel Neman previously admitted that

3   Neman Brothers' regularly included works created by third parties in its group

4   applications, which Neman Brothers' employees did *not* create.  (Neman Depo

5   26:16-24, 133:22-134:12, Dkt. Nos. 68 at 6, 66-1 at 2, and 66-2.)  Neman Brothers'

6   principal Yoel Neman also previously admitted that Neman Brothers regularly

7   included changed versions of earlier designs in its group applications, which were

8   designated by an "x," "xx," or "xxx" next to the Neman Brothers' design number in

9   the works listing. (Neman Depo. 86:22-90:14, Dkt. Nos. 72 at 6, 66-1 at 2, and 66-

10  2).  To the extent those changes in the subsequent versions of those works were

11  material, they should have been identified as derivative works, and the copyright

12  protection afforded them should have been limited to new, protectable, original

13  elements first added to the changed versions to the extent the new material qualified

14  for copyright protection.  (Dkt. No. 85 at 8-9, 13-15.)[2]

15      Second, beginning July 1, 2008, an applicant also could file group

16  applications online using the Copyright Office's "eCO" standard electronic

17  application form. (Lee Decl. ¶ 6; Ex. 10.) That online application form contained the

18  same instructions about "authors," "works made for hire," and "derivative works" as

19  the Form VA paper applications, and those definitions were even more unavoidable

20  in the online application than they in the paper Form VA instructions. Rather than a

21  page attached to the front of the application that could be removed with the Form

22

23

---

24  [2] The Register of Copyrights noted that one of the three works at issue within the
    three applications was based on an earlier design, but concluded it may not have

25  been separately copyrightable because "upon review of the images provided by
    Neman Brothers, it does not appear that the changes Neman Brothers made to the

26  purchased design would constitute copyrightable authorship because they consist of
    virtually indiscernible modifications" from the purchased design. (Dkt. No. 85 at

27  14.) The Register's conclusion provides an additional reason to invalidate that

28  registration.

VA instructions, the very webpage on which an applicant had to complete authorship information in the online eCO form included text explaining "Author's Name… An author is a person who actually created the contribution, unless the contribution was "Made for hire," in which case the employer is the author[,]" as shown below:

**Author's Name** Give either an individual name OR an organization name, but not both. An author is a person who actually created the contribution, unless the contribution was "Made for hire" in which case the **employer** is the author. Either citizenship/domicile of the author is also required.

| Individual Author: | OR | Organization: |
|---|---|---|
| First Name: | | Organization Name: |
| Middle Name: | Help | |
| Last Name: | | |

Is this author's contribution a work made for hire?:

| *Citizenship: | Help | Anonymous: | Help |
| OR | | Pseudonymous: | Help |
| *Domicile: | Help | Pseudonym: | Help |
| Year of Birth: | YYYY | | |
| Year of Death: | YYYY | | |

(Lee Decl. ¶ 8; Ex. 11.)

Clicking on the hyperlinks for "Author's Name" or "Made for hire" on that page sent (and sends) the applicant to the "Standard Application Help: Author" page, which explains in even greater detail the "author" and "work made for hire" requirements described on the application webpage itself, including videos with

1   detailed explanations and instructions. (Lee Decl. 8; Ex.11.)[3]

2       Neman Brothers had to use one of the above methods to apply for its

3   copyright registrations, and thus it saw either the paper or online "author, "work

4   made for hire" and "derivative work" requirements every time it filed an

5   application. (Lee Decl. ¶¶ 7-8 and Ex. 11.) Neman Brothers was uncertain when it

6   began using the Copyright Office's online application portal to complete its online

7   group applications, but admitted that it had begun applying electronically by 2017,

8   and that it filed the three group applications at issue electronically. (Neman Brothers

9   Rule 30(b)(6) Deposition 45:10-23, 46:1-12, Lee Decl. ¶ 17, Ex. 9.) It thus claimed

10  to be the "author" of the third-party works it included in the three applications at

11  issue while or within seconds of reading that it did not qualify as the "author" of

12  those third-party works, because it was neither the "person who actually created"

13  nor the "employer" of the third parties who actually created those works.

