1  RIMON, P.C.
   Mark Lee (SBN 94103)
2  mark.lee@rimonlaw.com
   2029 Century Park East, Suite 400N
3  Los Angeles, California 90067
   Telephone/Facsimile: 213.375.3811
4
   RIMON, P.C.
5  Zheng Liu (SBN 229311)
   zheng.liu@rimonlaw.com
6  800 Oak Grove Avenue, Suite 250
   Menlo Park, California 94025
7  Telephone/Facsimile: 650.461.4433

8  Attorneys for Defendants
   INTERFOCUS INC. d.b.a. www.patpat.com
9

10           UNITED STATES DISTRICT COURT

11   CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  NEMAN BROTHERS & ASSOC.,          Case No. 2:20-cv-11181-CAS-JPRC
    INC., a California Corporation,
14                                    **DECLARATION OF MARK S. LEE
                                      IN SUPPORT OF SECOND
15         Plaintiff,                 SUPPLEMENTAL BRIEF OF
                                      INTERFOCUS, INC. IN SUPPORT
         v.                           OF MOTION FOR SUMMARY
16                                    JUDGMENT ON COPYRIGHT
                                      INVALIDITY**
17  INTERFOCUS, INC. d.b.a.
    www.patpat.com, a Delaware
18  Corporation; CAN WANG, and
    individual, and DOES 1-10, inclusive.,   (Filed Concurrently with Second
19                                    Supplemental Brief)
         Defendants.                  Filing Date: October 27, 2022
20                                    Time:  Under Submission
                                      Courtroom:  8D
21  INTERFOCUS, INC. d.b.a.
    www.patpat.com, a Delaware        The Hon. Christina A. Snyder
22  Corporation; CAN WANG, an
    individual, and DOES 1-10, inclusive,
23
         Counterclaim Plaintiffs,
24
         v.
25
    NEMAN BROTHERS & ASSOC.,
26  INC., a California Corporation,

27         Counterclaim Defendant.

28

**<u>DECLARATION OF MARK S. LEE</u>**

I, Mark S. Lee, declare:

1.      I am a lawyer admitted to practice before this Court, and am a partner at Rimon, P.C., counsel of record for InterFocus, Inc. d.b.a. www.patpat.com ("InterFocus") in this matter. I have personal knowledge of the following facts, except where otherwise indicated, based on my personal participation in the matters described, and if called upon as a witness, I could and would competently testify thereto.

2.      I tried my first copyright infringement action to a jury in 1984, and have been involved in copyright litigation and counseling ever since. On behalf of clients, I have filed copyright applications and recorded copyright-related documents with the Copyright Office for decades. Through those efforts, as well as through legal research on Copyright Office practices, I have become familiar with those practices.

3.      Beginning no later than the 1980s, the Copyright Office developed forms that people or companies needed to use when they wished to apply for copyright registration for works they created.  For example, copyright applications for textual works such as books had to be filed using a "Form TX" copyright application.  Copyright applications for works of visual art had to be submitted using a "Form VA" application form.  There were and are various other forms. Those application forms always included instructions that would constitute the first of two pages of an application document, followed by the blank application forms themselves. The instructions affixed to the front of the application form included "line-by-line" instructions, which explained what an applicant needed to include in each space of the application.

4.      The format and layout of those forms was changed slightly by the Copyright Office from time to time, but the text has remained substantially the same. I attach application forms the Copyright Office made available to the public at

1

various times to illustrate this. I obtained those copies from the Internet Archive's "Wayback Machine" website.

5.      The "Wayback Machine" is a digital archive of the World Wide Web founded by the Internet Archive, a nonprofit organization based in San Francisco, California, and viewable at https://web.archive.org/.  Launched to the public in 2001, it has methodically "crawled" and recorded websites for about the past 22 years, and allows users to go "back in time" and see how those websites, and some or all of the contents within those websites, looked at various points in the past. Using the "Wayback Machine," I visited the Copyright Office's website as it existed at various times in the past, and obtained true and correct copies of its "Form VA" copyright application and instructions as they existed at those times. A true and correct copy of the Copyright Office's "Application Form VA" as it existed on June 2, 2001, is attached as Exhibit 1. A true and correct copy of its "Form VA" copyright application as it existed on September 16, 2002, is attached as Exhibit 2. A true and correct copy of its "Form VA" copyright application as it existed on June 10, 2004, is attached as Exhibit 3. A true and correct copy of its "Form VA" copyright application as it existed on March 26, 2008, is Attached as Exhibit 4. A true and correct copy of "Form VA" copyright application as it existed on January 7, 2012, is attached as Exhibit 5. A true and correct copy of "Form VA" copyright application as it existed on November 8, 2016, is attached as Exhibit 6. A true and correct copy of "Form VA" copyright application as it existed on May 13, 2017, is attached as Exhibit 7.  The text of the "line-by-line" instructions for "Form VA" involving "Author(s)" at Space 2, and "Derivative Work or Compilation" for Space 6 are also "cut and pasted" into page four of the accompanying Second Supplemental Brief filed herein.

