CHAN YONG JEONG, ESQ. (SBN 255244)
JEONG & LIKENS, L.C.
1100 Wilshire Blvd., Suite 3008
Los Angeles, CA 90017
Tel: 213-688-2001
Email: Jeong@jeonglikens.com

Attorneys for NEMAN BROTHERS & ASSOC., INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMAN BROTHERS & ASSOC., INC., a California Corporation;<br><br>       Plaintiff/Counter-Defendant,<br><br>       vs.<br><br>INTERFOCUS, INC., a California Corporation, et al.,<br>       Defendant/Counter-Claimant | Case No.: 2:20-cv-11181-CAS-JPR<br><br>**NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO INVERFOCUS' SECOND SUPPLEMENTAL BRIEF**<br><br>Date: December 5, 2022<br>Time: 10 a.m.<br>Honorable Judge Christina A. Snyder |

# TABLE OF CONTENTS

**I. INTRODUCTION** ……………………………………………………… 2

**II. ARGUMENTS** ………………………………………………….………... 3

1. Under the Supreme Court's holding in *Global-Tech Appliances, Inc*., Interfocus completely failed to show any of the two elements required for willful blindness………………………………………………….…………….... 3

2. Interfocus' Reliance upon *Lieb* Is Flawed...…………………………………… 8

3. Interfocus' Exhibits 6 and 7 (Instructions) in fact negates Interfocus' own position because the instructions were not so clear or easily understandable, but rather confusing and misleading……………………………………….…..……… 10

**4.** Given Interfocus' failure to meet the requirements under *Unicolors* and *Global-Tech*, the copyright office's opinion letter has no relevance in this case..….…… 14

**5.** It is *the loopholes* to be fixed, which the Supreme Court has held to be the legislative intent. However, notwithstanding its good-faith intent, the ways the copyright office manage the procedures of applications and issue its opinion letters in litigations, work unreasonable, unfair and even unjust against the copyright owners……………………………….…………………………………….. 15

6. Interfocus misstated about Ms. Moktarian's deposition testimonies …….………20

7. Fraud element matters ……………………………….…………….………..... 22

8. Interfocus' argument about significant financial benefits makes no sense……... 23

**III.   CONCLUSION**……………………………………………………… 24

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPELMENTAL BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

<u>CASES</u>

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322 ……………………………….. 5

*Davis v. Michigan Dept. of Treasury* (1989) 489 U.S. 803 ……………………….22

*Global-Tech Appliances, Inc. v. SEB S.A.* (2011) 563 U.S. 754………..………..……3, 9

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010)……....22

*Lenz v. Universal Music Corp.*. (9th Cir. 2016) 815 F.3d 1145,1149……………............ 4, 5

*Lieb v. Korangy Publishing, Inc*. (N.Y.E.D) 2022 WL1124850, p.13…………...……….8

*Morelli v. Tiffany & Co*., 186 F. Supp. 2d 563 (E.D. Pa. 2002)………………………….22

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc,* 210 F.3d 1099 (9th Cir.2000)…..…….5

*One Treasure Ltd v. Inc. v. Richardson*, 202 F.App'x 658 …………………...…………..22

*Thomas Wilson & Co. v. Irving J. Dorfman Co., Inc*., 433 F.2d 409 (2d Cir. 1970) …...22

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.* (2022) 142 S. Ct. 941…………... 14, 15

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.* (2022) 18-56253 & 18-56548……….15

*United States v. Yi,* 704 F.3d 800 (9th Cir.2013)…………………………………….. 4


<u>STATUTES</u>

37 C.F.R.§ 201.5(b)(2)(ii)(A)……………………………………………………….. 34

37 C.F.R. § 202.4 including (c)(5)………………………………………………. 10, 15

37 C.F.R.§ 202.6(d)(3)(i)…….……………………………………………………... 15

37 C.F.R. § 202.4(c)(5)………………………………………………………………29

81 FR 6794-01, p.67946 ……………………………………………………………. 10

82 FR 47415-01, pp.47420-21 ………………………………………….…... 10, 11


<u>SECONDARY SOURCE</u>

ALI, Model Penal Code § 2.02(2) (1985)…..…………………………………...….3, 9, 21

Compendium §503.2 (3d ed. 2021)……………………………………………………15

Compendium §1802.6(D) (3d ed. 2014 and 2021)……………………………………15

G. Williams, Criminal Law § 57, p. 159 (2d ed. 1961)…………….……………………. 3

H. R. Rep. No. 110–617, p. 20 (2008)……………………………………….………14, 15

William F. Patry, 5 *Patry on Copyright* § 17:125. …………………….……………..17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Interfocus, Inc. ("Interfocus") does not dispute, or failed to negate, Neman Brothers & Assoc., Inc. ("Neman")'s ownership and originality of the subject designs, virtual identities between the subject designs and the accused patterns, lack of evidence for any independent creation, etc. Rather, as pointed out by the Supreme Court in *Unicolors, Inc. ("Unicolors")* and the Congressional report, Interfocus as an infringer having no real excuses for its misconducts of the series of infringements, attempts to exploit the *loophole* to expose the registrations to invalidation based on pure mistake, which was based on good-faith misunderstandings of the details of copyright law.

As to the requirement of showing willful blindness under *Unicolors*, the Supreme Court in *Global-Tech Appliances, Inc. ("Global-Tech")* already provided clear guidelines in Global-Tech Appliances, Inc. However, Interfocus completely failed to present evidence showing any of Neman's (1) *subjective knowledge of a high probability* or (2) *deliberate actions to avoid learning*, of *the copyright laws* that required certain information to be presented in a certain way on the application, *and of the fact* that the information Neman put in the relevant applications at the time of filing were not in compliance with the rules due to its misunderstandings or lack of understanding of the laws.