14      Before and during the time when Neman Brothers filed the three copyright

15  applications at issue, the Copyright Office made information concerning the

16  requirements for copyright applications available in several ways in addition to the

17  paper and online applications themselves. For example, it made available to the

18  public on the home page of its website a hyperlink to the Copyright Office's

19  "Compendium of Offices Practices" ("Compendium") that contained specific

20  information about authorship, group copyright applications, and derivative work

21  status. (Lee Decl. ¶ 9; Ex. 12; Register's Response, Dkt. No. 85 at 8-9.) That

22  Compendium clearly defined "author," stated that each work in group applications

───────────────────────

24  [3] See also, "How to File a Copyright Application-Visual Arts" (2014), and "How to
25  File Copyrights Online-PA, SR & Multiple Works for One Fee" (2015), tutorials on
    how to file online single VA and group copyright applications, both depict the
26  Copyright Office's standard online application form Neman Brothers would have
27  used when it filed the group applications at issue in 2017 and 2018. (Lee Decl. ¶ 7;
    see https://www.youtube.com/watch?v=twAXvnO_NU0;
28  https://www.youtube.com/watch?v=hoVD6oa-8EM&t=1009s.

of unpublished visual arts works had to include original content from the same author, and explained the need to identify and limit claims for derivative works in the application.  See, e.g., Compendium (Third) (2014) at §§ 621, 621.1 (derivative works), and at §§ 1106, 1106.1 (group registrations), viewable at https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf. (Lee Decl. ¶ 9; Ex. 12. *See also*, Register's Response, Dkt. No. 85 at  8-9 (describing the Compendium (Third)'s legal requirements when Neman Brothers filed the applications at issue.)

In addition, the Copyright Office website provided a "Contact Us" button on the upper portion of the home page that sent users to an online "Contact Form" in which applicants could ask questions of Copyright Office "Registration Specialists" on issues including authorship, derivative works, and group registrations. (Lee Decl. ¶ 10, Exs. 13 and 14; see also, *Lieb v. Korangy Publishing, Inc*., 2022 WL 1124850, *11 (E.D.N.Y. April 14, 2022), which describes Registration Specialists and their role in the copyright application process.)

By the beginning of 2017, when Neman Brothers completed the first of the three copyright applications at issue, it had over 30 years of experience completing and filing group copyright applications. (Lee Decl. ¶ 17; Ex. 8 and Ex. A thereto.) Copyright Office records indicate that it had filed about 357 such application through 2016, and Neman Brothers had no reason to doubt the accuracy of that number. (30(b)(6) Depo. 41:4-42:14; Lee Decl. ¶ 17 and Ex. 9.)   If it used paper applications through 2016, it thus had to review, or at least remove, the line-by-line instructions with "author," "work made for hire" and "derivative work" definitions affixed to their front at least 357 times before 2017, once with each such earlier application. If it began using online applications before 2016, it had to view the same information in the online applications themselves each time it did so. In either event, in addition to the information on or in the applications themselves, it had the opportunity to consult the Copyright Office's website and linked Compendium of

1  Copyright Office Practices and/or communicate with Registration Specialists

2  through the Copyright Office's "Contact Us" link on its home page concerning any

3  questions regarding authorship, derivative works, group registrations or other issues

4  before each of the hundreds of applications it completed, including the three

5  applications at issue. (Lee Decl. ¶¶ 7, 9, 10; Ex 8 and Ex. A thereto, Exs. 12-14;

6  Dkt. Nos. 42-4, 42-6, and 42-8.)[4]  It also had to read the same online information

7  about authorship in the ten other online group applications it submitted in 2017.

8  (Lee Decl. ¶ 7; Ex 8 and Ex. A thereto.)