6.      Beginning July 1, 2008, the Copyright Office also allowed people and companies to apply for copyright registrations online using what it calls its "eCO" electronic filing system.  A true and correct copy of a June 25, 2008 press release

2

1  issued by the Copyright Office that announced that new technology is attached as

2  Exhibit 10.

3      7.      Under the "eCO" system, a copyright applicant fills out an electronic

4  form provided on the Copyright Office's website.  During 2017 and 2018, applicants

5  who wanted to submit group applications for one or more works of visual art, such

6  as the three group registrations at issue here, would fill out and submit what was

7  called the "standard application" form to apply for a copyright registration for those

8  works, and would upload electronic copies of the works for which registration was

9  sought with the applications. True and correct copies of electronic applications

10  forms that were used by the Copyright Office in 2017 and 2018 are displayed in two

11  online tutorials viewable the "YouTube" website.  See "How to File a Copyright

12  Application-Visual Arts" (2014), viewable at

13  https://www.youtube.com/watch?v=twAXvnO_NU0, and "How to File Copyrights

14  Online-PA, SR & Multiple Works for One Fee" (2015), viewable at

15  https://www.youtube.com/watch?v=hoVD6oa-8EM&t=1009s, which both depict the

16  Copyright Office's standard online application form Neman Brothers would have

17  used when it filed the group applications at issue in 2017 and 2018.

18      8.      The Copyright Office's online "eCO" application form differed

19  somewhat from the paper applications used by the Copyright Office in that, rather

20  than include instructions separate from the application themselves, the online "eCO"

21  forms included explanatory information on each page of the electronic application

22  itself, with more information provided in hyperlinks that were included in

23  application pages.  For example, a true and correct copy of the portion of the

24  "Authors" page of the "eCO" standard application form I personally copied from the

25  standard application is included in page six of the accompanying Second

26  Supplemental Brief, and is concurrently filed as the first page of concurrently filed

27  Exhibit 11.  It truly and accurately depicts the information included on the

28  application page, and in blue, underlined text truly and accurately depicts the

3

1   hyperlinks with additional information concerning the terms used.  A true and

2   correct copy of the explanatory webpages that appears if one clicks on either of

3   those two hyperlinks are shown in the remaining pages of Exhibit 11.

4        9.      In 2017 and 2018, and continuing to the present, the Copyright Office

5   also made available to the public by a hyperlink on its home page its "Compendium

6   of U.S. Copyright Office Practices (Third Edition)." That Compendium provided

7   more detailed information about who constituted an "author," when a work was

8   "made for hire," when a work was a "derivative" of earlier works.  Attached as

9   Exhibit 12 is a printout that truly and accurately depicts the first few pages of that

10  Compendium, along with a few other pages cited in the brief as they existed on

11  December 17, 2016 that I copied from the "Wayback Machine" online archive.

12       10.     In 2017 and 2018, the Copyright Office's website also displayed a

13  "Contact Us" button on the top of its website home page, and by clicking on that

14  button and completing the information requested, a copyright applicant could ask

15  any questions it had about a copyright application, including the group applications

16  Neman Brothers filed in 2017 and 2018 that form the basis of its copyright

17  infringement claims.  A true and correct copy of the Copyright Office's home page

18  as it appeared on January 13, 2017, the date on which Neman Brothers applied for

19  the first of the registrations on which it bases its copyright infringement claims

20  herein, and which depicts the "Contact Us" button on its upper right, is viewable at

21  https://web.archive.org/web/20170113144202/https://www.copyright.gov/.  A true

22  and correct copy of the copyright.gov webpage that displays when one clicks on that

23  "Contact US" button on the home page that appears on that date is viewable at

24  https://web.archive.org/web/20170104235959/https://www.copyright.gov/help/inde

25  x.html.  I copied those pages, and although my printer altered the layout of those

26  pages somewhat to accommodate their being printed on 8 and one half by 11-inch

27  paper, their substance remains unchanged, and true and correct copies of those pages

28  are attached as Exhibits 13 and 14.