Interfocus' evidence and arguments at most show that Neman should have read the instructions, the instructions were clear and easily understandable, and therefore, Neman should have understood the instructions, or Neman was reckless in failing to read the instructions. However, what the Supreme Court required in *Unicolors* and *Global-Tech* were *not mere negligence* or *recklessness*, *but willful blindness*. The Supreme Court in *Global-Tech* clearly held that application of negligence or recklessness standards were improper for the purpose of satisfying the higher standards of willful blindness. Further,

even for the negligence, Interfocus' argument assumes the instructions were **_clear to, and easily understandable by,_** the applicants. However, review of the instructions (Interfocus Ex. 6 and 7) prove the opposite, even assuming arguendo those were the instructions provided with the relevant applications.

## II. ARGUMENTS

**1. Under the Supreme Court's holding in _Global-Tech Appliances, Inc._, Interfocus completely failed to show any of the two elements required for willful blindness.**

The U.S. Supreme Court held willful blindness requires showing two elements: "(1) The defendant _must subjectively believe_ that there is _a high probability_ that a fact exists and (2) the defendant _must take deliberate actions to avoid learning_ of that fact. (emphasis added) _Global-Tech Appliances, Inc. v. SEB S.A._ (2011) 563 U.S. 754, 769. The Supreme Court also held;

> We think these requirements give willful blindness **an appropriately limited scope that surpasses recklessness and negligence**. Under this formulation, a willfully blind defendant is one who _takes deliberate actions to avoid confirming a high probability of wrongdoing_ and who can almost be said to have actually known the critical facts. See G. Williams, Criminal Law § 57, p. 159 (2d ed. 1961) ("A court can properly find willful blindness only where it can almost be said that the defendant actually knew"). By contrast, a reckless defendant is one who _merely knows of a substantial and unjustified risk of such wrongdoing_, see ALI, Model Penal Code § 2.02(2)(c) (1985), and a negligent defendant is one who _should have known of a similar risk but, in fact, did not_, see § 2.02(2)(d). **The test applied by the Federal Circuit in this case departs from the proper willful blindness standard in two important respects**. First, it permits a finding of knowledge when there _is merely a "known risk"_ that the induced

3
NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

acts are infringing. Second, in demanding only "deliberate indifference" to that risk, the Federal Circuit's test does *not require **active efforts** by an inducer to avoid knowing* about the infringing nature of the activities. (emphasis added) *Id*. at 769-70.

The Supreme Court then found willful blindness based on the evidence showing *subjective knowledge* such as that because the fryer was an innovation in the United States, one would expect it to have a patent, as any superior product would in such a market and **the fact that Pentalpha copied all but the cosmetic features of the fryer** which showed that they knew the technology was something special and therefore valuable. *Id*. at 771-72. The Supreme Court also found *deliberate actions* based on the fact that the **defendant chose to copy an overseas version of the fryer** despite its intention to sell in the United States, and the fact that it **did not tell their patent attorney that they had copied anything**. *Id*.

The 9th Circuit Court of Appeal follows Global-Tech Appliances, Inc. *See Lenz v. Universal Music Corp.,* (9th Cir. 2016) 815 F.3d 1145. The 9th Circuit Court held;

> To meet the *Global-Tech* test, Lenz must demonstrate a genuine issue as to whether—before sending the takedown notification—Universal (1) subjectively believed there was a high probability that the video constituted fair use, and (2) took deliberate actions to avoid learning of this fair use. To make such a showing, Lenz must provide evidence from which **a juror could infer that Universal was aware of a high probability** the video constituted fair use. *See United States v. Yi,* 704 F.3d 800, 805 (9th Cir.2013). But **she failed to provide any such evidence. … the district court improperly denied Universal's motion for summary judgment on the willful blindness theory because Universal "has not shown that it *lacked* a subjective belief." By finding blame with Universal's inability to show that it "*lacked* a subjective belief," the district court improperly required Universal to meet its burden of persuasion**, even

though Lenz had failed to counter the initial burden of production that Universal successfully carried. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000). Lenz may not therefore proceed to trial on a willful blindness theory.

(emphasis added) *Id.* a 1155-56.

In short, Lenz as the party having the burden of proving willful blindness failed to meet the burden of at least producing any evidence from which a juror could infer that Universal had a subjective belief, and the Appellate Court held Lenz would not be allowed to proceed to trial on a willful blindness theory.

Likewise, in this case, while Neman met its burden of establishing the presumption of the ownership and originality through copyright registration certificates, Interfocus having the burden of proving willful blindness to rebut, completely failed to show any of subjective belief of a high probability and deliberate action to avoid learning.

In Global-Tech, what the defendant SEB subjectively believed it was highly probable but deliberately avoided learning of was the fact that the Global-Tech's fryer was a valuable innovation registered for patent. In Lenz, what Lenz claimed Universal deliberately avoided of learning in spite of subjective knowledge of high probability before Universal sent a take-down notice under DMCA, was that Lenz posting was a fair use.[1] In both of Global-Tech and Lenz, SEB and Universal had motives and incentives to avoid learning of the fact in spite of their subjective knowledge of high probability.

In this case, Neman as it would be the same for any of genuine copyright holders would have never had any such motive or incentive to deliberately avoid learning exactly what information each of the questions on the copyright applications are asking and

---

[1]     Lenz as a user of internet posting website brought action alleging that Universal as the copyright holder made material misrepresentation by issuing takedown notification without proper consideration of fair use doctrine, in violation Digital Millennium Copyright Act (DMCA).  *See Lenz,* supra, 815 F.3d at 1149.