9      By the beginning of 2017, Neman Brothers also had litigated extensively over

10  some of the copyright registrations it obtained before it filed the three copyright

11  applications at issue. (Lee Decl. ¶ 11; Ex. 15.)  It filed or was otherwise involved in

12  about 61 copyright infringement suits before 2017. *Id.* Most of those cases settled

13  shortly after suit was filed, but there were about 15 reported decisions involving

14  those cases before or during the relevant time period.[5]  Counsel represented Neman

15

16  [4]Neman Brothers later demonstrated it was aware of those resources when it

17  communicated with a Registration Specialist in 2019 and was advised the Copyright

    Office no longer accepted Form VA for group registrations after the Copyright

18  Office changed its group application requirements. (Lee Decl. ¶13; Ex 16.)   Neman

    Brothers thereafter used the recently required Group Registration of Unpublished

19  Works ("GRUW") form thereafter, and limited its group applications to no more

20  than 10 works to comply with the revised form and rules.  (Lee Decl. ¶ 17, Ex. 8 and

    Ex. A thereto.) It ultimately has filed 476 group applications through 2021. (*Id*.)

21

22

23  [5] Most of those rulings were adverse to Neman Brothers.  See, e.g., *Neman Brothers*

    *& Associates, Inc. v. Pride & Joys, Inc.*, 2014 WL 12967545 (C.D. Cal. Nov. 3,

24  2014) (granting motion to dismiss Neman Brothers' complaint for lack of

    jurisdiction); *Neman Bros. & Assoc. Inc. v. Marsons International, Inc.,* 2016 WL

25  9131964 (C. D. Cal. 12/15/2016) (unopposed motion for summary judgment for

26  Neman Brothers granted); *Neman Bros. & Assoc. Inc. v. La Main Connection Inc.,*

    2017 WL 8220223 (C.D. Cal. April 19, 2017) (OSC re dismissal issued for failure to

27  serve defendant issued); *Neman Bros. & Assoc. Inc. v. Burlington Stores, Inc.*, 2017

28

-9-

Brothers in all those cases. (*Id.*). Neman Brothers thus had significant copyright litigation experience, and necessarily communicated with and had easy access to copyright counsel when it prepared and filed the three copyright applications at issue.

Filing group registrations with the inaccurate authorship and derivative work information in the three group applications at issue saved Neman Brothers significant employee time and money, because it enabled Neman Brothers to obtain a group registration for thousands of works that would have required thousands of individual applications and cost it hundreds of thousands of additional dollars if it had honestly complied with Copyright Office's filing requirements. (Dkt. No. 85 at 15 ["If the collections did not meet the eligibility requirements for the unpublished collection option, then certain designs should have been registered separately."])

InterFocus estimates Neman Brothers would have had to file at least 7,600 additional individual applications, in addition to the 357 group registrations it actually did file, if Neman Brothers had complied with Copyright Office filing requirements. (Lee Decl. ¶ 14.) Those applications would have required an estimated additional 7,140 employee hours, and an estimated additional estimated $321,300 in filing fees to obtain copyright registrations and protection for the same number of works Neman Brothers actually obtained from its 357 group applications at an estimated filing fee cost of $16,065. (Lee Decl. ¶¶ 14-16.)

---

WL 5665004 (C.D. Cal. 08/09/2017) (summary judgment for defendants granted because the works at issue did not share enough protectable similarities to be infringing) and 2017 WL 5665005 (C.D. Cal. Sept. 5, 2017) (granting defendant's motion for attorneys' fees as a prevailing party under the Copyright Act); *Neman Brothers & Associates, Inc. v Wal-Mart Stores, Inc.,* 2017 WL 8220214 (C. D. Cal. Nov. 15, 2017) (granting motion in limine limiting plaintiff's ability to cite previous copyright infringement complaints); *Neman Brothers & Associates, Inc. v. One Step Up, Ltd.,* 2017 WL 6885390 (C. D. Cal. Dec. 13, 2017) (granting summary judgment for defendants on all Neman Brothers copyright infringement and other claims) and 2018 WL 1413567 (C. D. Cal. Feb. 12, 2018) (awarding defendants attorneys' fees on copyright infringement claims).

Neman Brothers admitted it was aware that the Copyright Office made and makes information available about how to correctly apply for a copyright on its website.  (30(b)(6) Depo. 44:4-7; Lee Dec. ¶ 17 and Ex. 9.) However, its designated 30(b)(6) witness denied knowing Neman Brothers' application practices before 2021, and said she could not testify concerning what Neman Brothers knew or did not know about the legal requirements for copyright applications when the three applications at issue were filed in 2017 and 2018 because former employees who had left Neman Brothers completed applications in those years. (30(b)(6) Depo. 15:7-16:25; Lee Dec. ¶17 and Ex. 9.)