4

11.     Westlaw is an online research service and database that lawyers and others can use to search, among other things, filings of legal actions in federal court. In preparation for this declaration I searched the Westlaw database for copyright actions filed in the Central District of California filed before 2018 in which Neman Brothers & Assoc., Inc. was a party and printed out the list that resulted from that search.  That search revealed that Neman Brothers has been involved in about 61 copyright actions through 2018. A true and correct copy of that list is attached as Exhibit 15.

12.     On Westlaw, one can also review the dockets of federal actions located as a result of searches conducted on it, and those dockets identify whether parties in those legal actions are represented by counsel. I reviewed the dockets for each of the 61 copyright actions identified in the Westlaw search I conducted, and that review revealed that Neman Brothers was represented by legal counsel in all of those actions, and further revealed that Neman Brothers' legal counsel in this action represented it in many of the legal actions identified in Exhibit 15. According to those dockets, Neman Brothers was the plaintiff in most of those copyright actions, and the majority of them settled on confidential terms shortly after they were filed. Of those that did not settle, most resulted in rulings adverse to Neman Brothers, as described in footnote 5 of InterFocus' accompanying second supplemental brief.

13.     InterFocus served Neman Brothers with a request for production of documents herein after this Court authorized it to conduct limited discovery on the issues discussed in the accompanying second supplemental brief, and Neman Brothers produced certain documents in response to those requests.  Attached as Exhibit 16 is a true and correct copy of a document produced by Neman Brothers in response to those requests, consisting of 2019 correspondence from a Copyright Office Registration Specialist.

14.     In this action, Neman Brothers alleges infringement of three works identified in three group copyright registrations it attached as exhibits to its

5

complaint and amended complaint, as well as a declaration filed by Yoel Neman in connection with the current cross-motions. See Dkt. Nos. 42-4, 42-6 and 42-8 herein. Dkt. No 42-4 identifies about 16 works, Dkt. No. 42-6 identified about 108 works, and Dkt. No. 42-8 identifies about 28 works, for an average of over 50 works per registration. Multiplying that 50 works per registration average by the 357 registrations Neman Brothers obtained before 2017 results in an estimated 17,850 works covered by those 357 group registrations. In deposition, Yoel Neman testified that all of the 16 works listed in the copyright registration identified at Dkt. No. 42-4 were created by third parties but did not know how many of the works in the other two group registrations came from third parties. See Dkt. No. 72 at 7-8. Conservatively estimating that around 40% of the works included in group applications were third party works, and applying that 40% estimate to the 17,850 total works estimate described above, 7,140 third party works should have been individually registered. Adding the 357 group applications if actually did file before 2017, as well as the additional 10 applications it filed during 2017, to those third party work registrations results in a total of at least 7,600 applications Neman Brothers should have filed.

15.     In my experience, it generally takes at least an hour to complete a copyright application, locate, organize and prepare for submission the deposit copy of the work for which a copyright application is being filed, and obtain and submit the filing fee that is required with the application. Thus, I estimate that it took Neman Brothers about 357 hours to prepare and submit the 357 copyright applications Copyright Office records indicate it filed before 2017, while I estimate it would have taken about 7,140 hours to submit individual copyright applications for the additional individual third party works it should have filed.

16.     The amount of the filing fee the Copyright Office charges for copyright applications has varied over the years from $35 to $55 per application, depending on the type of work involved, whether a paper or online application is filed, whether a

group or individual work application is filed. And other factors.  I could not precisely tabulate how much Neman Brothers paid for its applications because it did not know whether its pre-2017 applications were filed with a paper application or online. However, using $45 as an average charge, cost for filing the additional 7,140 applications would have been $321,300, while the cost to file the 357 it actually did file before 2017was about $16,065.

17.     This office served a Notice of Deposition of Plaintiff Neman Brothers & Associates, Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6), and a true and correct copy of that notice is attached as Exhibit 8. I personally deposed the individual who was produced by Neman Brothers pursuant to that notice on August 12, 2022.  True and correct copies of the excerpts of that deposition cited in InterFocus' concurrently filed second supplemental brief are attached as Exhibit 9.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed October 27, 2022, at Los Angeles, California.

_____/s/ Mark S. Lee_____
Mark S. Lee