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

exactly how it should be answered. As it would be the same for any of genuine copyright holders, had Neman *subjectively knew* there is a high probability that it was giving wrong answers, and therefore, the certificates thereupon would have been under attack by copyright infringers like Interfocus when Neman would try to enforce its copyrights. Interfocus presents no evidence to attack otherwise on Neman's ownership of the subject designs, deny originality of the subject designs, or prove independent creation at all. Interfocus does not deny this is its second time getting caught for infringements upon Neman's copyrights. Neman is the genuine owner of original designs and Interfocus is a serial infringer.

Interfocus as in *Lenz*, completely failed to present any evidence based on which a juror may find Neman had "subjective" knowledge of high probability. It only argues Neman should (not must) have read the instructions and therefore, Neman should have known the rules, but Neman failed to properly answer even though it had no reason to lie to the US Copyright Office (not that Neman lied). Interfocus does not deny Neman had all the information available so that it could provide all of the accurate information had it known exactly what the registration asked for as the answers. In other words, had Neman genuinely had subjective knowledge of high probability that Neman was giving wrong answers, what Neman would have done was not avoiding to know it, but trying to even harder to know it so that it could give the proper answers in compliance with the rules, because it was a simple matter of giving the right answers about author, pre-existing materials, etc., about which Neman had no reason to lie.

On the other hand, the declaration of Mr. Adelso Henriquez sufficiently negates the elements of the willful blindness test. Mr. Henriquez was in charge of filling out and submitting the copyright applications including the subject applications in this case while employed at Neman, after training by his predecessor Ms. Vicky Alvarado through showing of how to fill the actual applications a couple of times. Henriquez Decl. ¶¶3-5, 11. Mr. Henriquez then started submitting applications online. Henriquez Decl. ¶5. While there were some comments from the Copyright Office about certain designs being too simple or common to be original, "there was no emails or letters from the copyright

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

office as to other issues such as having to put all of the authors' names who worked on any of the elements of the group or needing to identify prior-existing designs in connection with derivatives." Henriquez Decl. ⁋7. "To [his] understanding, Neman already had been registering its designs for years before I joined Neman, and [Mr. Heriquez] have no reason to believe Neman ever had any issues that Neman intentionally or by mistake provided inaccurate information on the copyright applications." Henriquez Decl. ⁋8. Further, "during [his] employment, Neman never had such issues with any of the information [Mr. Henriquez] provided on the applications submitted to the copyright office." Henriquez Decl. ⁋8. Therefore, "throughout the whole time of [his] employment, [Mr. Henriquez] genuinely believed [he] was doing [his] job right and providing the accurate answers to the questions on the applications. [He] had no reason to believe that what [he] did or how [he] did, could possibly be problematic in anyways or that the information [he] put on the applications could possibly be considered inaccurate. [Mr. Henriquez] had no reason to believe [he] needed to study more about the applications." Henriquez Decl. ⁋9. He did not know much about the instructions available through the links on the Copyright Office website, nor did he have any idea about the existence of compendium or CFRs. Henriquez Decl. ⁋10. Mr. Henriquez genuinely believed there was any issue with the information he put on the subject applications or had no idea the registrations required all names of design studios as authors and the information of the prior arts because Neman never had any such issues and the Copyright Office never inquired or commented about the issues of author, work for hire or preexisting arts. Henriquez Decl. ⁋13.

The above clearly shows Neman had *no subjective knowledge* of high probability that Neman was providing inaccurate information and Neman *did not deliberately act to avoid learning* of it. "There was, and is, no reason why [Neman or Henriquez] would withhold, be unable or unwilling to provide, or lie about, the identities of design studio names as authors or any information about any prior-existing arts, had [Neman or Henriquez] known the said information was required on the applications." Henriquez Decl. ⁋14.

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

In short, Interfocus completely failed to present any evidence based on which a juror may find Neman *deliberately* acted to avoid learning the facts. Rather, evidence shows Neman had no reason to deliberately try to avoid, but in fact had reasons to want to know and comply with the rules so that Neman could give proper answers.

## 2. Interfocus' Reliance upon *Lieb* Is Flawed.

With all due respect for the court in *Lieb*, even if taken as a potentially persuasive case, not precedent case, the holding appears to have "**depart[ed] from the proper willful blindness standard[s]**" under *Global-Tech Appliances, Inc.* The court in *Lieb* held;

> As to whether Lieb can credibly claim that he did not know of the inaccuracy of his registration from a legal point of view, reference to the USCO resources described above is appropriate. **The clarity of these resources**, coupled with the **simplicity of the information** that Lieb was asked to provide, makes this a case where **only willful blindness to the law can explain the inaccuracy** at issue. As demonstrated, USCO materials regarding previously published work are **easily understandable by anyone**, including a lay person without a law degree.
> (emphasis added) *Lieb v. Korangy Publishing, Inc.* (N.Y.E.D) 2022 WL1124850, p.13.

In *Lieb*, the holding discusses nothing whatsoever about the two elements of willful blindness test or any distinctions of willful blindness from recklessness or constructive knowledge. The holding states merely Lieb was on constructive knowledge but was asinine enough to fail to read and understand such easily understandable by any lay person, reasonable or unreasonable, which will automatically make all of copyright owners who failed to give accurate information on the application, willfully blind persons. Maybe it would be fair to say the copyright owners who failed to read and

understand such easily understandable explanations, were unreasonable or even foolish, but they were not automatically willfully blind.