## III.   NEMAN BROTHERS' COPYRIGHT REGISTRATIONS ARE INVALID AS A MATTER OF LAW.

### A.   This Court Already Ruled that the Three Copyright Applications at Issue Contained Inaccurate Authorship Information.

This Court previously ruled that "the applications materials provided by Neman Brothers, which list Neman Brothers as the sole author of all the works included in in applications associated with group copyright registrations VAu-1-304-334, VAu-1-317-742 and VAu-1-330-970, confirm that inaccurate information was included on the application for copyright registration." (Dkt. No. 82 at 26-27) (internal quotations and citations omitted.) Thus, that Neman Brothers filed the three applications at issue with factually inaccurate authorship information has been established for summary judgment purposes.

### B.   Neman Brothers' "Willful Blindness" to the Legal Requirements of Its Copyright Applications Invalidates the Resulting Registrations as A Matter of Law.

While the Supreme Court held that a good faith mistake of law will not invalidate a copyright application, *Unicolors* also made clear that a copyright applicant's mere denial of knowledge of the legal requirements of an application will not establish that good faith, because other evidence can show an applicant

-11-

acted with "willful blindness" to those requirements.  As the Supreme Court stated:

> "[C]ourts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law. We have recognized in civil cases that willful blindness may support a finding of actual knowledge.  Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information."

*Unicolors v. H&M Hennes & Mauritz, L.P*., supra, 142 S. Ct. at 948; internal citations omitted.

Subsequent case law construing *Unicolors* confirms that willful blindness can be established for summary judgment purposes even if a copyright applicant affirmatively denies knowing applicable legal requirements.

For example, *Lieb v. Korangy Publishing*, 2022 WL 1124850 (E.D.N.Y. 4/14/2022), granted summary judgment that "Plaintiff made a knowing misrepresentation to the Register of Copyrights sufficient to require that this matter be referred …to determine whether the registration would have been refused," even though the applicant argued he was not a lawyer and claimed he did not understand the legal requirement to identify his work as a derivative when he filed the application.  *Id.* at *15.

The *Lieb* court held that the applicant's failure to follow the clear "derivative work" definition on the application instructions, or consult the online Compendium of the Copyright Office concerning derivative works, or inquire at the Copyright Office's online "Help" page with questions about derivative work status, or consult with the Copyright Office's Registration Specialists to address any questions he had regarding derivative work status, meant the plaintiff/applicant was "willfully blind" to the application's legal inaccuracy as a matter of law, despite his denials.  *Id*. at

-12-

1    *8-*11.  Rejecting plaintiff's argument that the registration at issue should not be

2    invalidated under *Unicolors* because he was not a copyright lawyer and did not

3    understand the legal importance of his failure to identify the work as a derivative,

4    the *Lieb* Court stated:

5           "The clarity of these [Copyright office] resources [defining

6           derivative works], coupled with the simplicity of the information that

7           Lieb was asked to provide, makes this a case where only willful

8           blindness to the law can explain the inaccuracy at issue."

9    *Lieb v. Korangy Publishing Inc.*, 2022 WL 1124850 at *13.

10          Further rejecting the applicant's argument that under *Unicolors* his claimed

11   lack of legal understanding of the importance of identifying underlying works meant

12   summary judgment had to be denied, the *Lieb* court continued:

13          "While *Unicolors* broadly included Subsection A inaccuracies to

14          include legal mistakes, it cannot have meant that only copyright

15          lawyers are in a position to be held accountable for inaccuracies

16          regarding the law.  The ability to understand Form TX and related

17          materials regarding earlier published work does not require legal

18          knowledge of the term "derivative" work.  Unlike the registration in

19          *Unicolors*, Lieb cannot claim that his lack of legal knowledge excuses

20          the failure to provide accurate information...[T]his is a case where there

21          is no question but that the applicant was 'willfully blind' to providing

22          accurate information."

23   *Lieb v. Korangy Publishing Inc.*, 2022 WL 1124850 at *14.