Likewise, Interfocus relying on *Lieb* again makes flawed arguments "**depart[ing] from the proper willful blindness standard in two important respects**", which the Supreme Court pointed out the appellate court improperly applied in *Global-Tech Appliances, Inc., supra,* 563 U.S. at 770. First, it permits a finding of knowledge when there *is* **merely a "known risk**" that the induced acts are infringing, and second, in **demanding only "deliberate indifference" to that risk**, the *Lieb* or Interfocus' test does "*not require* **active efforts by an inducer to avoid knowing**" about what the relevant application inquired about and how they should have been answered.

In fact, the Supreme Court already presented clear distinguishments of <u>a willfully blind defendant</u> from <u>a reckless defendant</u> is "one who *merely knows of a substantial and unjustified risk of such wrongdoing,*" and <u>a negligent defendant</u> is "one who *should have known of a similar risk but, in fact, did not*" *Global-Tech Appliances, Inc., supra,* 563 U.S. at 769-70 (citing ALI, <u>Model Penal Code § 2.02(2)(c)</u> (1985) and <u>§ 2.02(2)(d))</u>. In this case, while completely failing to present any evidence showing Neman or its staffs Ms. Vicky Alvarado or Mr. Adelso Henriquez, had subjective knowledge of high probability or their deliberate action to avoid learning, Interfocus at most argues that Neman should have known of the risk but foolishly ignored or failed to know it by not reading the instructions each and every time when filing the applications. Interfocus even blamed Neman for not reading and understanding CFRs and compendiums, which USCO *intermittently* makes nominal or substantial changes. This at the best reaches the level of negligence, not even recklessness. Interfocus presents no evidence showing that Neman merely knew of a substantial and unjustified risk of providing inaccurate answers, while Neman in no way meant to lie to the USCO, which may at most prove recklessness, not willful blindness.

In fact, Interfocus failed to prove negligence either, as discussed below, because its argument for constructive knowledge is based on wrong assumption that the

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

instructions if reasonably read would have been clear to a reasonable person, which is not true.

### 3. Interfocus' Exhibits 6 and 7 (Instructions) in fact negates Interfocus' own position because the instructions were not so clear or easily understandable, but rather confusing and misleading.

Interfocus presented multiple instructions and applications without laying foundations to establish

As discussed above, even assuming arguendo Neman's employee read the instruction, it does not necessarily establish Neman or its employee "understood (or knew)" the instructions well enough to be able to provide accurate information that the instruction meant to get.

Interfocus vaguely presents Exhibit 7 (Rev: 12/2016) to purportedly be the application instructions used at the times of the registrations of NB 161106 (dated 1/13/2017) and NB170268 (dated 3/3/2017).[2] Interfocus presented no instructions that were actually available on the copyright office's website at the times of the subject registrations,. Interfocus also failed to show, if any instructions were available, how their links were actually provided around the links to the application forms.

Even assuming arguendo the online instructions were the same as Exhibits 6 and 7. The USCO as of October 2016 removed the entire section of 37 C.F.R. Section 202.4 including the subsection (c)(5) requiring all names of all authors on the application. 81 FR 6794-01, p.67946. 202.4(c)(5) did not exist at the time of Neman's application and registration as of 2017. NB161106 was registered as of January 13, 2017, and NB170268 was registered as of March 3, 2017. After the two registrations, the said subsection was

---

[2]    On the other hand, Interfocus failed to present any instruction form as to NB180228 dated 4/30/2018. As discussed above, the USCO changed CFR to add subsection (c)(5) to Section 202.4, as of October 12, 2017, which is only a few months before the registration of NB180228 which provides "[a]ll works [identified in the group registration of unpublished works] *must be created by the same author or joint authors*, and *the author and claimant information for each work must be the same.*" 37 C.F.R. § 202.4(c)(5). 82 FR 47415-01.

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

added as of October 12, 2017 (82 FR 47415-01, pp.47420-21). Therefore, the timeline of the events are as follows.

(1) Instruction in Ex. 6 revision– 5/2012
(2) Removal of the entire section of 37 C.F.R. Section 202.4 including (c)(5) – 10/2016
(3) Instruction in Ex. 7 revision - 12/2016 (Ex. 7 completely failed to include the changes of the CFR two months before the revision)
(4) NB 161106 registration – 1/13/2017
(5) NB170268 registration - 3/3/2017
(6) Reinstatement of the subsection (c)(5) – 12/2017
(7) Instruction after the said reinstatement – Interfocus presented none in spite of such thorough search by its counsel with decades of experience
(8) NB180228 registration – 4/30/2018

In spite of the big change of removing the entire section 202.4 from CRF, the instructions in Exhibit 6 and Exhibit 7 are simply identical, especially the one about author and prior existing works, which puts the "accuracies" of the instructions in serious doubt. Even though the requirement that all of the authors to be identified on the application per subsection (c)(5), the instruction in Exhibit 7 still requires the applicants to give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work." Unlike the findings about whatever instructions reviewed in *Lieb*, the instructions in this case are not so clear or easily understandable. Rather, they appear to be vague, ambiguous, incomplete and even "inaccurate".

Even such wordings are also confusing because the instruction on in "**SPACE 2: Author(s)**", "unless the work is a "**collective work**," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

this version of the work." Whatever "collective work" meant, the instruction provides no definition of the term, which is a matter of legal conclusion. Even assuming arguendo certain applicants really read the instruction, with no definition provided, some applicants would reasonably interpret it to mean a group of multiple works made by multiple authors. Therefore, the applicants would reasonably provide only one author as the instruction states "In the case of a collective work, such as a catalog of paintings or collection of cartoons by various authors, **give information about the author of the collective work as a whole**." (emphasis added).