24          The *Lieb* court concluded:

25          "Lieb could have done any number of things- he did not, but

26          instead puts the onus on the Copyright Office, or the Court, to

27          excuse his errors. While Lieb may think his error is meaningless,

28          that does not require such a finding by the USCO or by this

-13-

1    court.

2    "…[T]his is a case where the USCO provided the clearest of

3    directions and the registrant knowingly ignored them.

4    Accordingly, the Court holds that Lieb presented inaccurate

5    information to the Copyright Office with knowledge of its

6    factual and legal inaccuracy. Subsection A of Section 411 has

7    been satisfied."

8    *Lieb v. Korangy Publishing, Inc*., 2022 WL 1124850 at *14.

9          Other courts since *Unicolors* have held similarly. *Healthestate, LLC, v.*

10   *United States*, 160 Fed. Cl. 91, 93 (Ct. Fed. Cl. 2022), for example, granted a motion

11   to refer questions regarding inaccuracies in copyright applications to the Copyright

12   Office despite a declaration from the applicant which denied that the applications

13   were "knowingly inaccurate."  The applications included inaccurate information

14   about prior publication and the derivative work status of the works submitted. Citing

15   the "willful blindness" language from *Unicolors* quoted above, the Court of Claims

16   held that the evidence presented with the motion was sufficient to refer the validity

17   questions to the Copyright Office to obtain its expert opinion on the issue. 160 Fed.

18   Cl. at 96-97.

19         Similarly, in a case directly analogous to this one, *Lauren Adele Oliver v.*

20   *Meow Wolf, Inc.*, 2022 WL 3682936 (D. N.M. Aug. 25, 2022), granted a motion to

21   refer to the Copyright Office the question of whether it would have registered a

22   Form VA group registration that included a work Plaintiff did not author. Despite

23   Plaintiff's claim that she did not know she had to identify the true author of the work

24   in the group application, the *Oliver* court ruled that "Plaintiff was at best willfully

25   blind to the need to identify [third party author] Ms. Lee as the bench's author when

26   she applied for the VA Registration[,]" and thus "knowingly and inaccurately

27   indicated that she authored the bench [third party author] Ms. Lee designed on her

28   application for the VA Registration." *Lauren Adele Oliver*, 2022 WL 3682936 at

-14-

8*-*9.

### C.   Neman Brothers Was "Willfully Blind" to the Legal Requirements of Its Group Copyright Applications.

Evidence that Neman Brothers does not and cannot dispute establishes that it was at least "willfully blind" to the legal requirements for authorship and derivative work status in the three group copyright applications at issue under the above authorities, for several reasons.

First, the simplicity of the "authorship" and "derivative work" instructions at issue favor summary judgment. *Unicolors* holds that the "complexity of the relevant rule" is a factor by which to evaluate "willful blindness," 142 S. Ct. at 948, and the requirements here are not complex.  In contrast to the obscure "single unit of publication" rule at issue in *Unicolors*, Neman Brothers only had to accurately state that it or its employees did not "actually create" the third party works it submitted with its group applications to provide accurate authorship information, and it only had to identify the revised previous works it included in its applications to limit the scope of protection afforded the derivative works included in the application. It did neither.  *Lieb, Healthestate* and *Oliver* all involved either authorship or derivative work inaccuracies, and they each expressly or impliedly held those issues were simple, did not require legal knowledge, and therefore supported referral to the Register of Copyrights when inaccurate information concerning them was submitted to the Copyright Office. *Lieb*, 2022 WL 1124850 at *14; *Healthestate*, 160 Fed. Cl. at 96-97, *Lauren Adele Oliver*, 2022 WL 3682936 at 8*-*9

Second, the clarity and widespread availability of the relevant legal requirements for "authors" and "derivative works" available to Neman Brothers favors summary judgment. The Form VA's and online copyright applications' definitions for "author," "work made for hire," and "derivative work" are very clear. Information concerning them was available in the line-by-line instructions attached to or on and in each of the more than 350 paper or online applications Neman

-15-

Brothers had previously completed. That information was also easily available in the Copyright Office's online Compendium, online "Help" page, and from Registration Specialists.  The same information was available from its own copyright counsel. The *Lieb* court concluded that the only explanation for an applicant's failure to comply with instructions of such clarity and availability in a single application was willful blindness, and granted summary judgment on that basis as described above. *Lieb*, 2022 WL 1124850 at *14.