Further review of the instructions reveals more issues. In "**SPACE 5: Previous Registration**", the instruction states "[t]he questions in space 5 are intended to find out whether an earlier registration has been made for **this work** and, if so, whether there is *any basis for a new registration*. As a rule, only one basic copyright registration can be made for *the same version of a particular work*." (emphasis added). Reasonable applicants would see the terms "this work" again at the beginning, and would reasonably understand it to mean "the group as a collection". On the other hand, **SPACE 1: Title**" states under the subtitle "Title of This Work", "Every work submitted for copyright registration must be given a title to identify that particular work." Reading this part does not clarify what "**This Work**" exactly means between "**the group as a collection**" and "**each of the elements in the group**". Due to the subtitle saying Title of This Work, **the applicants would more likely to read it to mean the works as a group**. Even assuming arguendo, some applicants or one applicant might have read it to mean each of the designs, it would still mean that "applicants could reasonably read this mean one way or the other" which does not even establish a constructive knowledge. To avoid the redundancy, it will not be discussed here but even reading the entire instructions under SPACE 1 would lead to the same conclusions, or even reenforce the conclusion that This Work means the works as a group due to another subtitle stating "Nature of This Work". Therefore, some of the applicants would reasonably answer "No" to Section 5 asking "Has registration for this work, or for an earlier version of this work, already been made

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

in the Copyright Office?" unless This Work as a group (or the substantially the same group) was registered in the past.

The same problem exists as to SPACE 6. "**SPACE 6**: **Derivative Work or Compilation**" states "[a] "*compilation*" is defined as "a work formed by the *collection and assembling of preexisting materials* or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works."

The above SPACEs read together would cause at least some reasonable applicants (even the reasonable factfinder in this case today) to understand the author, preexisting material and publication of This Work as the ones of the group rather than each of the elements in the group. Again, even assuming arguendo, some applicants or one applicant might read it to mean each of the designs, it would still mean that "applicants could reasonably read This Work means one way or the other".

In addition, even assuming arguendo the above are still so clear or easily understandable for reasonable applicants, and some applicants were so unreasonable or even silly so that the applicants failed to understand, it establishes merely constructive knowledge for negligence, not willful blindness.

Further, as discussed above, the instructions "failed" to notify in such a "clear and easily understandable" manner as to any changes to the rules in the instructions when there were major changes of the rules. Interfocus now is arguing the applicants should read the same instructions each and every time, word by word, or at least compare the instructions side-by-side, again and again, which is put in boilerplate statement format, whenever submitting applications. Before blaming the applicants for not reading thoroughly all of the instructions, the compendiums and the CFRs that "intermittently" change, it would make a lot better and reasonable sense for the copyright office to put clear notifications around the link for the application in very clear and easily understandable and ostensible manner what major changes the applicants should know, or what are typical mistakes the applicants make. Even lawyers would not be able to update

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

themselves on real time basis each and every time whenever there were changes to those rules.

**4. Given Interfocus' failure to meet the requirements under Unicolors and Global-Tech, the copyright office's opinion letter has no relevance in this case.**

In *Unicolors*, the Supreme Court held **it would not matter whether the inaccuracy would have been the reasons for the copyright office to refuse** the registration, because Unicolors' provision of inaccurate information originated from its lack of knowledge of law, i.e. mislabeling. The Supreme Court in *Unicolors* acknowledged "[r]egistration applications call for information that requires both legal and factual knowledge." *Unicolors, Inc.* v. H&M Hennes & Mauritz, L. P. (2022) 142 S. Ct. 941, 946. The Supreme Court also stated "**John may have seen the bird perfectly well, noting all of its relevant features**, but, not being much of a birdwatcher, **he may not have known** that **a tanager (unlike a cardinal) has black wings**. In that case, John has made **a labeling mistake.**" *Id*. Likewise, "**Unicolors had failed to satisfy** the "single unit of publication" requirement (because it offered some of the 31 designs exclusively to certain customers)." *Id*. "Unicolors' mistake is a mistake of labeling" and "[t]he labeling problem here is one of law." If Unicolors was not aware of (or was not willfully blind to) the legal requirement that rendered the information in its application inaccurate, it did not include that information in its application "*with knowledge that it was inaccurate*." *Id*.

The Supreme Court also recognized the legislative history as follows:

> Congress enacted §411(b) <u>to make it easier, not more difficult</u>, for nonlawyers to obtain valid copyright registrations. The House Report states that <u>its purpose was to "improve intellectual property enforcement</u> in the United States and abroad." H. R. Rep. No. 110–617, p. 20 (2008). It did so in part <u>by "eliminating loopholes that might prevent enforcement</u> of otherwise validly registered copyrights." *Ibid.* The Report specifically notes that <u>some defendants in copyright infringement cases had "argued ... that a mistake in the registration documents, such as checking the wrong box on the registration form, renders a registration invalid</u> and thus forecloses the availability of statutory damages." *Id.,* at 24. **Congress intended to deny**

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

**infringers the ability to "exploi[t] this potential loophole**." *Ibid.* Of course, an applicant for a copyright registration—especially <u>one who is not a lawyer</u>—might check the wrong box on the registration documents as a result of **a legal, as well as a factual, error**. Given this history, **it would make no sense if §411(b) left copyright registrations exposed to invalidation** based on **applicants' good-faith misunderstandings of the details of copyright law**.

(emphasis added) *Id*. at 948.