The *Lieb* court's ruling is even more obviously justified on the facts present here.  *Lieb* involved "willful blindness" to the legal requirements of a single application. Neman Brothers here literally had to claim in the three online applications at issue that it was the sole "author" of each of the third party works it included in its applications while or immediately after reading instructions which made clear that it did *not* qualify as their author because its employees did *not* "actually create" them.  Neman Brothers' employees who completed those applications could not have avoided reading those clear instructions on the very web page on which they provided authorship information, and they had to ignore, that is, metaphorically if not physically close their eyes, to those directions while inaccurately naming Neman Brothers the "author" of those works it knew it did not actually create. That is the definition of "willful blindness."  And, Neman Brothers had to do that not once as in *Lieb*, or *Healthestate*, or *Lauren Adele Oliver,* but hundreds of times before it filed the three applications at issue as well.

Third, Neman Brothers' 30+ year history of completing the more than 350 Form VA or online group copyright applications, along with its vast copyright infringement litigation experience and resulting frequent interaction with and easy access to copyright counsel, favors summary judgment for InterFocus.  Neman Brothers' considerable "experience with copyright law" should lead this Court "to find that [Neman Brothers] was actually aware of, or willfully blind to, legally inaccurate information." *Unicolors,* 142 S. Ct. at 948.

-16-

Fourth, the significant financial benefits Neman Brothers received from filing its inaccurate group applications favors summary judgment. Neman Brothers' inaccurate applications allowed it to save thousands of hours of employee copyright application preparation time it otherwise would have had to incur, and hundreds of thousands of dollars in copyright application filing fees it otherwise would have had to pay, to file thousands of individual applications for the thousands of third-party works listed within them.[6] To use only the three applications at issue as examples, Neman Brothers admitted that all 16 of the works listed in the first group copyright application at issue were created by third parties. (Dkt. No. 72 at 7.) Since none of those third-party works were eligible for group registration because Neman Brothers was not their "author," inaccurately claiming authorship saved Neman Brothers the cost and expense of preparing and filing 15 additional copyright applications. While Neman Brothers couldn't say how many of the works in the other two applications were third-party created works, conservatively estimating that 40% of the works identified in the three group applications at issue were third-party works, filing the three inaccurate group applications allowed Neman Brothers to avoid filing dozens of additional individual applications for those third-party works, thereby saving dozens of hours of employee time and hundreds or thousands of dollars in filing fees. (Lee Decl. ¶¶ 14-16.)

Neman Brothers cannot argue that such self-serving inaccuracies in applications it filed over decades were purely accidental. They demonstrate willful

---

[6]Applying those same estimates to the 357 group applications Neman Brothers filed before the three applications at issue, by submitting inaccurate group applications, Neman Brothers avoided filing about 7,140 additional individual applications for such third-party works. Assuming it would take one employee one hour to complete and file each such application, and would incur a $45 per application filing fee for such applications, Neman Brothers saved itself approximately 7,140 employee hours and $321,300 in filing fees by falsifying its group applications. (Lee Decl. ¶¶ 14-16.)

-17-

blindness to applicable legal requirements, if not intentional gaming of the copyright registration system for Neman Brothers' financial benefit. The inaccurate application information it utilized allowed it to misuse hundreds of group copyright applications to claim protection for thousands of works and facilitate the filing of dozens of copyright infringement suits over what amounted to trivial variations in generic fabric designs. Its actions created a false public record and consumed significant judicial resources, conduct that prominent copyright commentators have condemned. See, e.g., William F. Patry, 5 *Patry on Copyright* § 17:125 (calling the fabric designer plaintiff in *Unicolors* a "troll" who "batches many works into single 'collections'" to save money and "obtain registrations that facially cover non-copyrightable works[,]" thereby facilitating numerous copyright infringement actions based on minor variations in generic fabric designs.)