In this case, Interfocus failed to show any of Neman's subjective knowledge of a high probability and deliberate action to avoid learning. Interfocus failed to show even negligence or recklessness, which are lower standards than willful blindness. Therefore, section 411(b) is not triggered at all, and accordingly, as the Supreme Court's decision in Unicolors, and the 9th Circuit Court's most recent decision (see *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.* (2022) 18-56253 & 18-56548) after the Supreme Court's decision, there should be no reference to the copyright office's opinion at all.

**<u>5. It is the loopholes to be fixed, which the Supreme Court has held to be the legislative intent. However, notwithstanding its good-faith intent, the ways the copyright office manage the procedures of applications and issue its opinion letters in litigations, work unreasonable, unfair and even unjust against the copyright owners.</u>**

Even assuming arguendo any layperson, reasonable or unreasonable, smart or silly, could easily find, read and understand the compendiums in the amount of 1288 pages, the so-called "compendium" in the past and even now, is still blatantly misleading the applicants. It states a **supplementary registration** can be used **to correct an error or omission involving the author(s) of the work**. Compendium §1802.6(D) (3d ed. 2014 and 2021) (citing 37 C.F.R. § 201.5(b)(2)(ii)(A)). (citing 37 C.F.R. § 202.6(d)(3)(i)). **If two or more authors created the work and some of the authors were not named, the names of the missing authors may be added to the registration record with a supplementary registration**. Compendium §503.2 (3d ed. 2021). The

compendium says mistakes about omitting some author names is all good because it is only a matter of supplementation. There is no warning it could be a reason for invalidation or extensively prolonged litigation dispute when filing a lawsuit against infringers, even when the applicant is a real owner, or if the real owner loses the litigation against the infringer, the owner will have to pay the infringer, even when the owner is the real owner and the infringer is real infringer so that it would not make any reasonable sense to most of lay persons, if not all.

In nowhere on the copyright office's website, instructions, or compendium, there is any warning whatsoever clearly, easily understandably, and ostensibly explaining for lay person applicants, that even after issuing the copyright certificate, the copyright office would take blatantly offensive attitude against the applicants by filing a so-called opinion letter, even when knowing it would violate the Court's order to not do so given the U.S. Supreme Court decision in *Unicolors*, and the letter will state that, in direct contradiction of what the same office stated in section 503.2 of the compendium, it would have simply rejected the applications without any chance for explaining or supplementing, had it known about the "inaccuracies", notwithstanding whether it was pure mistakes, or whether it was in fact due to the office's own failures to explain to the applicants in reasonably clear, easily understandable and reasonably ostensible manner in any of the instructions or compendiums. It is unfair and unjust and does rise to the level of reckless omission to disclose, and/or reckless misrepresentation of, material information about their services to the applicants whom the copyright office should care about as their consumers/customers, before accepting the filing fees for their problematic services.

As Interfocus cited at the end of its brief, there are manipulated and promoted prejudices among **infringers and the ones making businesses out of defending the infringers who are troubled by the copyright owners bringing consequences for their unlawful misconducts**, calling the small business plaintiff in *Unicolors* a "troll" who "batches many works into single 'collections'" to save money and "obtain registrations that facially cover noncopyrightable works[,]" thereby facilitating numerous

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

copyright infringement actions based on minor variations in generic fabric designs. William F. Patry, 5 *Patry on Copyright* § 17:125.

If a copyright owner trying to enforce its copyrights to protect its designs and businesses is a troll, what is the infringer who so freely without guilty feeling at all copied someone else's designs for inequitable pirating of the fruits of another's labor and palming off those fruits as their own, to simply gain unearned commercial benefits. Shouldn't such deceptive business practices be called stealing, misappropriation and inequitable pirating? What a shame to support such serial infringers.

Was the Congress silly in not excluding fabric designers and businesses from copyright protections on the print patterns on their fabric which are the key factors for competitiveness to survive in fabric and garment industries (which is exactly why these infringers cannot stop copying good designs in the market)? What is the basis for making such baseless statements "registrations that facially cover noncopyrightable works"? If so, why the defendants in Unicolors and this case completely failed to show lack of copyrightability of the designs? If group registrations were wrong, why the congress or the copyright office allowed it? Why should the copyright owners who were pushed into the loophole, be blamed? If there are many cases for infringements because of numerous serial infringers, whose fault is it, copyright owners or infringers?

As the Supreme Court pointed out in *Unicolors,* the problem was the loopholes that the Congress intended to deny. From the view of copyright owners, the reality has been that the copyright office belatedly appears to unfairly play its role in favor of infringers setting up against the copyright owners, whether the office meant it or not.

In this case, whether it acts in good faith or with such improper prejudices, the copyright office's so-called "advise to the Court" that "the Office would have refused registration for the subject applications if it had been aware of the errors in Neman Brothers' copyright applications" (*Id.* at 18) is misleading because it omits and contradicts material information discussed in its own opinion that should have been incorporated into the conclusion, without which the advice would have "high probability" of wrongly misleading.

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

First, the opinion admits "[b]efore issuing any registrations, **the Office would have communicated with the applicant** to (1) determine if the collections met the eligibility criteria for the unpublished collection option and (2) resolve the relevant omissions. (DKT 85, p. 3) … However, back then, the Office had no reason to question the representations in the applications and accepted them as true and accurate (DKT 85, p.4)…. **Had the Office been aware** that Neman Brothers was not the sole author of all the works claimed in its 2016, 2017, and 2018 unpublished collection applications, the Office would not have registered Neman Brothers' unpublished collections. Instead, **the registration specialists would have corresponded** with Neman Brothers to obtain several additional pieces of information." (emphasis added) *Id*. at 12. In short, had the office known of any issues, it would have corresponded with Neman asking questions and requesting further information.