Sixth, Neman Brothers' discovery responses favor summary judgment because they confirm that Neman Brothers cannot dispute its willful blindness. Neman Brothers admits that it previously used the paper Form VA copyright applications, admits the Form VA instructions are "clear," and admits it electronically filed the three applications at issue. (30(b)(6) Deposition 25:17-26:1, 45:10-23, 46:1-12, Lee Decl. ¶ 17, Ex. 9.) However, it denied knowing its own copyright application processes before 2021 because the employees who completed those applications have left the company. (30(b)(6) Depo. 15:7-16:25; Lee Dec. ¶ 17 and Ex. 9.) It therefore cannot dispute that it saw and understood the clear "author," "work made for hire," and "derivative work" requirements attached to the paper applications and incorporated into the electronic applications it submitted. It also cannot deny its willful blindness to, if not actual knowledge of, those requirements when it filed the applications at issue.

Seventh, the Response the Register of Copyrights filed with this Court favors summary judgment for InterFocus. The Supreme Court's *Unicolors* decision governs when questions regarding the validity of copyright registrations should be

-18-

referred to the Copyright Office under USC §411(b)(1) & (2). However, here that issue is moot because the Register of Copyrights, with full knowledge of and while actually citing *Unicolors*, has already concluded that it would have refused registration of the three applications at issue if it had known the true facts concerning their authorship and derivative work status. (Dkt. No. 82 at 25.) Thus, the Register of Copyrights has already answered the question *Unicolors* authorizes this Court to ask it, and it has determined that the three registrations at issue are invalid.

This Court should enter summary judgment based on the Register's advice. As the Ninth Circuit stated in affirming a summary judgment of copyright invalidity entered by a district court based on the Register's Response that it would not have registered a work if it had known of the true facts concerning another application:

> "In light of the Register's response, we agree that §411(b)(1)(B) is satisfied and that the inaccuracy in the '509 registration renders it invalid … Fiesta included inaccurate information… in its application, knew the information was inaccurate, and the Register would have refused registration of the collection if it had been aware of the inaccuracy… Because a valid registration is a precondition to bringing an action for infringement, we affirm the district court's grant of summary judgment in favor of Defendants."

*Gold Value International Textile, Inc. v. Sanctuary Clothing*, LLC, 925 F. 3d 1140, 1148 (9th Cir. 2019); see also, *Inhale, Inc. v. Starbuzz Tobacco, Inc.,* 755 F. 3d 1038, 1041-41 (9th Cir. 2014) ("[w]hen interpreting the Copyright Act, we defer to the Copyright Office's interpretations in the appropriate circumstances"); *Norris Industries, Inc. v. International Telephone & Telegraph Corp.*, 696 F. 2d 918, 922 (11th Cir. 1983) (district court should "give deference to the expertise of the [Copyright] Office…in the interpretation of the law and its application to the facts presented by the copyright application").

-19-

In sum, Neman Brothers was not a first-time applicant who made an innocent mistake on a complex legal question in a single copyright application.  Instead, it was an experienced applicant with a 30+ year history of filing over 350 applications and years of litigation experience in at least 60 copyright infringement actions.  It failed to comply with the clearest of legal requirements that were attached to or actually included within the applications it completed in a self-serving way that both saved it thousands of employee hours and hundreds of thousands of dollars, and facilitated its filing of dozens of copyright infringement actions. Neman Brothers' own discovery admissions establish that it cannot claim it "did not know" the authorship and derivative work requirements in the applications at issue, and even if it could, such *post hoc* denials do not create a triable issue of fact as to the willful blindness other undisputed facts establish when it filed the three copyright applications at issue under applicable law. The Register of Copyrights has already advised that the Copyright Office would have refused the relevant applications if it had known the true facts concerning authorship and derivative work status when the applications were submitted.  Neman Brothers' three registrations at issue are factually inaccurate, Neman Brothers was at least willfully blind to their legal requirements, and this Court should rule they are invalid as a matter of law.

## IV.    CONCLUSION.

Summary judgment of copyright invalidity should be granted in InterFocus' favor, and Neman Brothers' complaint should be dismissed, and summary judgment entered on InterFocus' counterclaim for all the reasons described above.

1

Dated:   October 27, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMON, P.C.


By:   /s/ Mark S. Lee
_____
Mark S. Lee
Zheng Liu

Attorneys for Defendants and
Counterclaim Plaintiffs
INTERFOCUS, INC. d.b.a.
www.patpat.com