The opinion also states as to the authorship issue for group registration as a collection that "[b]ecause it is **unclear** whether any of the collections represent the work of one common author, **Neman Brothers' collections might not have been eligible for the unpublished collection option**. **If the collections did not meet the eligibility requirements for the unpublished collection option**, then **certain designs should have been registered separately**" (emphasis added) (*Id* at 15), which Neman would, and could, have done from the beginning had such needs for separate registrations been known to Neman.

In short, even assuming arguendo it is **clear** Neman's additions or changes to certain designs purchased from design studios were determined to be not sufficient and therefore, Neman did not qualify to be an author for the purchased designs, it does not mean Neman would have never get any copyright registration but it would only mean **those certain designs would have been registered separately**.

As to other issues, the opinion states Neman Brothers would have thus been required to provide a statement explaining "how it obtained copyright ownership of the third-party authored works", and even "whether the works purchased from third parties were published before Neman Brothers made its modifications" (*Id*. at 17), which was the

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPELMENTAL BRIEF

issue raised by the defendant in *Unicolors* case. However, even if there were problems with those issues, Neman would have obtained registrations anyways through separate registrations as separate groups or through other options because none of them changes one simple fact that Neman owns the designs anyways. The opinion's advise at the end stated merely that "that the Office would have refused registration for the subject applications [as one group registration] if it had been aware of the errors in Neman Brothers' copyright applications [after corresponding with Neman to confirm the details related to the relevant inquiries]. [Even if it refuses to register as one group, it does not mean Neman would have never get any copyright registration but it would only mean those certain designs would have been registered separately and/or through other option.]"

Ironically, the opinion quotes **nothing whatsoever from the instructions** that were supposed to clearly and easily understandably and ostensibly explain the rules to the applicant. Rather, it discussed, and concluded, based upon its own review, years after the registration, of the **relevant law, regulations, and the Office's practices**. The office never asked any questions to Neman at the time of submitting the applications and even during the litigations, and the opinion admits certain things were unclear and therefore, it could not finish the review of the necessary information, but the opinion also unfairly stated Neman's filings "failed to" provide the necessary information, which no body including the office ever asked.

The opinion also dares to state "[a] supplementary registration may be used to correct certain errors or amplify the information, such as missing authors and transfer statements, … however, that the Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute." This is unreasonable, unfair and unjust again, notwithstanding whether the office meant it or not. This statement admits there are mistakes including the issues of missing authors and transfer statements, the copyright owners would have been able to cure. However, after

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

they file a lawsuit without knowing of their pure mistakes, the office would not allow any chance for them to cure the mistakes that would have been curable, but rather it would make sure the infringers would be able to use the loophole to invalidate the registrations by not giving any chance to the copyright owners to cure their pure mistakes. When section 411 is triggered, the office would write an opinion letter based on merely the records in the case that do not necessarily include all of the information the office would have needed when determining whether to grant or refuse the registration at the time of application and at the time of filing the opinion. Then, it would provide the so-called advise to the Court in unreasonably simplistic and misleading way by saying it would have refused to register without clarifying the "group" registration would have been refused, as if the applicant would have never been able to register the work at all.

The copyright office, as discussed above, admitted it would have not known where the applicants make mistakes as to various issues unless there is contradiction among the information on the application. Likewise, the copyright owners would have not known of their mistakes, even if any, until somebody pointed them out, which most of the time, if not all of the time, happens through the copyright owners lawsuit against infringers, where those infringers challenge the registrations using the **"loophole"** **Congress intended to deny** because **it would make no sense if exposing registrations to invalidation** based on **applicants' good-faith misunderstandings of the details of copyright law**.

Whether the office meant it or not and whether it was the office's fault or not, the whole system has been working unreasonably, unfairly and unjustly in favor of the infringers and against the copyright owners.

## 6. Interfocus misstated about Ms. Moktarian's deposition testimonies.

Interfocus falsely argued that Ms. Moktarian "admit[ed] the Form VA instructions are "clear"" by taking a certain part out of context. First, the cited question and answer were regarding "Application Form VA used in June 2001 [the deposition exhibit 2]" (Ex. 43, 22:3-4). Second, Ms. Moktarian did not see any "application cover sheet

[instructions] that was attached to the actual Form VA that" Neman "had to fill out" when searching through the records during discovery. Moreover, in response to whether she understand the meanings of the terms such as author, Ms. Moktarian answered "**[n]ow** I know what it means." (emphasis added) (Ex. 43, 23:19- 24:2). After that, when a similar question is repeated, she answered "To me these instructions are clear, but I'm not sure -- or somebody who was doing it back in 2001, it was clear to them or they just did it based on their knowledge." (Ex. 43, 25:17-26:1). As obvious from the records of this case, Ms. Moktarian has been involved in this case for a while, and therefore, she learned it, and knows it *now*.

Interfocus also argued that because Ms. Moktarian denied "knowing [Neman]'s own copyright application processes before 2021 because the employees who completed those applications have left the company", "[i]t therefore cannot dispute that it saw and understood the clear "author,", "work made for hire," and "derivative work" requirements attached to the paper applications and incorporated into the electronic applications it submitted." This argument is flawed. First, it is the burden of Interfocus as the defendant to prove Neman's knowledge (or willful blindness). Second, Ms. Moktarian's lack of personal knowledge of whether the former employees in charge "saw and understood" does not automatically mean they "saw and understood".  In addition, Ms. Moktarian at least could testify to the general procedure and policies. Ms. Moktarian started working for Neman for 15 years since 2007 as a designer (Ex. 43, 8:19-25), and she started working on filling out and submitting the copyright applications since 2021, which she took over from Ms. Alicia Barrales (Ex. 43, 9:7-16, 9:24-10:1). Lastly, the employees who completed those applications were identified, and Interfocus could, and were invited to, subpoena and depose them, but Interfocus chose not to (Ex. 43, 15:16-17:2). While both counsels were confused with the names (i.e. Alicia Barrales instead of Vicky Alvarado) at the deposition of Ms. Moktarian, Neman did identify the former employees including both Vicky Alvarado and Adelso Henriquez as the ones in charge of submitting the applications during the relevant times, with their employment period and the contact information as of August 3, 2022 (Jeong Decl. ⁋5), whom Interfocus could depose as

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

Neman's counsel recommended (Ex. 43, 16:8-9), before submitting its brief but Interfocus did not do so. Interfocus was given more than enough chances again and again to defend itself, which delayed this case to make it pending for 2 years and has nothing left for its defense.

### 7. Fraud element matters.

Courts routinely use § 411(b)(1) to overlook similar good faith errors and allow suits to proceed under the proper claimant's name. See *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155–56 (9th Cir. 2010) (sole shareholder named instead of corporation); *Thomas Wilson & Co. v. Irving J. Dorfman Co., Inc.*, 433 F.2d 409, 412 (2d Cir. 1970) (president of corporation named instead of corporation); *Morelli v. Tiffany & Co.*, 186 F. Supp. 2d 563, 565 (E.D. Pa. 2002) (owner named instead of corporation); see also *One Treasure Ltd v. Inc. v. Richardson*, 202 F.App'x 658, 660 ("Courts have repeatedly excused a wide range of errors, ... including misidentification of copyright claimant[.]"); NIMMER, supra, at § 7:20 ("[C]ases have forgiven even ... erroneous statements as to the identity of the author, or of the copyright claimant.").

None of the Supreme Court in *Unicolors* or the Congress ever overturn any of them. Rather, the Supreme Court in Unicolors held "[w]e can find no indication that Congress intended to alter this well-established rule when it enacted § 411(b). Unicolors, Inc., supra, 142 S.Ct. at 948. "When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts" *Id.* (citing *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 813 (1989)).

Knowingly providing inaccurate information to the copyright office for registration, as opposed to innocent mistakes, is in fact the standard for fraud. As discussed above, Neman is the genuine owner of copyrights. It had no reason to knowingly mislead the copyright office, but rather it as always, would want proper registration because there are so many infringers like Interfocus and it would never want the infringers like Interfocus to exploit the loophole, which may unreasonably, unfairly or

22

unjustly invalidate its copyrights for Neman's pure mistake. If the group registration does not work, as the copyright office admitted, Neman could simply submit separate applications. The Congress and the Supreme Court made it clear that it would make no sense to allow the infringers to exploit the loophole would make no sense and would be against the legislative intent. The unfair and unjust silliness should stop immediately.

**8. Interfocus' argument about significant financial benefits makes no sense.**

None of the inaccuracies Interfocus argues about in this case would have been refused by the USCO for registration as a group. As the USCO letter admits, had it found on the issues, it would have inquired Neman thereabout and asked Neman to explain or correct the matters on the application. Even if such inaccuracies were found after the registrations, the USCO would have allowed filings of Form CA to correct the mistakes. Such supplementation is not allowed only when there is a litigation pending about the relevant registration. Neman would have qualified for the contemplated group registrations anyways with or without inaccuracies Interfocus argues about. In other words, Neman obtained no financial benefits whatsoever that Neman would have not qualified for. Interfocus' argument on this may make sense if Neman obtained the subject group registrations by "falsely" making inaccurate statements, which was why the numerous precedent cases held the "fraud" element was required to invalidate registrations for inaccuracies. The fact that Neman qualified for the group registrations with "accurate information" anyways is the evidence that Neman had no reason whatsoever to be "willfully blind" to the inaccuracies. Rather, Neman always had the reasons to want to present accurate information so that the copyright infringers like Interfocus would not have unfair excuses to avoid liability or delay the case when sued by Neman for their unlawful infringements.

The purported inaccuracies in fact disadvantage Neman as the copyright owner because as it is here, defendants like Interfocus who do not dispute ownership, originality, copying or damages would use them as excuses to freely go away from liabilities or at least delay the cases. Not surprisingly, having no other meritorious

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPLEMENTAL BRIEF

defense at all, Interfocus has desperately and vigorously argued on this issue. Interfocus in its recent brief even made false arguments as if Interfocus and its counsels did not know the group registration would anyways have been available for Neman even when Neman provided accurate information in compliance with the registration rules because Neman owned the designs, and the applicable rules allowed group registrations anyways. In other words, group registrations would have been available for Neman anyways and therefore, Neman did not take any benefits through the group registrations that Interfocus falsely argued as if Neman would have not qualified had the USCO known the accurate information.

### III. CONCLUSION

Based on the forgoing, a summary judgment or adjudication should be granted for Neman and against Interfocus.

Dated: November 15, 2022                 RESPECTULLY SUBMITTED,

                                         _/s/Chan Yong Jeong_____
                                         Chan Yong Jeong, Esq.
                                         Attorney for NEMAN BROTHERS

NEMAN BROTHERS & ASSOC., INC.'S BRIEF IN OPPOSITION TO
INVERFOCUS' SECOND SUPPELMENTAL BRIEF